**SEYFARTH SHAW LLP**
William J. Dritsas (SBN 97523)
*wdritsas@seyfarth.com*
560 Mission Street, 31st Floor
San Francisco, CA  94105-2930
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

**SEYFARTH SHAW LLP**
Timothy M. Rusche (SBN 230036)
*trusche@seyfarth.com*
Mary D. Manesis (SBN 150372)
*mmanesis@seyfarth.com*
Amanda I. Fry (SBN 317093)
*afry@seyfarth.com*
601 S. Figueroa Street, Suite 3300
Los Angeles, California 90017
Telephone: (213) 270-9600
Facsimile: (213) 270-9601

**SEYFARTH SHAW LLP**
Michael W. Kopp (SBN 206385)
*mkopp@seyfarth.com*
400 Capitol Mall, Suite 2350
Sacramento, California  95814
Telephone:  (916) 448-0159
Facsimile:  (916) 558-4839

Attorneys for Defendant
MARATHON REFINING LOGISTICS SERVICE LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE WOOD, ANTHONY ALFARO, and AARON DIETRICH on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARATHON REFINING LOGISTICS SERVICE LLC, and DOES 1 THROUGH AND INCLUDING 25,<br><br>Defendants. | Case No.   4:19-cv-4287<br><br>**MARATHON REFINING LOGISTICS SERVICE LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with:<br>(1) Civil Cover Sheet<br>(2) Declaration of Justin Lawrence<br>(3) Declaration of Timothy M. Rusche<br>(4) Corporate Disclosure Statement<br>(5) Certification of Interested Entities or Persons<br>(6) Proof of Service]<br><br>(Contra Costa Superior Court Case No. C19-01261)<br><br>Complaint Filed: June 24, 2019 |

MARATHON'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

58197026v.3

# **TABLE OF CONTENTS**

Page

INTRODUCTION AND STATEMENT OF JURISDICTION ........................................................ 1

THE STATE COURT ACTION AND ALLEGATIONS ............................................................... 2

TIMELINESS OF REMOVAL ........................................................................................................ 2

FEDERAL QUESTION JURISDICTION ...................................................................................... 3

BASED ON THE LABOR MANAGEMENT RELATIONS ACT ............................................... 3

CLASS ACTION FAIRNESS ACT ("CAFA") JURISDICTION ................................................ 7

I.     THE REQUIREMENT FOR MINIMAL DIVERSITY FOR CAFA REMOVAL IS
       SATISFIED ............................................................................................................................. 7

       A.     Plaintiff Is a Citizen of California ........................................................................... 7

       B.     Marathon Is Not a Citizen of California ................................................................. 7

II.    THE PUTATIVE CLASS EXCEEDS 100 ........................................................................... 9

III.   THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000 FOR OPERATORS
       ALONE .................................................................................................................................... 9

SUPPLEMENTAL JURISDICTION ............................................................................................ 13

VENUE ............................................................................................................................................ 13

INTRADISTRICT ASSIGNMENT .............................................................................................. 13

NOTICE OF REMOVAL .............................................................................................................. 13

PRAYER FOR REMOVAL .......................................................................................................... 14

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Federal Cases**

*Abrego v. Dow Chem. Co.*,
  443 F. 3d 676 (9th Cir. 2006) ...................................................................................8

*Allis Chalmers Corp. v. Lueck*,
  471 U.S. 202 (1985) ...............................................................................................3

*Audette v. International Longshoremen's and Warehousemen's Union*,
  195 F.3d 1107 (9th Cir. 1999) .................................................................................4

*Burnside v. Kiewit Pac. Corp.*,
  491 F.3d 1053 (9th Cir. 2007) ............................................................................1, 3

*Cicero v. DirecTV, Inc.*,
  2010 WL 2991486 (C.D. Cal. July 27, 2010) .........................................................12

*Consolidated Rail Corp. v. Railway Labor Execs.' Ass'n*,
  491 U.S. 299 (1989) ............................................................................................4, 6

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  135 S.Ct. 547 (2014) .............................................................................................10

*Davis v. HSBC Bank Nevada, N.A.*,
  557 F.3d 1026 (9th Cir. 2009) .................................................................................8

*Fristoe v. Reynolds Metals Co.*,
  615 F.2d 1209 (9th Cir. 1980) .................................................................................9

*General Teamsters, Auto Truck Drivers and Helpers Local 162 v. Mitchell Bros. Truck Lines*,
  682 F.2d 763 (9th Cir. 1982) ...................................................................................4

*Hertz Corp. v. Friend*,
  130 S. Ct. 1181 (2010) ............................................................................................8

*Ho v. Ikon Office Solutions, Inc.*,
  143 F. Supp. 2d 1163 (N.D. Cal. 2001) ...................................................................8

*Hyles v. Mensing*,
  849 F.2d 1213 (9th Cir. 1988) .................................................................................3

*Ibarra v. Manheim Inv., Inc.*,
  775 F. 3d 1193 (9th Cir. 2015) ........................................................................10, 11

MARATHON'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

58197026v.3

*Industrial Tectonics, Inc., v. Aero Alloy,*
    912 F.2d 1090 (9th Cir. 1990) ................................................................8

*Jasso v. Money Mart Express, Inc.,*
    2012 WL 699465 (N.D. Cal. Mar. 1, 2012) ...........................................12

*Johnson v. Columbia Properties Anchorage, LP,*
    437 F.3d 894 (9th Cir. 2006) ................................................................8

*Jordan v. Nationstar Mortg. LLC,*
    781 F.3d 1178 (9th Cir. 2015) .............................................................10

*Kanter v. Warner-Lambert Co.,*
    265 F.3d 853 (9th Cir. 2001) ................................................................7

*Kantor v. Wellesley Galleries, Ltd.,*
    704 F.2d 1088 (9th Cir. 1983) ..............................................................7

*Lew v. Moss,*
    797 F.2d 747 (9th Cir. 1986) ................................................................7

*Lewis v. Verizon Communications, Inc.,*
    627 F.3d 395 (9th Cir. 2012) ...............................................................11

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,*
    526 U.S. 344 (1999) ..............................................................................2

*Paige v. Henry J. Kaiser Co.,*
    826 F.2d 857 (9th Cir. 2001) ................................................................3

*Powers v. Eichen,*
    229 F.3d 1249 (9th Cir. 2000) .............................................................12

*Raphael v. Tesoro Refining & Marketing Co., LLC,*
    No. 2:15–cv–02862–ODW (Ex), 2015 WL 3970293 (C.D. Cal. June 30, 2015) .....................3, 6

*Retail Clerks Intern. Ass'n, Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.,*
    369 U.S. 17 (1962) ................................................................................4

*Rhoades v. Progressive Cas. Ins.,*
    410 Fed. Appx. 10 (9th Cir. Nov. 23, 2010) .........................................11

*Strotek Corp. v. Air Transport Ass'n of Am.,*
    300 F.3d 1129 (9th Cir. 2002) ..............................................................7

*Valdez v Allstate Ins. Co.,*
    372 F.3d 1115 (9th Cir. 2004) .............................................................11

*Wren v. RGIS Inventory Specialists,*
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ........................................12

iii

*Young v. Anthony Fish Grottos, Inc.*,
  830 F.2d 993 (9th Cir. 1987) ....................................................................1, 3

**Federal Statutes**

28 U.S.C. § 84(b) ..............................................................................................13

28 U.S.C. § 1331 ............................................................................................1, 3

28 U.S.C. § 1332 .......................................................................................1, 8, 9

28 U.S.C. § 1332(a) .............................................................................................1

28 U.S.C. § 1332(d) .......................................................................................7, 10

28 U.S.C. § 1332(d)(2) ..............................................................................1, 7, 13

28 U.S.C. § 1332(d)(2)(A) ...................................................................................7

28 U.S.C. § 1332(d)(5)(B) ................................................................................7, 9

28 U.S.C. § 1332(d)(6) ..................................................................................7, 10

28 U.S.C. § 1332(d)(10) ......................................................................................8

28 U.S.C. § 1367 .................................................................................................1

28 U.S.C. § 1367(a) ...........................................................................................13

28 U.S.C. § 1441 .................................................................................1, 3, 6, 13

28 U.S.C. § 1441(a) .......................................................................................7, 13

28 U.S.C. § 1446 .................................................................................................1

28 U.S.C. § 1446(a) .......................................................................................2, 13

28 U.S.C. § 1446(b) .............................................................................................2

28 U.S.C.§ 1453 ..................................................................................................1

29 U.S.C. § 185 (2) .............................................................................................1

29 U.S.C. § 185(a) ..........................................................................................1, 3

Class Action Fairness Act ..........................................................................*passim*

Labor Management Relations Act ..............................................................*passim*

MARATHON'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

58197026v.3

**State Statutes**

Labor Code § 200................................................................................................2

Labor Code § 201................................................................................................2

Labor Code § 202................................................................................................2

Labor Code § 203...........................................................................................2, 12

Labor Code § 226..............................................................................................12

Labor Code § 512..............................................................................................11

Unfair Competition Law...................................................................................2, 12

**Rules**

Local Rule 3-2(d)..............................................................................................13

**Regulations**

IWC Wage Order No. 1-2001.......................................................................2, 6, 11

Senate Judiciary Committee Report, S. REP. 109-14..........................................10

**Constitutional Provisions**

United States Constitution Article III..................................................................13

**Other Authorities**

S. REP. 109-14.................................................................................................10

MARATHON'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

58197026v.3

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that Defendant Marathon Refining Logistics Services LLC ("Marathon" or "Company") hereby removes the above-captioned matter from the Superior Court of the State of California for the County of Contra Costa, to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446, on the basis of (1) original federal subject matter jurisdiction under the Labor Management Relations Act ("LMRA"), codified in relevant part at 29 U.S.C. § 185, (2) diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), and (3) supplemental jurisdiction pursuant to 28 U.S.C. § 1367. In support of its request, Marathon states as follows:

## INTRODUCTION AND STATEMENT OF JURISDICTION

1.      This court has original jurisdiction over this action under the LMRA, which grants federal district courts subject matter jurisdiction over claims involving the interpretation of "contracts between an employer and a labor organization." 29 U.S.C. § 185(a). *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (if the claim requires the court to *interpret* a CBA or is "substantially dependent on *analysis of a collective-bargaining agreement*," the claim is preempted, even if based on state law) (emphasis added). "The preemptive force of Section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement, and any state claim whose outcome depends on analysis of the terms of the agreement." *Young v. Anthony Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987).

2.      As set forth below, the LMRA confers federal subject matter jurisdiction over this action because the resolution of Plaintiffs' claim for reporting-time pay supposedly owed when employees are on "standby" requires interpretation of the collective bargaining agreements ("CBAs") and the Company's past practices to determine, according to Plaintiffs' allegations, what activities employees may engage in while on standby, among other things.

3.      This Court also has original jurisdiction of this action under the Class Action Fairness Act ("CAFA,") codified in pertinent part at 28 U.S.C. § 1332(d)(2). As set forth below, this action is properly removable pursuant to §§ 1446 and 1453 because it is a purported class action with an amount

1

in controversy exceeding $5,000,000 (exclusive of interests and costs), at least one putative class member is a citizen of a state different from Marathon, and Plaintiffs allege that there are over 100 putative class members.[1]

## THE STATE COURT ACTION AND ALLEGATIONS

4. On June 24, 2019, plaintiffs, Janice Wood, Anthony Alfaro, and Aaron Dietrich, filed a civil action in the Superior Court of the State of California, for the County of Contra Costa, entitled *Janice Wood, Anthony Alfaro, and Aaron Dietrich, on behalf of themselves and others similarly situated, v. Marathon Refining Logistics Services LLC, and DOES 1 through and including 25,* Case No. C19-01261.

5. Plaintiffs allege four causes of action on behalf of themselves and other allegedly similarly situated employees: (1) Failure to pay reporting time pay (IWC Wage Order No. 1-2001); (2) Failure to pay all wages earned at termination (Labor Code §§ 200-203); (3) Failure to provide accurate itemized wage statements (Labor Code §§ 226-226.3); and (4) Violations of the Unfair Competition Law (Bus. & Prof. Code §§ 17200, *et seq.* )

6. Plaintiffs allege the following putative Class: "All operators and maintenance workers employed at the refinery of Marathon USA, Inc. in Martinez, California at any time from four years prior to the filing of this complaint up to and including until the time that judgment is entered in this case." (Compl. ¶ 30.)

## TIMELINESS OF REMOVAL

7. The Summons and Complaint, and all other materials served on Marathon in this matter, and all documents on the docket in the state court action are attached as **Exhibit A**, and constitute all process, pleadings, and orders served to date in this action. 28 U.S.C. §§ 1446(a).

8. Marathon was served with the Summons and Complaint on June 25, 2019. Accordingly, this Notice of Removal is timely since Marathon filed it less than one year from the date this action was commenced and within 30 days of service on it. 28 U.S.C. §§ 1446(b); *Murphy Bros., Inc. v. Michetti*

---

[1] This Court also has original jurisdiction of this action pursuant to diversity jurisdiction, as the Plaintiffs' citizenship (California) is diverse from that of Defendant (Delaware and Ohio), and the amount in controversy as to Plaintiffs' claims exceeds $75,000 exclusive of costs and interest.

2

58197026v.3

*Pipe Stringing, Inc.*, 526 U.S. 344, 354-55 (1999) (30-day deadline to remove commences upon service of the summons and complaint).

<strong><u>FEDERAL QUESTION JURISDICTION</u></strong>

<strong><u>BASED ON THE LABOR MANAGEMENT RELATIONS ACT</u></strong>

9. This Court has original jurisdiction of this action under 28 U.S.C. section 1331, and Marathon may remove the lawsuit pursuant to the provisions of 28 U.S.C. section 1441, since the relief sought is preempted by Section 301 of the LMRA (29 U.S.C. § 185).

10. Section 301 of the LMRA provides federal jurisdiction over "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "The preemptive force of section 301 is so powerful as to displace entirely any state claim [1] based on a collective bargaining agreement, and [2] any state claim whose outcome *depends on analysis of the terms of the agreement.*" *Young*, 830 F.2d at 997 (citations omitted) (emphasis added). The Ninth Circuit has clarified that the LMRA preempts claims in two respects. ***First***, if the claim involves a right that exists because of the CBA rather than state law, the "claim is preempted and [the court's] analysis ends there." *Burnside*, 491 F.3d at 1059. ***Second***, if the claim requires the Court to interpret a CBA or is "substantially dependent on analysis of a collective-bargaining agreement," the claim is preempted, even if based on state law. (*Id.*)

11. Section 301 of the LMRA is construed quite broadly to cover state-law actions that do not allege a breach of the CBA, but nonetheless require *interpretation* of labor agreements. *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("When resolution of a state law claim *is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract*, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law.") (internal citations omitted) (emphasis added); *see also Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 861 (9th Cir. 2001) (when resolution of a claim brought under state law is "substantially dependent on analysis" of a collective-bargaining agreement, the claim is preempted by Section 301) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987)); *Hyles v. Mensing*, 849 F.2d 1213, 1215-1216 (9th Cir. 1988); *Young*, 830 F.2d at 997, 999; *Raphael v. Tesoro Refining & Marketing Co., LLC*, No. 2:15–cv–02862–ODW (Ex), 2015 WL 3970293, *6–7 (C.D. Cal. June 30, 2015) ("To further the

3

58197026v.3

goal of uniform interpretation of labor contracts, the preemptive effect of § 301 has been extended beyond suits that allege the violation of a collective bargaining agreement . . . *[a] state law claim will be preempted if it is so "inextricably intertwined" with the terms of a labor contract that its resolution will require judicial interpretation of those terms.*) (citing *Allis Chalmers Corp.* at 210–11) (emphasis added).

12. Courts have consistently held that other collectively bargained agreements—such as side agreements, benefit plans, and settlement agreements—also give rise to Section 301 preemption where a plaintiff's claims require interpretation of those agreements. *See, e.g., Retail Clerks Intern. Ass'n, Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 28 (1962) ("Contract in labor law is a term the implications of which must be determined from the connection in which it appears . . . It is enough that this is clearly an agreement between employers and labor organizations significant to the maintenance of labor peace between them . . . It resolved a controversy arising out of, and importantly and directly affecting, the employment relationship. Plainly it falls within § 301(a)."); *Audette v. International Longshoremen's and Warehousemen's Union*, 195 F.3d 1107 (9th Cir. 1999) (accord) (citing *Lingle v. Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988)); *General Teamsters, Auto Truck Drivers and Helpers Local 162 v. Mitchell Bros. Truck Lines*, 682 F.2d 763, 765 (9th Cir. 1982) (rejecting plaintiff's argument that under the LMRA, the word "contracts" was limited to CBAs, and holding that a settlement agreement was a contract for LMRA purposes).

13. Further, the collective-bargaining agreement may include implied terms based on the parties' practice, usage, and custom. *Consolidated Rail Corp. v. Railway Labor Execs.' Ass'n*, 491 U.S. 299, 311 (1989).

14. Here, Plaintiffs' claims derive from the core allegations that Plaintiffs and putative Class Members were not paid reporting time pay when on standby. These claims are governed by at least two different collectively-bargained agreements and the parties' practices.

15. ***Applicable United Steel Workers Collective Bargaining Agreements and Guidelines***. The terms and conditions of Plaintiffs' and the putative Class Members' employment are governed by least two CBAs between Tesoro Refining & Marketing Company (Marathon's predecessor) and Plaintiffs' collective bargaining representative, United Steel Workers ("USW"), applicable to putative

4

Class Members. (Declaration of Justin Lawrence in Support of Notice of Removal ("Lawrence Decl.") ¶¶ 5-6, Exs. A-B.):

- USW Martinez Refinery CBA, "Articles of Agreement Between Tesoro Refining Company Martinez Refinery and United Steelworkers International Union Local 5 and United Steelworkers International Union, [effective] February 1, 2015." (*Id.*, Ex. A.)

- USW Martinez Chemical CBA, "Articles of Agreement Between Tesoro Refining Company Martinez Chemical Plant and United Steelworkers International Union 5, effective March 1, 2015." (*Id.*, Ex. B.)

16. In addition to the two CBAs, a "General Overtime Reference" addresses call-out procedures and standby procedures to cover bargaining unit work by operators at the Martinez Refinery. (Lawrence Decl., ¶ 7, Ex. C.) The "General Overtime Reference" initially was negotiated as part of the settlement agreement for the 2002 collective bargaining negotiations between Tesoro Refining & Marketing Company's predecessor and the relevant bargaining unit. (*Id.*) These remains in effect as guidelines, as revised, in 2012. (*Id.*)

17. These CBAs have collectively bargained standby provisions, as well as the parties practices, that raise interpretive questions that preempt Plaintiffs' claim for reporting time pay based on standby time. (Compl. ¶¶ 39-43; *see, e.g.*, Lawrence Decl., ¶¶ 5-7, Exs. A at 21-22, B at 49-51, C.) Plaintiffs allege that nonexempt employees are entitled to reporting-time pay because they "reported" to work during mandatory standby because they were restricted and could not engage in personal pursuits. As discussed below, the CBAs and the General Overtime Reference do not directly and clearly explain, however, what activities employees may engage in while on standby, or what restrictions are imposed on any such activities. To the extent it does address restrictions—it states that the purpose of the negotiated policy is to "minimize impact." Because the CBAs, standby procedures, and related past practices define these requirements, and the Company disputes Plaintiffs' characterization that it unduly restricts personal activities, as well as their theory of liability, the Court will be required to interpret these provisions to determine what restrictions, if any, are imposed. *Consolidated Rail Corp.,* 491 U.S. at 311 (collective bargaining agreement may include the parties' practices, usage, and custom).

18. ***Preemption***. Plaintiffs' claims are preempted by the LMRA in at least three broad respects. ***First***, they require interpretation of two CBAs and the standby provisions. These agreements set forth Marathon's policies regarding any requirement for bargaining unit employees to be on standby,

5

58197026v.3

means for contact during standby time, what mechanisms are in place to minimize or alleviate any purported restrictions (such as initial resort to bargaining unit members on the voluntary lists, authorization of shift trades, and other contractual and shop practices). Accordingly, before the Court can address the claim, it must address interpretive questions such as: (1) according to Plaintiffs' liability theory, do the contractual provisions impose any requirements that impact employees' personal pursuits when they were eligible to be called into work; (2) are any restrictions contractually alleviated by bargained provisions and practices that permit trades and require first resort to voluntary lists; and (3) do hourly employees have the option to choose whether to be on standby or make other voluntary arrangements? Plaintiffs' claims place the terms of these CBAs and other policies and procedures squarely at issue, will require interpretation of those agreements for both class certification and liability determinations, and are, therefore, preempted by the LMRA. As part of this determination, Plaintiffs' claims also require the interpretation of implied CBA terms based on the parties' practice, usage, and custom as to standby, any purported restrictions from these terms based on Plaintiffs' theory of liability, contractually-provided options for bargaining unit members to arrange voluntary reassignment of standby, and collectively-bargained provisions and historical union/employer practices with regard to these standby provisions. *Consolidated Rail Corp.,* 491 U.S. at 311.

19. *Second*, Plaintiffs' putative Class encompasses operators and maintenance workers subject to multiple CBAs and policies, and, as a result, the reporting time pay claim brought on their behalf is preempted because there are a "plethora of provisions in need of interpretation" to determine if the reporting time pay provisions found in IWC Wage Order No. 1-2001 applies. *Raphael v. Tesoro,* 2015 WL 3970293, at *6-7 (C.D. Cal. Jun. 2015) (finding meal period claims filed against Tesoro to be preempted by LMRA § 301).

20. *Third*, Plaintiffs seek Court modification of Marathon's standby policies, rather than a collectively-bargained modification of any allegedly non-compliant policy or practice in the CBAs.

21. Accordingly, Plaintiffs' state law claims are "preempted" by Section 301 of the LMRA, and this matter is properly removable to this Court pursuant to 28 U.S.C. section 1441.

MARATHON'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

58197026v.3

## CLASS ACTION FAIRNESS ACT ("CAFA") JURISDICTION

22. This action also is properly removable under 28 U.S.C. § 1441(a) since this Court has original jurisdiction over the action under CAFA. 28 U.S.C. §§ 1332(d)(2) & (d)(6); 28 U.S.C. § 1332(d)(5)(B). CAFA removal requires (a) a class size of at least 100 members, (b) at least one plaintiff and one defendant that are citizens of different states, and (c) an aggregate amount in controversy exceeding $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Each requirement is met here.

## I. THE REQUIREMENT FOR MINIMAL DIVERSITY FOR CAFA REMOVAL IS SATISFIED.

23. CAFA requires that "any member of a class of plaintiffs is a citizen of a state different from any defendant." 28 U.S.C. § 1332(d)(2)(A). For removal purposes, citizenship is measured both when the action is filed and removed. *Strotek Corp. v. Air Transport Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

### A. Plaintiffs are Citizens of California

24. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). "A person is 'domiciled' in a location where he or she has established a fixed habitation or abode of a particular place, and [intends] to remain there permanently and/or indefinitely." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

25. Plaintiffs allege that they are citizens of the State of California. (Compl. ¶¶ 13-15.) Additionally, a public records search for Plaintiffs' current addresses reflects that Plaintiffs Janice Wood and Anthony Alfaro, at least, continue to reside in California. (Rusche Decl. ¶ 3, Ex. 1.) Therefore, at least one plaintiff is, and was, at the time this action commenced, a citizen of California.

### B. Marathon Is Not a Citizen of California

26. Marathon is a citizen of a State other than California within the meaning of 28 U.S.C. section 1332(d). Marathon is now, and was at the time this action commenced, a limited liability company formed under the laws of the State of Delaware, with its principal place of business in Findlay, Ohio. (Lawrence Decl. ¶¶ 10-11.)

7

58197026v.3

27. Limited liability companies are unincorporated associations for diversity purposes under 28 U.S.C. § 1332. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *see Davis v. HSBC Bank Nevada*, N.A., 557 F.3d 1026, 1032, n.13 (9th Cir. 2009) (A. Kleinfeld, concurring) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes . . . .").

28. Thus, to determine jurisdiction under CAFA, limited liability companies, such as Marathon, are treated the same as corporations in determining their principal places of business. *See e.g., Abrego v. Dow Chem. Co.*, 443 F. 3d 676, 684 (9th Cir. 2006) (stating that CAFA "departs from the rule that frequently destroys diversity jurisdiction, that a limited partnership's or unincorporated association's citizenship can be determined only by reference to all of the entity's members.") (citations and internal quotations omitted). To determine a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test. *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id*. Other relevant factors include where corporate executives maintain their offices, where corporate policies and procedures are made, and where primary corporate functions are based. *Id.; see also Ho v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (nerve center found to be location where corporation's headquarters was located, where the corporate officers worked, and from where corporate policies and procedures arose). Thus, the "nerve center" is where "its executive and administrative functions are performed." *Industrial Tectonics, Inc., v. Aero Alloy*, 912 F.2d 1090, 1092-93 (9th Cir. 1990).

29. Here Marathon is a limited liability company organized under the laws of Delaware, with its principal place of business located in Findlay, Ohio. (Lawrence Decl., ¶¶ 10-11.) Marathon's principal place of business is Ohio because its "nerve center" is located in Findlay, Ohio. This is where Marathon's headquarters are located and where the senior leadership directs, controls, and coordinates all corporate planning and strategies, and is where the majority of its executive and administrative

58197026v.3

functions take place. (*Id. at* ¶¶ 10-11.) This includes final decision-making and oversight of the following operations and divisions: financial; legal; environmental, health and safety; technology; and marketing. Marathon's policies and procedures in connection with these operations and divisions are primarily formulated in Ohio. (*Id.*) Marathon's executive officers are primarily based in Ohio, including its President, Vice Presidents, Secretary, Assistant Secretaries, Treasurer, Assistant Treasurers, Controller and Assistant Controllers. (*Id.*) Marathon's financial records are maintained in Ohio. (*Id.*) Therefore, Marathon is a citizen of the State of Ohio pursuant to the "nerve center" test, and a citizen of the State of Delaware pursuant to its organization.

30. **Doe Defendants.** Pursuant to 28 U.S.C. § 1441(b)(1), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe Defendants 1 through 25 does not deprive this Court of jurisdiction.

31. Accordingly, CAFA diversity is satisfied because at least one plaintiff is diverse from at least one defendant.

## II. THE PUTATIVE CLASS EXCEEDS 100.

32. CAFA requires that the aggregated number of members of all classes proposed in a complaint be at least 100. 28 U.S.C. § 1332(d)(5)(B).

33. Taking just one subset of job positions from Plaintiffs' putative Class—non-exempt "Operator" positions at the Martinez Refinery in California—Marathon employed approximately 332 such Operators from June 24, 2015 to June 19, 2019. (Lawrence Decl. ¶ 9.)

## III. THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000 FOR OPERATORS ALONE

34. While Marathon specifically denies liability as to all of Plaintiffs' claims, and specifically denies the appropriateness of the case proceeding as a class action, Marathon has a reasonable, good faith belief that the amount in controversy, as alleged and pleaded by Plaintiffs, exceeds $5,000,000. All calculations in support of the amount in controversy analysis are based on the allegations in Plaintiffs' Complaint and are not intended as an admission that any of those allegations have merit.

9

58197026v.3

35. In calculating the amount in controversy under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6).

36. In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. REP. 109-14, at 42. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. REP. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case . . . . Overall, section 1332(d) was intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant"). "[T]he Supreme Court left no doubt 'that no anti-removal presumption attends cases involving CAFA.'" *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014)). This "declaration is bolstered by the Court's reference to Congress's 'overall intent ... to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications.'" *Jordan* 781 F.3d at 1183-84 (quoting S.Rep. No. 109-14, at 35, 2005 U.S.C.C.A.N. 3, 34); *see also Dart Cherokee*, 135 S.Ct. at 551 (quoting S.Rep. No. 109-14, p. 43 (2005) ("(CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

37. As the Supreme Court recently made clear, "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 553-54 ("[W]hen a defendant seeks federal court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."); *Ibarra v. Manheim Inv., Inc.*, 775 F. 3d 1193, 1199 (9th Cir. 2015) (The defendant may

10

58197026v.3

use assumptions reasonably grounded in direct or circumstantial evidence and in plaintiff's allegations). A "damages assessment may require a chain of reasoning that includes assumptions," as long as the assumptions have "some reasonable ground underlying them." *Ibarr*a, 775 F.3d 1193 at 1199; *see also Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2012) (reversing remand order because, Verizon need not concede liability for the entire amount, which is what the district court was in essence demanding by effectively asking Verizon to prove exposure); *accord Rhoades v. Progressive Cas. Ins.*, 410 Fed. Appx. 10 (9th Cir. Nov. 23, 2010) (wage and hour case citing Lewis and holding "[o]nce [defendant] has explained plausibly how the stakes exceed $5 million," removal is proper "unless it is legally impossible for the plaintiff to recover that much"); *Valdez v Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

38. **Reporting Time Pay Recovery**: Plaintiffs seek, among other relief, recovery on behalf of themselves and putative Class Members for the alleged failure to pay reporting time pay. (Compl. ¶¶ 39-42.) IWC Wage Order No. 1-2001 provides: "(A) Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage."

39. Plaintiffs allege a class-wide policy, practice and/or procedure whereby Defendant "scheduled Plaintiffs and the Class for standby shifts that required them to be at the ready to receive a call and face discipline if they did not answer such call. Marathon also required Plaintiffs and the Class to arrive at work within a designated time period if asked to work the scheduled standby shift. Failure to answer a call or arrive at work within the time frame subjected Plaintiffs and the Class to discipline." (Compl. ¶ 41.) According to Plaintiffs, this class-wide policy, practice, and/or procedure regularly results in reporting time pay violations since "Marathon has failed to pay required reporting time pay to Plaintiffs and the Class, as Plaintiffs and the Class were not paid reporting time pay or any compensation for having to be at the ready to work a standby shift. Marathon compensated only operators asked to come to work and work the standby shift." (Compl. ¶ 42.)

11

58197026v.3

40. Based on Plaintiffs' allegations, and taking just one of the two subsets of job positions included in Plaintiffs' reporting time pay Class — approximately 332 Operators—the amount in controversy for Plaintiffs' reporting time pay claim alone is **more than $5,699,738** for the period from June 24, 2015[2] to June 19, 2019, which is shorter than the alleged class period.[3] (34,122 (total number of time operators on mandatory standby and not called in) x 4 hours per shift x $41.76 (average hourly rate). (Lawrence Decl. ¶ 9.). This number will increase when exposure for Maintenance workers, the other position alleged in the putative class, is included.

41. **Attorneys' Fees.** Plaintiffs are seeking attorneys' fees, which are properly included in the amount in controversy for purposes of CAFA. *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465 at *6 (N.D. Cal. Mar. 1, 2012) ("Attorneys' fees are properly included in the amount in controversy for purposes of evaluating diversity jurisdiction.") (citing *Guglielmino v. McKee Foods Corp.*, 696 F.3d 696, 700 (9th Cir. 2007)). In the class action context, courts have found that 25% of the recovery is a benchmark for an attorneys' fees award under the "percentage of fund" calculation, and courts may depart from this benchmark when warranted. *Powers v. Eichen*, 229 F.3d 1249, 1256-1257 (9th Cir. 2000); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 at * 27-28 (N.D. Cal. Apr. 1, 2011) (ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486 at *6 (C.D. Cal. July 27, 2010) (attorneys' fees in the amount of 30% of the total gross settlement amount reasonable). Even under the conservative benchmark of 25% of the total recovery on Plaintiffs' reporting time pay claim, attorneys' fees alone would be approximately **$1,424,934** in this case.

---

[2] Plaintiffs' alleged Class extends back to "at any time from four years prior to the filing of this Complaint up to and including until the time that judgment is entered in this case." (Compl. ¶ 30.) This appears to be based on Plaintiffs' fourth cause of action for Violations of the Unfair Competition Law under Business & Professions Code section 17200, which has a four-year limitations period.

[3] Defendant has used data covering the period from June 24, 2015 to June 19, 2019. Thus, the amount in controversy for the reporting time pay claim as to Operators alone is actually greater than $5,699,738, because the amount in controversy includes standby worked through the judgment in this matter. In addition, since the amount in controversy requirement is easily met here, Marathon has not included in the total Plaintiffs and the purported Class Members' claims for penalties for failure to pay wages in full on termination (Labor Code section 203) and non-compliant wage statements. (Labor Code section 226). Defendant reserves the right to provide evidence calculating exposure for these claims and for maintenance workers, if needed.

12

58197026v.3

42. Based on Plaintiffs' allegations, the total amount in controversy exceeds **$7,124,672,** including attorneys' fees (**$5,699,738** + **$1,424,934**). This amount far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

43. Accordingly, because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2). This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

## SUPPLEMENTAL JURISDICTION

44. All four causes of action alleged by Plaintiffs depend upon and require interpretation of the collectively bargained agreements, and collectively bargained policies, and thus arise under Section 301 of the LMRA. To the extent, however, that there are remaining claims for relief that are not completely preempted by Section 301, these claims are within the supplemental jurisdiction of this Court under 28 U.S.C. section 1367(a) (and removable under CAFA), in that they are sufficiently related to the Section 301 claims that they form part of the same case or controversy under Article III of the United States Constitution. In the alternative, any such other claims for relief are separate and independent claims that are properly removable to this Court pursuant to 28 U.S.C. section 1441(c). Thus, this action is removable in its entirety.

## VENUE

45. Venue lies in the Northern District of California pursuant to 28 U.S.C. sections 84(b), 1441 and 1446(a) because this action is being removed from the Superior Court of the State of California for the County of Contra Costa.

## INTRADISTRICT ASSIGNMENT

46. Pursuant to Civil Local Rule 3-2(d), this action should presently be assigned to the San Francisco Division or the Oakland Division because Plaintiff filed suit in the County of Contra Costa. (Ex. A, Compl.)

## NOTICE OF REMOVAL

47. This Notice of Removal will be promptly served on Plaintiffs and their counsel, as well as filed with the Clerk of the Superior Court of the State of California for the County of Contra Costa.

13

58197026v.3

## **PRAYER FOR REMOVAL**

WHEREFORE, Marathon prays that this civil action be removed from the Superior Court of the State of California, Contra Costa to the United States District Court for the Northern District of California.

DATED: July 25, 2019

Respectfully submitted,

SEYFARTH SHAW LLP


By: /s/ Timothy M. Rusche
     Timothy M. Rusche
     Mary D. Manesis
Attorneys For Defendant
MARATHON REFINING LOGISTICS SERVICE LLC

MARATHON'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

58197026v.3