UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JANICE WOOD, ET AL.,**<br>Plaintiffs,<br>vs.<br>**MARATHON REFINING LOGISTICS SERVICE LLC,**<br>Defendant. | CASE NO. 19-cv-04287-YGR<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br>Re: Dkt. No. 16 |

Plaintiffs Janice Wood, Anthony Alfaro, and Aaron Dietrich bring this putative class action against defendant Marathon Refining Logistics Services LLC, alleging that defendant's standby shift practices violate the reporting time pay provisions of Industrial Welfare Commission ("IWC") Wage Order 1-2001. Now before the Court is defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that (i) plaintiffs' claims are preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. section 185(a); and (ii) plaintiffs fail to state a claim for reporting time pay.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** defendant's motion **WITH LEAVE TO AMEND**.

**I.    BACKGROUND**

As alleged in the complaint, plaintiffs bring this action for violations of Wage Order 1-2001, the California Labor Code, and California Unfair Competition Law, on behalf of themselves and other operators and maintenance workers employed at defendant's refinery in Martinez, California. Specifically, plaintiffs challenge defendant's alleged practice of scheduling employees for mandatory standby shifts without paying required reporting time pay. Plaintiffs allege that during standby shifts, and in the case of operators, before, after, and during standby

shifts, employees must be available to receive a call from defendant. If the employees cannot be reached, they allegedly are considered absent without leave and subject to disciplinary action. If they receive a call, they allegedly must report for duty at the refinery within a designated or reasonable amount of time. If they do not receive a call during a standby shift, the employees allegedly are not compensated. Plaintiffs allege that these standby shifts impose a significant cost on employees, precluding them from committing to jobs, classes, caring for family members, social plans, out-of-town travel, and travel to areas without cell reception, while working standby shifts.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding whether the plaintiff has stated a claim, a court must assume that plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

## III. DISCUSSION

The Court begins by addressing the issue of whether plaintiffs' claims are preempted by section 301 of the LMRA in light of the collective bargaining agreements ("CBAs") into which defendant and the United Steel Workers union entered, as well as related guidelines.[1]

---

[1] Defendant's request for judicial notice of the two collective bargaining agreements and related guidelines is **GRANTED**. *See Jones v. AT&T*, No. C 07-3888 JF, 2008 WL 902292, *2 (N.D. Cal. Mar. 31, 2008) ("Moreover, relevant case law supports the proposition that the Court may take judicial notice of a CBA in evaluating a motion to dismiss.") (citing cases). The request

2

### A. Preemption Under the Labor Management Relations Act

Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). By enacting this statute, Congress charged federal courts with a "mandate . . . to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985); *see also Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 104 (1962) (explaining that "in enacting [section] 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules"); *Textile Workers Union v. Lincoln Mills of Ala.,* 353 U.S. 448, 456 (1957) (concluding that "the substantive law to apply in suits under [section] 301(a) is federal law, which the courts must fashion from the policy of our national labor laws"). As a result of this broad federal mandate, the Supreme Court has explained, the "preemptive force of [section] 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 23 (1983) (internal quotation marks omitted).

To determine whether a claim is preempted by section 301, the Court must first consider "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). If the right exists solely as a result of a CBA, the claim is preempted and the court's analysis ends. *Id.* If, however, the right exists independently of a CBA, the court must consider "whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (quoting *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 394 (1987)). If such analysis is required, the claim is preempted. *Id*. at 1059-60. This is true even where plaintiffs have not alleged a breach of

---

for judicial notice of the award issued in "In the Matter of an Arbitration Between United Steel Workers Local 5 and Tesoro Refining & Marketing Company" is **DENIED** as moot.

3

contract in their complaint, if their claim is either grounded in the provisions of the labor contract or requires interpretation of it. *Id*. at 1060. If no such analysis of a CBA is required, the claim may proceed under state law. *Id*.

Here, the first prong of the preemption test is straightforward, that is, plaintiffs' claims involve a right conferred by California law, not the CBAs. Defendant argues that plaintiffs' claims nevertheless are preempted because they are "substantially dependent" on the terms of at least two heavily-negotiated CBAs between defendant and the United Steel Workers union, and related guidelines and shop practice, which purportedly govern the putative class members' terms and conditions of employment.

To determine whether a state law right is "substantially dependent" on the terms of a CBA, the Court must decide "whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA." *Id*. at 1060 (quoting *Livadas v. Bradshaw,* 512 U.S. 107, 125 (1994)). "Although the look to/interpret distinction is not always clear or amenable to a bright-line test, some assessments are easier to make than others." *Id*. (internal quotation marks and citations omitted). For example, neither "look[ing] to the CBA merely to discern that none of its terms is reasonably in dispute . . . , nor the simple need to refer to bargained-for wage rates in computing [a] penalty . . . is enough to warrant preemption." *Id*. (internal quotation marks and citations omitted); *Livadas,* 512 U.S. at 124 ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."). Similarly, "alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim." *Burnside*, 491 F.3d at 1060 (quoting *Cramer v. Consol. Freightways, Inc.,* 255 F.3d 683, 691 (9th Cir. 2001)). Indeed, the Ninth Circuit has stressed that "in the context of [section] 301 complete preemption, the term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000). Moreover, "the totality of the policies underlying [section] 301—promoting the arbitration of labor contract disputes, securing the uniform interpretation of labor contracts, and protecting the states' authority to enact minimum labor standards—guides our understanding of what constitutes 'interpretation.'" *Id*. at

4

1108-1109.

Plaintiffs' claims center around defendant's standby shift system. The complaint addresses some aspects of the system, including that operators had 3.5 hours to arrive at the refinery when receiving a call, maintenance workers had 30 minutes to respond to a call and 2 hours after that to arrive at the refinery, and employees were subject to discipline for failing to meet these requirements. The complaint, however, omits certain material facts, at least some of which are addressed in the CBAs and related guidelines. Relevant here, the CBA guidelines provide:

**MANDATORY STANDBY IN OPERATIONS**
Revision 1 2/28/02

The Company will determine the numbers of employees per crew that will be required to standby to cover overtime needs. The Union will designate employees (designated standby) for each position that will be required to cover all overtime needs. Employees must be qualified in order be designated to cover a position. In the event that coverage is inadequate, the Company may designate additional employees.

Note: Employees deemed shift workers would be given the latitude to formalize, in writing, a mandatory standby system that is different from the one listed below. *By doing this, we provide maximum flexibility for operators to voluntarily fill standby assignments in whatever way is most attractive to the individual crews.* The procedure used must be: (a) agreed to by a majority of the employees and, (b) be approved by the appropriate Area Superintendent. However, until an alternative Mandatory Callout Procedure is developed and approved by the Company, the operators must follow and abide by the mandatory callout procedure detailed below. In the event the alternative procedure selected fails to provide adequate coverage, the employees will be required to revert to the mandatory overtime procedure detailed below. If the mandatory program has been reverted to, it will remain in effect for six months. After such six months the operators may exercise the latitude provided in this note.

(Emphasis supplied.)[2] It is not at all clear based on plaintiffs' complaint the extent to which this case involves a "mandatory" standby obligation or a "voluntary" one, and in any event, whether "crews" created standby shift systems for their own convenience or used defendant's default procedure.

Even if the default procedure applies, its terms are defined by several interrelated

---

[2] The guidelines further state that "[t]he Union recognizes the need to have bargaining unit employee's cover bargaining unit work, including mandatory standby for overtime."

5

provisions in the CBAs, which this Court would need to examine in order to adjudicate this case. For example, to determine the extent of the alleged constraints on plaintiffs' time during standby shifts, the Court would have to analyze terms pursuant to which standby employees may "trade or otherwise exchange standby assignments," may notify defendant if they are "otherwise unavailable when on standby," and must reach the refinery "within a reasonable time" after receiving a call. Likewise, given that the complaint alleges that employees "must regularly be available" to fill standby shifts, the Court would have to interpret provisions of the CBAs and guidelines that, for example, provide employees with "the opportunity to remove themselves from the Voluntary Overtime List." Such interpretation requires more than simply flipping through the CBAs and related guidelines. Rather, as currently pleaded, plaintiffs' complaint would have this Court to wade into a maze of nuanced and ambiguous provisions in multiple, heavily-negotiated agreements. This, however, is the province of an arbitrator, not a court.

*Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024 (9th Cir. 2019), which both parties cite, is in accord. There, an operating nurse sought to receive time-and-a-half pay for certain extra shifts worked. *Id*. at 1034-35. The nurse asserted state law claims, which the court assumed arose independently from the relevant CBA. *Id*. at 1035. The Ninth Circuit nevertheless found that section 301 preempted her claims because resolving her case would have required interpretation of the CBA. *Id*. at 1035-36. Specifically, the court found that the nurse's claims were substantially dependent on a CBA provision providing that nurses were owed premium pay for extra shifts "except when there [wa]s a change of schedule agreed upon by the Medical Center and nurse." *Id*. at 1036. Thus, to resolve the claims, the court would have had to interpret the meaning of the "agreement exception," which was not "directly [or] clearly explain[ed]" in the CBA. *Id*.[3] Likewise, here, the CBAs and related guidelines set forth the terms and conditions of

---

[3] The nurse's case had been consolidated with another case brought by a group of truck drivers, which was also before the *Kobold* court. The truck drivers claimed that their employer had failed to make timely premium payments to a benefit plan negotiated under a CBA. 832 F.3d at 1037. The drivers asserted claims under state employment and labor laws, which provided that those sorts of deductions were to be paid consistent with the time and manner set out in the CBA. *Id.* at 1037-38. The Ninth Circuit found that the drivers' case did not require CBA interpretation because the CBAs "unambiguously specif[ied] [the employer]'s obligation to deduct

the standby shift system upon which plaintiffs base their claims. The Court would be required to interpret these agreements in order to resolve plaintiffs' claims that they are entitled to reporting time pay for time spent working these shifts.[4]

Finally, plaintiffs concede that if the LMRA preempts their claims, the claims must be dismissed for failure to exhaust the grievance and arbitration procedures in the CBAs. *See United Paperworkers Int'l. Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 37 (1987) ("[W]here the [collectively-bargained] contract provides grievance and arbitration procedures, those procedures must first be exhausted[.]"). Thus, because section 301 preempts plaintiffs' claims, they are dismissed.[5] However, the Court does not have sufficient information to determine whether plaintiffs may be able to amend their complaint to avoid preemption, that is, in such a way that the Court would not need to interpret the CBAs or guidelines to resolve the claims. Accordingly, the Court dismisses the claims with leave to amend.[6]

---

funds from [employee] paychecks; the amount and frequency of the deductions; to whom the deduction[s] must be remitted and for what purpose; and the terms of employee eligibility for the health benefits." *Id*. at 1040. As explained, the CBAs and guidelines here lack such unambiguous specificity regarding the standby shift system.

[4] *Valles v. Ivy Hill Corp.,* 410 F.3d 1071 (9th Cir. 2005) and *Rodriguez v. Pac. Steel Casting Co.*, No. 12-CV-00353 NC, 2012 WL 2000793 (N.D. Cal. June 1, 2012), on which plaintiffs rely, are inapposite. In both, the defendants argued that state law claims were preempted because it was necessary for the court to consider whether CBAs waived plaintiffs' rights to meal and rest periods. The courts concluded that the state law rights at issue were not waivable, and thus, there was no need to look to the CBAs. This case does not involve any such waiver issue.

[5] Defendant additionally argues that plaintiffs' claims are preempted because the Court must look to "actual shop practice and implementation history of standby shifts" to decide this case. This aspect of defendant's argument fails to persuade. Although the Ninth Circuit has recognized that interpretation of a CBA requires consideration of shop practices, *Kobold*, 832 F.3d at 1046, it does not follow from this that every time a court must consider the past practices of union employees, preemption applies. Indeed, such a rule would have unreasonable results, namely, every employee claim—no matter how tangentially related to a CBA—would trigger preemption. Suffice it to say, each case must be individual analyzed to determine the extent to which a CBA impacts an action.

[6] Because the Court finds the claims as pleaded are preempted, it need not reach the question of whether the claims are subject to dismissal for failure to state a claim.

7

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is **GRANTED WITH LEAVE TO AMEND**. Any amended complaint must be filed no later than **Monday, January 6, 2020**. No new claims or parties may be added without leave of court or stipulation of the defendant. Any response to an amended complaint is due **fourteen (14) days** after plaintiffs' filing, except that if the amended complaint if filed between December 24, 2019 and December 31, 2019, the deadline for a response shall be extended by **seven (7) days**. In any such response, defendant may not move to dismiss based on arguments that should have been raised previously.

This Order terminates Docket Number 16.

**IT IS SO ORDERED.**

Dated: December 5, 2019

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**