**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JANICE WOOD, ET AL.,**<br>    Plaintiffs,<br>   vs.<br>**MARATHON REFINING LOGISTICS SERVICES LLC,**<br>    Defendant. | CASE NO. 19-cv-04287-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br>Re: Dkt. Nos. 29, 35, 36 |

This is the second round of briefing on the complaint filed by plaintiffs Janice Wood, Anthony Alfaro, and Aaron Dietrich against defendant Marathon Refining Logistics Services LLC.

In its prior order, this Court granted defendant's motion to dismiss with leave to amend on the ground that plaintiffs' claims were preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. section 185(a). Specifically, the Court held that preemption applied based on the second prong of the preemption test set forth in *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053 (9th Cir. 2007), that is, because plaintiffs' claims, as pleaded, appeared to be "substantially dependent" on the terms of a collectively bargained agreement ("CBA") and related guidelines into which defendant and plaintiffs' union entered. In so holding, the Court found that while the complaint addressed some aspects of the standby shift system, it omitted certain material facts that were addressed in the CBAs and related guidelines. For example, the Court noted that it was unclear from the complaint whether this case involves a "mandatory" or "voluntary" standby obligation, whether "crews" created standby shift systems for their own convenience or used defendant's default procedure, the extent to which standby shift employees were able to "trade or

otherwise exchange standby assignments," and what it meant for standby shift employees to be required to reach the refinery "within a reasonable time" after receiving a call. The Court concluded that as pleaded, plaintiffs' complaint would require the Court to "wade into a maze of nuanced and ambiguous provisions in multiple, heavily negotiated agreements," and thus, the claims were preempted.

After dismissal of the initial complaint, plaintiffs filed a first amended complaint, followed by the operative second amended complaint ("SAC").[1] Defendant moves to dismiss the SAC on the same grounds as its prior motion, that is, because plaintiffs' claims are preempted by section 301 and because plaintiffs fail to allege a plausible legal theory upon which they are entitled to reporting time pay. The Court considers each purported basis for dismissal in turn.

**A.     Preemption Under the Labor Management Relations Act**

At this juncture and in light of the prior order, the Court considers whether new allegations in the SAC establish that plaintiffs' claims are not "substantially dependent" on the terms of the CBAs or related guidelines.

On the one hand, the SAC sets forth a broad theory of the case that raises some of the same concerns that the Court identified in its prior order. Namely, the Court's prior order took issue with specific CBA provisions suggesting that standby shifts might be voluntary, as opposed to mandatory. By identifying such provisions as problematic, the Court impliedly rejected the position that alleged tethers and constraints on employees' time during standby shifts were the only issues relevant to plaintiffs' claims, and thus, to this Court's preemption analysis. Nevertheless, plaintiffs appear to assert this very position in the SAC. Thus, the Court finds that plaintiffs' claims are preempted insofar as they are based on a voluntary standby shift system. The

---

[1] The FAC included allegations that, as described herein, were intended to address issues raised by the Court in its prior order. The SAC pleaded an additional cause of action for violation of the Private Attorneys General Act, California Labor Code §§ 2698, *et seq*. The SAC also attaches the CBAs, which are entitled: (i) "Articles of Agreement between Tesoro Refining Company Martinez Refinery and the United Steelworkers International Union Local No. 5 and the United Steelworkers International Union, February 1, 2015," and (ii) "Articles of Agreement between Tesoro Refining Company Martinez Chemical Plant and the United Steelworkers International Union Local No. 5, March 1, 2015."

Court will not entertain claims regarding a system where employees have "maximum flexibility to voluntarily fill standby assignments in whatever way is most attractive to the individual crews," as negotiated by union representatives. Such claims are most appropriately resolved by arbitrators.

On the other hand, the SAC and plaintiffs' briefing also appear to articulate a narrower, plausible theory that would not require interpretation of the CBAs and thus is within the purview of this Court. The SAC alleges that plaintiffs' claims are based on the default policy provided for in the CBAs.[2] Plaintiffs highlight several CBA provisions that refer to standby shifts as "mandatory" and give defendant—not plaintiffs' unions—ultimate discretion to "determine the numbers of employees per crew that will be required to standby to cover overtime needs." In addition, although the CBAs provide that standby shift employees must reach the refinery "within a reasonable time" after being contacted, plaintiffs' claims are based on a purported maximum response time of 3.5 hours, eliminating any need for the Court to interpret the CBAs. Moreover, the SAC clarifies that the voluntary overtime lists referenced in the Court's prior order were used to fill overtime positions before employees on the *mandatory* standby list were called. Thus, according to plaintiffs, an employee on mandatory standby still was required to be available if the voluntary overtime list did not provide sufficient coverage, which often happened. The Court agrees that the ability to remove oneself from a *different* roster of employees has little relationship to the Court's analysis of plaintiffs' claims regarding a mandatory standby shift process.

Accordingly, defendant's motion is granted insofar as plaintiffs' claims are based on a voluntary standby shift system, as such claims are preempted by the LMRA. Defendant's motion is denied with respect to the claims that are alleged to be, in fact, mandatory.

///

///

---

[2] Defendant contends that the Tract 3 and Wharf groups within Operations have negotiated separate agreements regarding overtime. Plaintiffs appear to dispute whether these agreements were in fact alternatives entered into pursuant to the CBAs, maintaining that they are not aware of any agreed-upon written policies different than the ones described in the CBAs. At this juncture, the Court accepts as true plaintiffs' allegation, but notes that plaintiffs may not pursue claims based on any separately negotiated agreements.

**B.     Failure to State a Plausible Claim for Relief**

Having found that plaintiffs' claims, at least in part, are not preempted by the LMRA, the Court next considers whether those claims are subject to dismissal for failure to state a claim.

Defendant contends that plaintiffs' reporting time pay claims lack a legal basis, arguing that they are unsupported by *Ward v. Tilly's Inc.*, 31 Cal. App. 5th 1167 (2019) and 1-2001 Wage Order section 5(a). In *Ward*, the California Court of Appeal considered a challenge to the "on-call scheduling" practices of the plaintiff's former employer. 31 Cal. App. 5th at 1170. As alleged, employees assigned to on-call shifts were required to call in, two hours before the start of their shifts, to find out whether they should actually come in to work. *Id*. If they were told to come in, they were paid for the shifts. *Id*. If not, they did not receive compensation for having been "on call." *Id*. The court concluded that the on-call scheduling practices triggered Wage Order 7-2001, which regulates wages, hours, and working conditions in the mercantile industry, explaining that "on-call shifts burden employees, who cannot take other jobs, go to school, or make social plans during on-call shifts—but who nonetheless receive no compensation from Tilly's unless they ultimately are called in to work." *Id*. at 1171.

The Ninth Circuit recently followed *Ward*'s interpretation of state law in *Herrera v. Zumiez, Inc.*, No. 18-15135, 2020 WL 1301057 (9th Cir. Mar. 19, 2020). The question before the court in *Hererra* was whether calling one's employer at an appointed time before a scheduled shift constituted "reporting for work" under Wage Order 7-2001. *Id*. at *4. On this issue, the Ninth Circuit found "no reason to doubt that the California Supreme Court would reach a decision consistent with" the California Court of Appeal's decision in *Ward*. *Id*. at *5. Thus, following *Ward*, the court concluded that under Wage Order 7-2001, "a requirement that employees call their manager thirty minutes to one hour before a scheduled shift constitutes 'report[ing] for work.'" *Id*. at *9.

The on-call scheduling practices at issue in *Ward* and *Herrera* are not identical to the standby shift system at issue in this case, with the most notable difference being that on-call scheduling requires employees to *call in* to work before their shifts, while plaintiffs' standby shift system allegedly requires employees to be *available to receive calls* during the shift. However,

4

nothing in these cases suggests their rationales extend only to call-in reporting schemes.[3] Here, the Court finds that the rationale set forth in *Ward* and affirmed in *Herrera* applies with equal force. Much like "requiring employees to come to a workplace at the start of a shift without a guarantee of work," the standby shifts, based on the facts alleged, "are enormously beneficial to employers: They create a large pool of contingent workers whom the employer can call on if a store's foot traffic warrants it, or can tell not to come in if it does not, without any financial consequence to the employers. . . . It thus creates no incentive for employers to competently anticipate their labor needs and to schedule accordingly." *Ward*, 31 Cal. App. 5th at 1183. In addition, "[l]ike other kinds of contingent shifts," the standby shifts allegedly "impose tremendous costs on employees" by "significantly limit[ing] employees' ability to earn income, pursue an education, care for dependent family members, and enjoy recreation time." *Id*. Further, as in *Ward*, plaintiffs allege that employees' "activities are constrained not only during the [] shift, but . . . before it as well," and during this time, "they cannot do things that are incompatible with making a phone call, such as sleeping, watching a movie, taking a class, or being in an area without cell phone service." *Id*. In sum, construing the facts alleged in the SAC as true and in the light most favorable to plaintiffs, defendant's standby system implicates the "specific abuse[s] the IWC sought to combat by enacting a reporting time pay requirement." *Id*. at 1182-83.

Wage Order 1-2001, viewed in light of *Ward*, likewise provides a cognizable legal basis for plaintiffs' claims. The wage order, which regulates wages, hours, and working conditions in the manufacturing industry, provides, in relevant part, as follows:

> Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work,

---

[3] As defendant points out, the *Herrera* court implied a distinction between standby and call-in shifts, disregarding an authority cited by the defendant that "addresses the factors to consider in determining whether 'on-call' time for employees working on 'standby' status, such as hospital workers, is sufficiently restrictive to constitute 'hours worked.'" *Id*. at *10. However, the Ninth Circuit did not discuss or endorse a standard that applies to standby shifts, nor did the court state that the rationale of *Ward* would not extend to the standby shift context where an employer exercised sufficient control over employees on standby shifts.

5

> but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than minimum wage.

Wage Order 1-2001, subdivision 5(A). Defendant makes much of the fact that the wage order does not explicitly mandate reporting time pay for employees like plaintiffs, arguing that the IWC "chose not to award reporting time pay to employees on standby absent some affirmative duty to 'report' to the employer." This argument, however, fails to persuade. Wage Order 1-2001 provides that employees must be compensated if they are "required to report for work" and "do[] report" but are "not put to work." As the *Ward* court held, "report for work,' within the meaning of the wage orders, "does not have a single meaning." 31 Cal. App. 5th at 1185. Instead, "it is best understood as presenting oneself *as ordered*," which "is defined by the party who directs the manner in which the employee is to present himself or herself for work—that is, by the employer." *Id*. (citations omitted) (emphasis in original). Thus, "report for work" may include making oneself available to receive a call to report for duty, subject to discipline from an employer, as is alleged here.[4]

The cases on which defendant relies do not hold to the contrary. In *Johnson v. Sky Chefs, Inc.*, No. 11-CV-05619-LHK, 2012 WL 4483225, at \*6 (N.D. Cal. Sept. 27, 2012), the court dismissed a reporting time pay claim where plaintiff, who had been called-in to work for a meeting with her manager, failed to allege that she was "either scheduled to or had the expectation of working a normal shift." Here, insofar as plaintiffs allege a mandatory standby shift system, plaintiffs had an expectation that they may be required to report physically for work to perform work-related duties when working a standby shift.

Likewise, defendant's reliance on *Mendiola v. CPS Security Solutions, Inc.*, 60 Cal. App. 4th 833 (2015) fails to support dismissal. In *Mendiola*, the court held that guards who were required to be on site and available to respond to disturbances as needed were entitled to reporting time pay. 60 Cal. App. 4th at 837. In so holding, the court identified numerous factors bearing on

---

[4] While subdivision 5(D) of Wage Order 1-2001 excludes from its scope "employee[s] on paid standby status" who are "called to perform assigned work at a time other than the employees scheduled reporting time," it is silent as to employees like plaintiffs who allegedly work unpaid standby shifts.

whether on-call time constitutes hours worked, including "whether there [a]re excessive geographical restrictions on employee's movements," "whether a fixed time limit for response [i]s unduly restrictive," and "whether the employee had actually engaged in personal activities during call-in time." *Id.* at 841. Defendant contends that under *Mendiola*, "employers may utilize uncompensated standby systems [if] they satisfy a multifactor test," and defendant has satisfied that test here. However, assuming the *Mendiola* test applies,[5] whether defendant satisfies the multifactor test is a factual determination reserved for a later stage in this case. At this juncture, the Court simply finds that plaintiffs have stated a plausible claim for relief.[6]

### C. Conclusion

For the reasons explained, defendant's motion to dismiss is **GRANTED** insofar as plaintiffs' claims are based on a voluntary standby shift system, as such claims are preempted by section 301 of the LMRA. Defendant's motion is **DENIED** insofar as plaintiffs' claims are based on a mandatory standby shift system.[7]

---

[5] Plaintiffs contend that the *Mendiola* test is inapplicable because it "applies to claims that periods of time spent on call is compensable time worked," and here, "[p]laintiffs do not assert the traditional on-call claim." The Court takes no position on whether *Mendiola* provides the applicable standard for assessing the merits of plaintiffs' claims. As explained herein, because plaintiffs have stated a plausible claim for relief regardless of the standard, the Court need not reach that question at this juncture.

[6] *Dimercurio v. Equilon Enterprises LLC*, No. 19-CV-04029-JSC, 2020 WL 227262 (N.D. Cal. Jan. 15, 2020) is in accord. There, the court found that it could not "say as a matter of law that defendant's standby policy requiring [p]laintiffs to be on call for pre-scheduled 1.5-hour periods did not require [p]laintiffs to 'report for work' within the meaning of the Wage Order." *Id.* at *8.

[7] Defendant's request for judicial notice of the two collective bargaining agreements and related guidelines is **GRANTED**. *See Jones v. AT&T*, No. C 07-3888 JF, 2008 WL 902292, *2 (N.D. Cal. Mar. 31, 2008) ("Moreover, relevant case law supports the proposition that the Court may take judicial notice of a CBA in evaluating a motion to dismiss.") (citing cases). Defendant's request for judicial notice of an arbitration award and settlement agreements are **DENIED**, as such materials are not appropriate for the Court to review at this juncture. Plaintiffs' request for judicial notice of filings in *Bradford* and *Dimercurio* is **DENIED** as moot. Additionally, the parties' administrative motion requesting permission to submit and brief supplemental authority (Dkt. No. 36) is **GRANTED** with respect to the supplemental authority, which the Court has reviewed and cited herein, and **DENIED** with respect to the request to submit additional briefing.

Defendant shall file an answer to the remaining allegations by **Friday, May 1, 2020**. A Case Management Conference shall be set for **Monday, May 18, 2020** at **2:00 p.m.** in the Federal Building, 1301 Clay Street, Oakland in Courtroom 1.

This Order terminates Docket Numbers 29, 35, and 36.

**IT IS SO ORDERED.**

Dated: April 15, 2020

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**