KRISTINA L. HILLMAN, Bar No. 208599
JANNAH V. MANANSALA, Bar No. 249376
CAITLIN GRAY, Bar No. 305118
ALEXANDER S. NAZAROV, Bar No. 304922
WINNIE VIEN, Bar No. 347796
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
Telephone (510) 337-1001
Fax  (510) 337-1023
E-Mail:  courtnotices@unioncounsel.net
            khillman@unioncounsel.net
            jmanansala@unioncounsel.net
            cgray@unioncounsel.net
            anazarov@unioncounsel.net
            wvien@unioncounsel.net

AARON KAUFMANN, Bar No. 148580
DAVID POGREL, Bar No. 203787
KAUFMANN & GROPMAN, LLP
1939 Harrison Street, Suite 620
Oakland, CA  94612
Telephone (510) 817-4380
Email: akaufmann@kgworklaw.com
         dpogrel@kgworklaw.com

*Attorneys for the Class and Plaintiffs/Class Representatives*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE WOOD, ANTHONY ALFARO, AARON DIETRICH, JASON BARTLING and JOHN DOVALA on behalf of themselves and others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>MARATHON REFINING LOGISTICS SERVICES LLC,<br><br>          Defendant. | Case No. 4:19-cv-04287-YGR<br><br>*[Assigned for all purposes to the Honorable Yvonne Gonzalez Rogers]*<br><br>**NOTICE OF PLAINTIFFS/CLASS REPRESENTATIVES' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        January 13, 2026<br>Time:       2:00 p.m.<br>Before:     Hon. Yvonne Gonzalez Rogers<br>Courtroom:  1, 4th Floor, Oakland Div. |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on January 13, 2026 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Hon. Yvonne Gonzalez Rogers, United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, in Courtroom 1, 19th Floor, Plaintiffs/Class Representatives ANTHONY ALFARO, AARON DIETRICH, JASON BARTLING and JOHN DOVALA ("Class Representatives") will and hereby do respectfully move this Court for preliminary approval of the proposed class action settlement and settlement of California Private Attorneys General Act claims brought under the California Labor Code ("PAGA").

Class Representatives request that this Court enter an Order (1) granting preliminary approval to the proposed class action settlement; (2) conditionally approving the PAGA settlement; (3) conditionally certifying a follow-on Settlement Class to be added to the certified class; (4) appointing CPT Group, Inc. ("CPT") as Settlement Administrator; (5) approving the form, content, and method of distribution of Notice of Class Settlement proposed by counsel to provide notice of the class settlement; and (6) scheduling a hearing regarding final approval of the proposed settlement, Class Counsel's request for attorneys' fees and costs, and service awards to the Class Representatives.

This motion is made on the grounds that proposed settlement is the product of arm's length negotiations by qualified class counsel with the assistance of Magistrate Judge Joseph C. Spero acting as settlement judge. Its terms are fair, reasonable and adequate considering the risks the Plaintiffs/Class Representatives and Class Members face in connection with continuing to litigate liability, proof of damages, and any appeals.

This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Aaron Kaufmann and exhibits thereto; the Declaration of Alexander Nazarov; the Declaration of Julie Green for Settlement Administrator CPT; the Proposed Order; the Court's record in this action; all matters of which the Court may take notice, and any other such evidence, briefing, or argument that may be presented to the Court at or before the time of hearing.

# <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS & AUTHORITIES ............................................................................ 1

I.    INTRODUCTION ........................................................................................................................ 1

II.   BACKGROUND .......................................................................................................................... 2

    A.    Plaintiffs' Factual Allegations ............................................................................................ 2

    B.    Procedural Background ....................................................................................................... 3

III.  PROPOSED SETTLEMENT ....................................................................................................... 5

    A.    Settlement Class Definitions ............................................................................................... 5

    B.    Plan of Allocation ............................................................................................................... 6

        1.    Net Settlement Fund & Allocation .............................................................................. 6

        2.    LWDA Payment .......................................................................................................... 7

        3.    Attorneys' Fees and Litigation Expenses ................................................................... 7

        4.    Class Representative Service Awards .......................................................................... 8

        5.    Settlement Administration Fees and Proposed Administrator ..................................... 8

        6.    Distribution Plan and Possible Cy Pres Allocation .................................................... 8

    C.    Class Settlement Notice Procedure ..................................................................................... 9

IV.   ARGUMENT .............................................................................................................................. 10

    A.    Conditional Certification of the Follow-On Class of Operators is Appropriate ................ 10

        1.    The Follow-On Settlement Class Satisfies the Requirements of Rule 23(a) ............. 10

        2.    The Follow-On Settlement Class Meets the Requirements of Rule 23(b)(3) ............ 12

    B.    Preliminary Approval is Appropriate Because the Settlement is Fair,
        Reasonable and Adequate .................................................................................................. 13

    C.    The Settlement is the Product of Informed, Non-Collusive Negotiation ........................... 14

    D.    The Settlement Falls Within the Range of Possible Approval ........................................... 15

        1.    The Strength of the Class Case and the Risk of Further Litigation
            Support Preliminary Approval .................................................................................. 15

        2.    The Settlement Consideration is Fair ........................................................................ 16

        3.    The Planned Allocation Is Fair ................................................................................. 16

        4.    The PAGA Claim Allocation is Fair ......................................................................... 18

        5.    The Proposed Service Awards Are Reasonable, and Are Subject to Court Review ...... 18

        6.    Attorneys' Fees and Costs that Class Representatives Will Request Are Reasonable ... 20

        7.    Class Action Fairness Act Notice .............................................................................. 20

    E.    The Proposed Notice is the Best Notice Practicable ......................................................... 21

V.    CONCLUSION ........................................................................................................................... 22

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Arias v. Super. Ct.,*
   46 Cal. 4th 969 (2009) .......................................................................................................... 10

4

*Boyd v. Avanquest N. Am., Inc.,*
   No. 12-cv-04391-WHO, 2015 WL 4396137 (N.D. Cal. July 17, 2015) ................................. 13

5

*Chu v. Wells Fargo Invs., LLC,*
   Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011) ............. 19

6

*Churchill Village, LLC v. General Electric,*
   361 F.3d 566 (9th Cir. 2004) ................................................................................................ 21

7

*Clemens v. Hair Club for Men, LLC,*
   No. C 15-01431 WHA, 2016 WL 3442774 (N.D. Cal. June 23, 2016) .................................... 18

8

*Covillo v. Specialtys Cafe,*
   No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ....................................... 19

9

*Custom Led, LLC v. eBay, Inc.,*
   No. 12-CV-00350-JST, 2013 WL 4552789 (N.D. Cal. Aug. 27, 2013) .................................... 12

10

*Cuzick v. Zodiac U.S. Seat Shells, LLC,*
   No. 16-CV-03793-HSG, 2017 WL 4536255 (N.D. Cal. Oct. 11, 2017) ............................. 13, 19

11

*Deaver v. Compass Bank,*
   No. 13-CV-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) .................................... 19

12

*EEOC v. Kovacevich "5" Farms,*
   No. CV-F-06-165 OWW/TAG, 2007 WL 1174444 (E.D. Cal. Apr. 19, 2007) ...................... 10-11

13

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ................................................................................. 10, 11, 12, 13

14

*Harris v. Vector Mktg. Corp.,*
   No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ................................. 13, 19

15

*In re Bluetooth Headset Prod. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ................................................................................................ 20

16

*In re Mercury Interactive Securities Litigation,*
   618 F.3d 988 (9th Cir. 2010) ................................................................................................ 20

17

*Mazza v. Am. Honda Motor Co., Inc.,*
   666 F.3d 581 (9th Cir. 2012) ................................................................................................ 11

18

*Moniz v. Adecco USA, Inc.,*
   72 Cal. App. 5th 56 (2021) .................................................................................................. 13

19

*Morrison v. Ross Stores, Inc.,*
   Case No. 4:18-cv-2671-YGR, 2021 WL 3852726 (N.D. Cal. Aug. 27, 2021) ...................... 10, 21

20

*Naranjo v. Spectrum Security Services, Inc.,*
   15 Cal. 5th 1056 (2024) ...................................................................................................... 15

21

*O'Connor v. Uber Techs., Inc.,*
   201 F.Supp.3d 1110 (N.D. Cal. 2016) ............................................................................. 13, 14

22

*Rodriguez v. W. Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) ................................................................................................ 19

23

*Rodriquez. v. Belfor USA Group, Inc.,*
   No. 22-CV-02071-VKD, 2025 WL 2899211 (N.D. Cal. Oct. 9, 2025) .................................... 14

24

*Smith v. Cardinal Logistics,*
   No. 07-2104 SC, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ............................................ 11

25

*Soc. Sers. Union, Local 535 v. County of Santa Clara,*
   609 F.2d 944 (9th Cir. 1979) ................................................................................................ 11

26

*Van Kempen v. Matheson Tri-Gas, Inc.,*
   No. 15-CV-00660-HSG, 2017 WL 3670787 (N.D. Cal. Aug. 25, 2017) .................................. 18

27

*Van Vranken v. Atlantic Richfield Co.,*
   901 F.Supp. 294 (N.D. Cal. 1995) ........................................................................................ 19

28

**CASES (cont'd)**

*Villegas v. J.P. Morgan Chase & Co.*,
   CV 09-00261 SBA EMC, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ...................................... 14

*Ward v. Tilly's Inc.*
   31 Cal. App. 5th 1167 (2019) .......................................................................................... 15

*Williams v. Condensed Curriculum Int'l, Inc.*,
   No. 4:20-CV-05292-YGR, 2022 WL 20469949 (N.D. Cal. June 7, 2022) ...................................... 13

*Williams v. Superior Court*,
   3 Cal. 5th 531 (2017) .................................................................................................... 13

*Wolph v. Acer Am. Corp.*,
   No. 09-01314 JSW, 2013 WL 5718449 (N.D. Cal. Oct. 21, 2013) ............................................ 19

**STATUTES**

28 U.S.C.
   § 1331 ......................................................................................................................... 3
   § 1332 ......................................................................................................................... 3
   § 1715 ....................................................................................................................... 20

29 U.S.C.
   § 185(a) ....................................................................................................................... 3

Fed. R. Civ. P. Rule
   23 ............................................................................................................ 10, 11, 12, 21

Cal. Labor Code
   § 2699 .................................................................................................................... 7, 13

Labor Code
   § 226 ....................................................................................................................... 3, 6

**OTHER AUTHORITIES**

Manual for Complex Litigation
   § 21.632 (4th ed. 2004) ................................................................................................ 10

# MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

Plaintiffs/Class Representatives seek preliminary approval of a $9 million settlement of California wage and hour claims on behalf of class of approximately 604 current and former Operators and Maintenance Workers who worked for Defendant Marathon Refining Logistics Services LLC ("Defendant" or "Marathon") at Marathon's Martinez, California facility. The proposed settlement, detailed in the "Class Action Settlement Agreement and Release" ("Settlement Agreement" or "SA") attached as Exhibit A to the Kaufmann Declaration filed in support, also extends the Class and seeks a conditionally certified follow-on Class of Operators only who have worked since October 31, 2020 when the currently certified class period closed. The class claims arise out of the theory that Defendant violated California's law regarding reporting time pay by scheduling Operators and Maintenance Workers for standby shifts for which they were not paid wages unless called to report to work onsite. Plaintiffs also aver a claim for penalties under California's Private Attorneys General Act ("PAGA"). The settlement provides substantial relief to all members of the class of Operators and Maintenance Workers that this Court has already certified and the additional proposed follow-on Class of Operators and also allocates a reasonable amount to resolve the workers' PAGA claim. The settlement is non-reversionary and does not require Class Members to submit claims to be paid.

The proposed settlement is the product of arm's length negotiations by experienced class counsel, working with Magistrate Judge Joseph Spero serving as settlement judge. It is fair, reasonable and adequate considering the risks the Class Representatives and Class Members face in connection with continued litigation over liability, class membership, proof of damages, and other defenses asserted by Defendant. The net settlement fund contemplated under the terms of the Settlement Agreement represents approximately 23.5 percent of the maximum aggregate reporting time pay incurred by the Class. Declaration of Aaron Kaufmann ISO Class Representatives' Motion for Preliminary Approval of Class Action and PAGA Settlement ("Kaufmann Decl."), ¶ 12. The Settlement thus represents approximately 22.7 percent recovery on the maximum value of the class claims that remained for trial following Defendant's partial win on summary judgment, exclusive of

Class Counsel's attorneys' fees and costs. *Id.* When all wages, interest, and potential penalties of the workers subject trial are considered, Defendant's alleged total exposure in this action, not including PAGA penalties, was approximately $24.9 million at the time of settlement. *Id.*

Accordingly, Class Representatives and Class Counsel request that the Court (1) grant preliminary approval to the proposed class action settlement; (2) conditionally certify a Class of Operators who were employed between November 1, 2020 and October 5, 2025; (3) conditionally approve the PAGA settlement; (4) appoint CPT Group ("CPT") as Settlement Administrator; (5) approve the form, content, and method of distribution of the Notice of Class Settlement; and (6) schedule a hearing regarding final approval of the proposed Settlement, Class Counsel's request for attorneys' fees and costs, and service awards to the Class Representatives.

## II.    BACKGROUND

### A.    Plaintiffs' Factual Allegations

Plaintiffs allege Defendant Marathon implemented a consistent policy and practice for "mandatory standby" through October 31, 2020. During that period, Plaintiffs allege that Marathon required Operators and Maintenance Workers at its Martinez facility to be available for designated 12- and/or 24-hour standby shifts in addition to their regular shifts. Sixth Amended Complaint, Dkt. No. 260, ¶¶ 5,7. Plaintiffs further allege that Marathon required Operators and Maintenance Workers on standby to be ready to receive calls during specific time periods. If called to work the scheduled standby shift during one of these time periods, the Operator or Maintenance Worker was required to report as quickly as possible for duties at the facility in Martinez, often within two hours for being called. If an Operator or Maintenance Worker could not be reached during these designated standby time periods, the Operator or Maintenance Worker was considered absent without leave and was subject to disciplinary action. If an Operator or Maintenance Worker was not contacted at all during these standby time periods, the Operator or Maintenance was not compensated at all by Marathon, although his/her activities had been significantly constrained. *Id.* at ¶¶ 5, 7.

Marathon revised its standby policies in 2020 to address operational changes at the plant during the COVID pandemic and later. Effective approximately May 1, 2020, Marathon stopped scheduling standby shifts for all employees. On November 1, 2020, Marathon ceased refinery

operations and converted its facility to terminal-only operations. It later recommissioned part of the facility as a "renewable fuels facility." Resulting from these operational changes, most of the employees at the refinery—including many Settlement Class Members—were separated from their employment with Marathon on October 31, 2020, and a much smaller staff was retained for the more limited operations. During this subsequent period (after close of the class period)–November 1, 2020 to October 5, 2025–Marathon scheduled no Maintenance Workers for standby and only scheduled a limited number of Operators for standby periodically. For the entire period at issue, Marathon did not pay its Operators or Maintenance Workers reporting time pay. Dkt. No. 260, ¶¶ 58-60.  Marathon denies that reporting time pay was owed for time spent on standby.

### B.    Procedural Background

Plaintiffs filed this action in California Superior Court on June 24, 2019, alleging a claim for failure to pay reporting time pay in violation of Industrial Welfare Commission ("IWC") Wage Order 1-2001 ("Wage Order") and derivative claims for failure to pay all wages earned at termination in violation of Labor Code sections 200-203, failure to provide accurate itemized wage statements in violation of Labor Code sections 226 and 226.3, and violations of California's unfair competition law ("UCL"), Business and Professions Code sections 17200 et seq. Dkt. No. 1, Ex. A. Defendant removed the complaint to federal court based on the Class Action Fairness Act, 28 U.S.C. § 1332(d), and federal question jurisdiction under 28 U.S.C. § 1331. *Id.*

Marathon filed a motion to dismiss Plaintiffs' First Amended Complaint on August 30, 2019 on the grounds that Section 301 of the Federal Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), preempted Plaintiffs' claims and that Plaintiffs failed to state a claim for relief. Dkt. No. 16. On December 5, 2019, the Court granted Marathon's motion with leave to amend. Dkt. No. 24. Plaintiffs filed their Second Amended Complaint on January 24, 2020 (Dkt. No. 28) to which Marathon responded with a second motion to dismiss. Dkt. No. 29. The Court denied the motion, rejecting Marathon's and contention that Plaintiffs failed to state a claim. Dkt. No 39.

The parties participated in an early mediation on November 12, 2020.

Plaintiffs filed a motion for class certification on August 6, 2021. Dkt. No. 75. On June 14, 2022, following extended briefing and supplemental discovery, the Court granted class certification in

part, but deferred a ruling on the propriety of an Operator subclass until numerosity could be demonstrated. Dkt. No. 109. On August 25, 2022, the Court certified the Operator subclass. Dkt. No. 120.

On November 30, 2022, the Court approved a class notice. Dkt. 134. On February 24, 2023, the initial Notice was sent to 462 Class Members, with subsequent notices mailed on August 22, 2023 and May 31, 2024. Kaufmann Decl. ¶18. No Class Members opted out. *Id.*

On February 28, 2023, Plaintiffs filed their Motion for Partial Summary Judgment. Dkt. 145. Marathon filed its Opposition and Cross Motion for Summary Judgment on May 26, 2023, following extensions due to Defendant's change of counsel. Dkt. 154. After Plaintiffs filed their reply, the Court granted a continuance to allow for a first settlement conference, which then Chief Magistrate Judge Spero held on November 2, 2023. Dkt. 156, 160, 161.

The Court heard summary judgment on February 6, 2024 and requested supplemental briefing on February 7, 2024. Dkt. 190. On March 21, 2024, the Court granted, in part, Defendant's Cross Motion for Summary Judgment, dismissing the UCL claim (thus eliminating a year of damages) and the reporting time pay claims of a small portion of the certified class on LMRA preemption grounds. Dkt. 201.

Magistrate Judge Spero held a second settlement conference on May 8, 2024. Dkt. 205.

On June 21, 2024, Defendant moved to Decertify the class, Dkt. 212, which, after full briefing and hearing, the Court denied on October 28, 2024.

Magistrate Judge Spero held a third settlement conference on December 10, 2024. At the conclusion of the conference, Magistrate Judge Spero made a "mediator's proposal" that led to a settlement in principle, subject to one condition. That condition was that Marathon and the union representing the Operators agree upon a new collective bargaining agreement provision/letter of agreement to govern Marathon's use of and payment for scheduling standby shifts going forward (the "going forward agreement"). Kaufmann Decl. ¶7.

While the union-company negotiations over a going forward agreement were ongoing, the parties' counsel here continued to discuss the terms of a class and PAGA settlement agreement and settlement notice that would become effective once that policy was in place. The parties agreed on

language of the Settlement Agreement and notice, which was finalized in principle on May 19, 2025. *Id.* They executed the settlement agreement following protracted negotiations, approval and the effective date of the going-forward standby policy on October 9, 2025. *Id.*

### III.    PROPOSED SETTLEMENT

The essential terms of the Settlement Agreement are summarized as follows:

### A.    Settlement Class Definitions

The settlement class includes the certified classes and subclasses, with class end date of October 31, 2020, and seeks to add a smaller class of Operators only who continued to work standby shifts after the class end date through to October 5, 2025—the date when the new paid standby policy took effect.

The Court defined the certified classes and subclasses as follows:

**<u>Certified Class 1: Operators Employed through October 31, 2020:</u>**
All Operators working at the refinery and chemical plant of Marathon Refining Logistics Services LLC ("Marathon") in Martinez, California, who were assigned standby coverage at any time from June 24, 2015 up to and continuing through October 31, 2020, when Marathon ended refinery operations at the facility, including the period June 24, 2015 until October 1, 2018, when Tesoro Refining & Marketing Company LLC owned and operated the refinery.

**<u>Certified SubClass 1: Operator Waiting Time Penalty Subclass</u>**
All Operators employed and separated from employment (either by involuntary termination or resignation) at the Refinery and Chemical Plant of Marathon Refining Logistics Services LLC ("Marathon"), in Martinez, California, who were assigned standby coverage at any time from June 24, 2015 through October 31, 2020 and who did not timely receive all wages due and owing at the time of separation.

**<u>Certified Class 2: Maintenance Worker Class</u>**
All Maintenance Workers working at the Refinery and Chemical Plant of Marathon Refining Logistics Services LLC ("Marathon") in Martinez, California, who were assigned standby coverage, at any time from June 24, 2015 up to and continuing through October 31, 2020, when Marathon ended refinery operations at the facility, including the period June 24, 2015 until October 1, 2018, Tesoro Refining & Marketing Company LLC owned and operated the refinery.

**<u>Certified Subclass 2: Maintenance Worker Waiting Time Penalty Subclass</u>**
All Maintenance Workers employed and separated from employment (either by involuntary termination or resignation) at the Refinery and Chemical Plant of Marathon Refining Logistics Services LLC in Martinez, California, who were assigned standby coverage any time from June 24, 2015 up to and continuing through October 31, 2020, when Marathon ended operations at the facility, including the period June 24, 2015 until October 1, 2018, when Tesoro Refining & Marketing Company LLC owned and operated the refinery, who did not timely receive all wages due and owing at the time of separation.

The smaller class for which Plaintiffs seek conditional certification for settlement purposes is the "Follow-On Operator Class" and includes the following employees:

> All Operators working at the Marathon facility in Martinez, California, who were assigned standby coverage from November 1, 2020 to October 5, 2025.

**B.    Plan of Allocation**

**1.    Net Settlement Fund & Allocation**

The Net Settlement Fund is estimated to be over $5.6 million after payments to the California Labor & Workforce Development Agency ("LWDA") to resolve the PAGA penalty claims, attorneys' fees and litigation expenses, class representative service awards, and settlement administration fees are subtracted from the Gross Settlement Amount of $9,000,000. Kaufmann Decl. ¶ 9. The Net Settlement Fund will be disbursed as Individual Settlement Shares for Class Members based on (1) weeks worked during the certified class period through October 31, 2020, and (2) the number of weeks each Operator worked and was scheduled for a least one standby shift from November 1, 2020 to October 5, 2025. SA ¶¶ 35, 54. These shares will be based on Defendant's records[1] and will represent compensation for each Class Member's accrued reporting time pay and interest thereon, waiting time penalties under Labor Code section 203, penalties for pay statement violations under Labor Code 226, and their share of PAGA penalties.

The allocation formula for the certified class period is different from the Follow-On Operator Class due to the changes in Marathon's standby shift assignment methodology after October 31, 2020 and the availability of records that can, and in the opinion of the parties should, be analyzed more precisely for the Operators who worked on and after November 1, 2020. Kaufmann Decl. ¶ 19. For the currently-certified class period, all Operators and Maintenance Workers were generally scheduled for standby shifts on a rotating basis, making it more fair to allocate settlement for this period based on work weeks only, without the need, time, or expense of hiring an expert witness to precisely analyze the employees' schedules to determine how many standby shift each person was actually assigned. *Id.* That is, during this earlier period, Operators in all units were typically scheduled for

---

[1] Class Members will have the ability to dispute their work week data and associated settlement allocation. SA ¶¶ 56, 77(c).

work on a rotating 16-day schedule that included two blocks of four unscheduled shifts; they usually were scheduled for two standby shifts during each of these four-day breaks. *Id.* Similarly, Maintenance Workers were scheduled for standby using two different systems during the certified class period, with the first system based on accrued overtime hours and not scheduled as rigorously and the second a regularly recuring "rotational schedule" during which Maintenance Workers were scheduled for standby for seven consecutive days every 10 weeks. *Id.*

Maintenance Workers are not covered in the Follow-On Operator Class because they were not scheduled for standby after October 31, 2020. Kaufmann Decl. ¶ 20.

Marathon has confirmed that it has the records of which Operators it scheduled for standby since November 1, 2020. *Id.* Those records show that only 123 of the employed Operators were assigned any standby shifts during the follow-on class period, with those 123 people ranging between 1 and 200 qualifying workweeks (weeks with at least one standby shift scheduled). *Id*. This is a relatively small percentage of the entire class of Operators' work weeks during this follow-on class period, and as such the parties submit that fairness requires allocation for this period based on weeks with actual assigned standby shift rather than the tenure dates only that are to be used for the certified class period.

### 2.    LWDA Payment

The parties have agreed to allocate $80,000 to resolve the PAGA penalty claims. SA ¶ 51. In accord with the PAGA, Labor Code section 2699(i), the Defendants will pay the LWDA $60,000 (75% of a $80,000 PAGA penalty allocation). *Id* The parties will provide a copy of the Agreement to the LWDA at the time the Agreement is submitted to the Court for approval, as required under Labor Code section 2699(1)(2). Kaufmann Decl. ¶ 29.

### 3.    Attorneys' Fees and Litigation Expenses

The Settlement Agreement permits Class Counsel to apply for an award of attorneys' fees in an amount up to $3,000,000 (one-third of the gross settlement amount), SA ¶ 40, which is approximately 58 percent (58%) of their collective lodestar as of September 30, 2025. Kaufmann Decl. ¶ 27; Nazarov Decl. ¶ 4. In addition, the Settlement Agreement allows Class Counsel to seek reimbursement of up to $250,000 for out-of-pocket litigation expenses paid to directly advance the

subject litigation, but their request will be closer to their current expenses of approximately $180,000. SA ¶ 40; Kaufmann Decl. ¶ 27; Nazarov Decl. ¶ 4.

### 4. Class Representative Service Awards

The Settlement provides that each of the four Class Representatives may petition for service awards totaling $37,000. SA ¶ 47.[2] Plaintiffs Alfaro and Dietrich, who have been plaintiffs for over six years and represent the certified class, will request $15,000 each. *Id.* Plaintiffs Bartling and Dovala seek to represent the follow-on class of Operators, were previously deposed as class members, and seek $3,500 each. *Id.* This is in addition to any distribution to which they may otherwise be entitled to as Class Members. The service awards will compensate the Class Representatives for (1) the significant time and effort they have spent on behalf of the Class, including assisting in the investigation, participating in extensive discovery, consulting with counsel regarding all aspects of the litigation and settlement, and participating in each of the settlement conferences, and (2) the risk incurred by suing a former employer (a fact that is easily obtainable through the Court's records) or a current employer that could subject these workers to retaliation.

### 5. Settlement Administration Fees and Proposed Administrator

The parties propose CPT Group to serve as the Settlement Administrator. SA ¶ 52. Counsel selected CPT because its bid was competitive and because CPT was responsible for the three earlier mailings to the certified class, meaning it already has many of the records needed for settlement administration, including updated addresses for many Class Members. Kaufmann Decl. ¶ 26. CPT has procedures in place to securely handle class member data and maintains insurance to address harm caused by any administration errors, as detailed in the declaration of CPT's representative, Julie Green, in support of this motion. CPT estimates that it will cost approximately $10,750 to administer the settlement. Green Decl, ¶ 12, Exh. B; Kaufmann Decl. ¶ 26.

### 6. Distribution Plan and Possible Cy Pres Allocation

The SA provides that Class Members will be sent their individual settlement payments within

---

[2] Named plaintiff Janice Wood was not appointed as a Class Representative because she was forced to limit her role in the case due to a significant illness. Former Plaintiff Warren Kosternuk was dismissed as a class representative on August 25, 2022, following his death. Dkt. No. 120.

42 days of the Effective Date of the order granting final approval, SA ¶¶ 95-97, and Class Members will have 120 days to deposit their checks. SA ¶ 100. Class members need *not* file a claim to receive payment. After 30 days, the Settlement Administrator will provide notice by postcard to Class Members who did not cash the initial check so that those Class Members can inform the Settlement Administrator of any change of address. SA ¶ 101. If, after this distribution, at least $100,000 is remaining due to uncashed checks, the Settlement Administrator will issue an additional distribution to the Class Members who deposited their initial checks. SA ¶ 102. If less than $100,000 is remaining, the Parties ask that the Court order that the remainder is paid to East Bay Community Law Center ("EBCLC") as a *cy pres* beneficiary. *Id.* EBCLC is a nonprofit legal services provider that serves low-income residents and communities in housing, consumer, community development, employment matters and other legal matters. Kaufmann Decl. ¶ 8(f), Exh. 2.

None of the settlement fund will revert to Defendant under the terms of the SA.

**C.    Class Settlement Notice Procedure**

Having already distributed Class Notice, Settlement Administrator CPT has contact information for the currently certified class, including last known addresses. Marathon will provide CPT with any updated addresses, and any contact information for any workers who appear only in the follow-on class. CPT will send the Settlement Notices to Class Members via first-class mail and email within no more than 35 days of the Preliminary Approval date. SA ¶¶ 76, 77(a). For undeliverable Class Settlement Notices, the Settlement Administrator will attempt to locate the Class Members' updated addresses through people-finder software, or equivalent program, and skip-trace searches. SA ¶ 77 (a).

The proposed Notices were drafted to comport with the Northern District of California's "Procedural Guidance for Class Action Settlements" and include: (1) contact information for Class Counsel; (2) the website address with links to case documents; (3) instructions on how to access the case docket via PACER or in person; (4) the date of the final approval hearing; (5) instructions on how to opt-out and associated deadlines; (6) the deadline for submission of any objections; and (7) an estimate of the expected total settlement amount that the Class Member will receive and how s/he can dispute that amount and the associated data. SA, Exh. A.

IV.    ARGUMENT

Federal Rule of Civil Procedure 23 requires Court approval for the proposed settlement, voluntary dismissal or compromise of a certified class or a class proposed to be certified for purposes of settlement. Fed. R. Civ. P. Rule 23(e). "In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class." *Morrison v. Ross Stores, Inc.*, Case No. 4:18-cv-2671-YGR, 2021 WL 3852726 (N.D. Cal. Aug. 27, 2021), citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), overruled on other grounds by *Dukes*, 564 U.S. 338, 131 (2011).

### A.  Conditional Certification of the Follow-On Class of Operators is Appropriate

In order to review the sufficiency of the settlement, the Court must first determine that the proposed follow-on class—Operators working from November 1, 2020 to October 5, 2025—satisfies the criteria set out in Federal Rules of Civil Procedure Rule 23(a).[3] *See* Manual for Complex Litigation § 21.632 (4th ed. 2004); *Hanlon,* 150 F.3d at 1019-20. Additionally, an action for the follow-on class must be maintainable under Fed. R. Civ. P. 23(b) (1), (2), or (3). *Hanlon* at 1022. Based on these standards, as further discussed below, the Court should certify the proposed follow-on class for settlement purposes.[4]

### 1.    The Follow-On Settlement Class Satisfies the Requirements of Rule 23(a)

The proposed follow-on Settlement Class satisfies all the requirements of Rule 23(a).

<u>First</u>, the follow-on Settlement Class is sufficiently numerous so that it makes joinder impracticable. Fed. R. Civ. P. 23(a)(1). Courts have generally found a class of at least 40 members meets the numerosity requirement. *See, e.g., EEOC v. Kovacevich "5" Farms*, No. CV-F-06-165

---

[3] The criteria are: (1) the class is so numerous that joinder would be impracticable; (2) there are questions of law or fact common to the class; (3) the named plaintiffs' claims are typical of the claims of the proposed class; and (4) the named plaintiffs and their counsel will adequately and fairly represent the interests of the class.

[4] The Court has already certified the class and subclasses of Operators and Maintenance Workers employed thorough October 31, 2020. In addition, the group of PAGA Recipients does not require certification for litigation or settlement purposes. *Arias v. Super. Ct.,* 46 Cal. 4th 969, 980-88 (2009) (affirming lower court's holding that "plaintiff need not satisfy class action requirements" to assert a PAGA claim).

1   OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007). Here, the proposed follow-on class

2   has approximately 123 Operators, which readily meets this standard.

3       Second, commonality is satisfied because there "are questions of law and fact common" to the

4   proposed follow-on class. *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012)

5   ("Commonality only requires a single significant question of law or fact."); *Smith v. Cardinal*

6   *Logistics*, No. 07-2104 SC, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008). Here, there are several

7   common liability issues for the follow-on class, namely, whether: (1) Class Members have been

8   subject to the same standby policy; (2) Class Members are entitled to the reporting-time pay

9   protections of the Wage Order; (3) Marathon has violated its legal obligations under various

10  provisions of the Wage Order by failing to pay reporting-time pay for unactivated standby shifts; and

11  (4) Marathon's actions constitute violations of the Unfair Competition Law.

12      Third, the typicality requirement of Rule 23(a)(3) is satisfied because the claims of Plaintiffs

13  Bartling and Dovala are typical of the claims asserted on behalf of the follow-on class. Typicality is

14  established if representative claims are "reasonably co-extensive with those of absent Class Members;

15  they need not be substantially identical." 150 F.3d at 1020. Bartling and Dovala's claims arise out of

16  the same factual and legal circumstances as the claims of other Class Members: like all Operators

17  working since November 1, 2020, Bartling and Dovala were subject to Marathon's standby policy and

18  alleged they and others have been underpaid according to the California reporting-time pay laws.

19      Fourth, Plaintiffs Bartling and Dovala have fairly and adequately protected the interests of the

20  class they seek to represent and will continue to do so. Fed. R. Civ. P. 23(a)(4). The adequacy

21  requirement is met where the named plaintiffs and their counsel do not have conflicts of interest with

22  other Class Members and will vigorously prosecute the interests of the class. *Hanlon*, 150 F.3d at

23  1020; S*oc. Sers. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 946-47 (9th Cir. 1979).

24  Here, Plaintiffs share an interest to prosecute the claims on behalf of themselves and the Class, have

25  participated in this action and tolled the claims of their fellow Class Members to date, and have no

26  conflicts of interest with follow-on Settlement Class Members.

27      In addition, Plaintiffs are represented by experienced counsel. In appointing class counsel, the

28  court must consider: (i) the work counsel has done in identifying or investigating potential claims in

1  the action; (ii) counsel's experience in handling class actions, other complex litigation and the type of

2  claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources

3  that counsel will commit to its representation. Fed. R. Civ. P. 23(g).

4        Plaintiffs' counsel has actively identified, investigated and prosecuted the claims that are the

5  subject of this Settlement; they have decades of extensive experience in class action litigation,

6  including wage-and-hour claims of the type asserted here, and have already been appointed class

7  counsel for the original class and have demonstrated that they have the ability and resources to

8  vigorously pursue the claims asserted here. For these reasons, Plaintiffs' counsel and the Plaintiffs

9  Bartling and Dovala meet the adequacy requirement of Rule 23 (a)(4), and Plaintiffs' counsel should

10  be appointed as Class Counsel for the follow-on class pursuant to Rule 23(g).

11        **2.    The Follow-On Settlement Class Meets the Requirements of Rule 23(b)(3)**

12        The follow-on Settlement Class satisfies the requirements of Rule 23(b)(3), because common

13  questions "predominate over any questions affecting only individual members," and class resolution is

14  "superior to other available methods for the fair and efficient adjudication of the controversy."

15        First, the Settlement Class satisfies the predominance requirement, which examines whether

16  the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150

17  F.3d at 1022. "When common questions present a significant aspect of the case and they can be

18  resolved for all members of the class in a single adjudication, there is clear justification for handling

19  the dispute on a representative rather than on an individual basis." *Id*. Here, as discussed above,

20  common issues predominate because Plaintiffs Bartling and Dovala's claims turn on a common

21  liability issue suited to class-wide adjudication.

22        Second, Rule 23 (b)(3) is satisfied because resolution of the issues for the Operators working

23  since November 2020 on a class-wide basis is "superior to other available methods for the fair and

24  efficient adjudication of the controversy." *Id*. at 1023. The alternative to a single class action–

25  numerous individual actions–would be inefficient and unfair. *See*, e.g., *Hanlon*, 150 F.3d at 1023

26  ("many claims [that] could not be successfully asserted individually. . . would not only unnecessarily

27  burden the judiciary, but would prove uneconomic for potential plaintiffs."); *Custom Led, LLC v.*

28  *eBay, Inc*., No. 12-CV-00350-JST, 2013 WL 4552789, at *5 (N.D. Cal. Aug. 27, 2013) (superiority

established because a "class action would achieve the resolution of the putative class members' claims at a lower cost and would reduce the likelihood of inconsistent determinations").

### B.    Preliminary Approval is Appropriate Because the Settlement is Fair, Reasonable and Adequate

This Court should determine whether the proposed class action settlement warrants preliminary approval by reviewing the fairness, reasonableness and adequacy of the settlement terms; if it so finds, it should direct that notice be sent to proposed class members, reserving closer scrutiny for the final approval hearing. *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011). *See also Boyd v. Avanquest N. Am., Inc.*, No. 12-cv-04391-WHO, 2015 WL 4396137, at *2 (N.D. Cal. July 17, 2015) (quoting *Hanlon*, 150 F.3d at 1027). "Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval." *Cuzick v. Zodiac U.S. Seat Marathons, LLC*, No. 16-CV-03793-HSG, 2017 WL 4536255, at *5 (N.D. Cal. Oct. 11, 2017).

Court approval of a PAGA settlement is also required. Cal. Lab. Code § 2699(l)(2). "This review is intended to ensure that 'any negotiated resolution is fair to those affected.'" *Williams v. Condensed Curriculum Int'l, Inc*., No. 4:20-CV-05292-YGR, 2022 WL 20469949, at *1 (N.D. Cal. June 7, 2022), *quoting Williams v. Superior Court*, 3 Cal. 5th 531, 549 (2017). However, PAGA settlements "[do] not require class action procedures, such as notice and opt-out rights." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016). "[A] trial court should evaluate a PAGA settlement to determine whether it is fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws." *Moniz v. Adecco USA, Inc.*, 72 Cal. App. 5th 56, 77 (2021). PAGA does not provide express guidance about the scope or nature of judicial review of a settlement. In the absence of binding guidance, this Court in reviewing PAGA settlements have drawn on factors utilized by the Ninth Circuit to evaluate whether a class action settlement is fundamentally fair, adequate, and reasonable. *See Williams*, 2022 WL 20469949, at *1, (citing *Hanlon*, 150 F.3d at 1026); *O'Connor*,

1   201 F. Supp. 3d. at 1133-34 (same); *Rodriquez. v. Belfor USA Group, Inc.,* No. 22-CV-02071-VKD,

2   2025 WL 2899211, at *5 (N.D. Cal. Oct. 9, 2025) (same). Application of these factors are evaluated

3   in light of PAGA's public policy goals of "benefit[ing] the public by augmenting the state's

4   enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring

5   noncompliance." *O'Connor*, 201 F. Supp. 3d at 1132-33. Where PAGA claims are settled together

6   with claims under the Labor Code, "courts have also looked to the interplay of the two recoveries to

7   determine whether PAGA's purposes have been served," recognizing that providing fair

8   compensation to workers both serves to enforce the class's rights under the Labor Code and deter

9   employers from violating the Labor Code in the future. *Haralson v. U.S. Aviation Servs. Corp.*, 383 F.

10  Supp. 3d 959, 972 (N.D. Cal. 2019).

11       Settlement of the PAGA claims must also be submitted to the LWDA for review. *Haralson,*

12  383 F. Supp. 3d at 971. Plaintiffs are submitting the settlement to the LWDA at the time of filing of

13  this motion, and will report to the Court if the LWDA responds prior to the hearing. Kaufmann Decl.

14  ¶ 20.

15       **C.    The Settlement is the Product of Informed, Non-Collusive Negotiation**

16       Adequate discovery and the use of an experienced mediator support the conclusion that

17  settlement negotiations were informed and non-collusive. *See Villegas v. J.P. Morgan Chase & Co.*,

18  CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012). This Settlement

19  Agreement was reached through arm's-length negotiations by experienced counsel familiar with the

20  applicable law, class action litigation, and the facts of this case. Kaufmann Decl. ¶¶ 2-4. The Parties

21  participated in three Settlement Conferences with Magistrate Judge Spero and reached this agreement,

22  in principle, on December 17, 2024, following the final conference on December 10, 2024. *Id*. at ¶¶ 5-

23  6. Prior to settling, the parties engaged in extensive discovery and related investigation, including

24  substantial document production, numerous depositions and witness discovery, discovery disputes,

25  and motions for class certification, summary judgment (cross motions), dismiss and decertification.

26  *Id*. ¶¶ 3-4; Dkt. Nos. 16, 29, 75, 79, 80, 84, 112, 145, 154, 174, 212.

27  //

28  //

**D.    The Settlement Falls Within the Range of Possible Approval**

    **1.    The Strength of the Class Case and the Risk of Further Litigation Support Preliminary Approval**

Although Class Representatives have a strong case on the merits, the Class Representatives would face several legal and practical risks should they continue to litigate. Defendant has colorable arguments that could preclude or limit liability.

Defendant challenges Class Members's entitlement to reporting time pay, because unlike the plaintiffs in *Ward v. Tilly's Inc.*, the Operators and Maintenance Workers were not required to "call in" or present themselves for work. 31 Cal. App. 5th 1167 (2019). Rather, Class Members faced the possibility that Marathon could call them and require they come to the refinery to cover a short-notice absence. Class Representatives contend this is a distinction without meaning. Whether the Operators and Maintenance Workers called in or were expected to answer a call notifying them they needed to report for a shift, Defendant's standby policy constrained its employees' activities on days they were not otherwise scheduled to work and they were entitled to reporting time pay. Nonetheless, a jury could side with Defendant and decide the policy did not trigger reporting time pay.

Further, the Class Representatives' waiting time and wage statement penalties are derivative of the reporting time claims. As the Court dismissed these claims on summary judgment, Plaintiffs could only recover on them if they prevailed on the reporting time pay claim at trial and overturned the Court's summary judgment order on appeal.

Without conceding the defense arguments, Class Representatives recognize the risk of a jury or the Court siding with Marathon and weighed them against the potential recoveries.

At the final settlement conference, Class Representatives estimated that, if they prevailed on all potential claims, they could recover:[5]

//

//

---

[5] These totals do not include damages associated with Plaintiffs' claims for waiting time penalties and pay statement penalties because those claims were dismissed following the California Supreme Court's ruling in *Naranjo v. Spectrum Security Services, Inc.,* 15 Cal. 5th 1056 (2024) that these penalties cannot be recovered.

- reporting time pay of approximately $14 Million, plus interest; and

- through the PAGA, civil penalties of approximately $5 million (assuming $100 for each reporting time violation).

Kaufmann Decl. ¶ 11. Class Counsel believe the $9 million settlement is eminently reasonable considering the potential risks, including the significant risk due to the interconnected nature of the reporting time pay and PAGA claims. *Id*. ¶ 17; Nazarov Decl. ¶ 3.

### 2. The Settlement Consideration is Fair

Here, the Settlement will result in payment of a fair and reasonable award to Class Members, particularly accounting for the litigation risks. The Settlement affords relief to Class Members who likely would never have filed individual claims. The net amount to be paid to these Operators and Maintenance Workers under the proposed settlement (after payment of the state's share of PAGA penalties, class counsel fees and expenses, Class Representative service awards, and settlement administration costs) will be roughly $5.6 million. Kaufmann Decl. ¶ 9. The Class Members will recover approximately $9,350, or $50 per qualifying work week, through the class-action portion of the settlement. *Id*. ¶ 10. In sum, the payments will result in Class Members recovering around 40.4 percent of value of the claims for accrued wages and approximately 22.7 percent recovery on the maximum value of the Action left for trial at the time of settlement, exclusive of Class Counsel's attorneys' fees and costs. *Id*. ¶ 12. Under the circumstances, the amount of the settlement is fair, adequate and reasonable.

### 3. The Planned Allocation Is Fair

The plan for allocation of the Net Settlement is also fair and reasonable. For the currently certified class of Operators and Maintenance Workers employed on and before October 31, 2020, the Settlement Agreement provides for allocation based on each employee's pro rata share of workweeks during the relevant period. For the new class—limited to Operators who were scheduled for standby shifts on or after November 1, 2020—the allocation during this period that credits an Operator with a "qualifying workweek" if Marathon's records confirm that s/he was scheduled for at least one standby shift during a particular week.

The difference in allocation formula for the two periods is justified by facts gathered in discovery, fairness to all Class Members, and efficiency. For the pre-November 2020 period, virtually all Operators and Maintenance Workers at Marathon's refinery were scheduled for standby on a regular basis, with ongoing rotations and near-equal distribution of standby across all units and divisions. While theoretically possible to allocate the settlement funds for this period based on the number of assigned standby shifts, the expert analysis that would be required to review and analyze Marathon's schedules, time records and payroll records for this period would have been exceedingly time-consuming and expensive. An allocation based on the number of assigned standby shifts would be very unlikely to yield a meaningfully different result than an allocation based on each employee's tenure dates and their pro rata share of resulting weeks worked.

Following the refinery's closure in late 2020, Marathon's limitation to terminal operations at the site and its subsequent re-opening as a "renewable fuels facility," the scheduling of standby shifts was less consistent than it had been during the certified class period. Standby for Maintenance Workers ceased completely, and thus no potential for follow-on litigation or justification for allocation of settlement funds to these employees after October 31, 2020. As to Operators, the scheduling of standby shifts was far less evenly distributed than it had been before November 2020. While all Operators could theoretically still be assigned standby under Marathon's policy, in practice the company limited its scheduling of these shifts to particular divisions and units, and in some instances to particular employees within those units. As such, many Operators would have small or no damages and others would have significant damages. The parties therefore believe that distributing funds during this period based on workweeks would permit an unfair "windfall" to Operators who were not scheduled for standby, at the expense of those employees who continued to regularly work these restrictive, unpaid, shifts. After reviewing the records for this follow-on period, the parties agree that the work to analyze these schedules is justified due to this potential inequity and also easier to conduct than it would be for the certified class period because the schedules for standby are less voluminous and more consistently maintained.

Class representatives thereby submit that each Class Member's share of the settlement is directly proportional to the harm they suffered and calculated as efficiently and fairly as possible for

1    equitable distribution of the settlement funds.

2              **4.      The PAGA Claim Allocation is Fair**

3              The resolution to the PAGA claims for $80,000 is fair and reasonable. Courts regularly

4    approve PAGA settlements where the settlement amount is over one percent of the total value of the

5    PAGA claim. *Haralson*, 383 F. Supp. 3d at 973. Here, the PAGA settlement allocation represents

6    over 1.6 percent (1.6%) of the total possible exposure for PAGA penalties, assuming the Court

7    awarded the maximum $100 penalty per reporting time violation. *See* Kaufmann Decl. ¶12. Other

8    courts consider the proportion of the PAGA allocation to the overall settlement. *Id.* at 973 (citing *Van*

9    *Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2017 WL 3670787, at *10 (N.D. Cal.

10   Aug. 25, 2017) (granting final approval of $5,000 PAGA penalty from $ 370,000 settlement, or 1.4

11   percent)); *see also Clemens v. Hair Club for Men, LLC*, No. C 15-01431 WHA, 2016 WL 3442774, at

12   *1 (N.D. Cal. June 23, 2016) (approving $5,000 PAGA penalty from a $500,000 settlement, or 1

13   percent). Here, the $80,000 PAGA settlement represents approximately 0.9 percent of the total $9

14   million settlement. Therefore, the PAGA settlement is fair and reasonable under either test.

15             Even when the PAGA settlement is less than one percent of the total possible recovery it may

16   be fair and reasonable. In those circumstances, courts consider both the risk that the court will use its

17   discretion to award a fraction of the potential exposure, and whether an accompanying class action

18   settlement provides "relatively substantial" benefits to class members. *Haralson*, 383 F.Supp.3d at

19   973. Here, the settlement does provide significant recovery to the Class Members by awarding them

20   approximately $50 per qualifying workweek. Kaufmann Decl. ¶ 10.

21             Further, the plan of allocation for the PAGA portion of the settlement is also reasonable. The

22   PAGA penalties will be allocated to each Class Member based on the number qualifying workweeks

23   credited during the PAGA period. Thus, the Operators and Maintenance Workers' benefit from the

24   PAGA penalties is directly proportionate to their share of the injury suffered.

25             **5.      The Proposed Service Awards Are Reasonable, and Are Subject to Court**
26                        **Review**

27             The Settlement provides that Class Representatives Anthony Alfaro and Aaron Dietrich may

28   petition the Court for service awards of up to $15,000 each, and proposed representatives Jason

1   Bartling and John Dovala may request up to $3,500 each. SA ¶ 47. Service or incentive awards are

2   typical in class action cases. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). In

3   evaluating incentive awards, courts may consider "1) the risk to the class representative in

4   commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered

5   by the class representative; 3) the amount of time and effort spent by the class representative; 4) the

6   duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class

7   representative as a result of the litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294,

8   299 (N.D. Cal. 1995). This Court has concluded that incentive awards are not "per se unreasonable,"

9   and the allocation of an incentive award in a settlement does not weigh against preliminary approval.

10  *Cuzick*, 2017 WL 4536255, at *6. Historically, the Northern District has found $5,000 incentive

11  awards for class representatives are presumptively reasonable. *Harris v. Vector Marketing Corp.*,

12  2012 WL 381202, at *7 (N.D. Cal. 2012). The typical range for incentive awards in the Northern

13  District is $2,000 to $10,000. *See*, e.g., *Covillo v. Specialtys Cafe*, No. C-11-00594 DMR, 2014 WL

14  954516, at *8 (N.D. Cal. Mar. 6, 2014) (ordering an $8,000 incentive award for each of the three

15  named plaintiffs); *Wolph v. Acer Am. Corp.*, No. 09-01314 JSW, 2013 WL 5718449, at *6 (N.D. Cal.

16  Oct. 21, 2013) (ordering a $2,000 incentive award for each named plaintiff); *Chu v. Wells Fargo

17  Invs., LLC*, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *5 (N.D. Cal. Feb. 16,

18  2011) (awarding a $10,000 incentive award to two named plaintiffs). Higher incentive awards are

19  "particularly appropriate" in wage and hour class actions like the present case where plaintiffs face

20  reputational risks from bringing a case against their employer. *Deaver v. Compass Bank*, No. 13-CV-

21  00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) (citing *Rodriguez*, 563 F.3d at 958-59).

22      Here,  the proposed Service Awards are consistent with a fair, just and adequate settlement.

23  Mr. Alfaro and Mr. Dietrich have been actively engaged in this case for six years, assisting counsel

24  with case investigation and encouraging their co-workers to assist in the litigation, responding to

25  substantial discovery, sitting for a deposition, and participated in one of the all-day settlement

26  conferences, consulted with counsel in the other two conferences and reviewed the settlement.

27  Kaufmann Decl. ¶5. Plaintiffs Bartling and Dovala were deposed as class member declarants and later

28  agreed to join as plaintiffs, entering into an agreement to toll the statute of limitations for their co-

workers and working with counsel during the protracted settlement negotiations. Class Representatives will provide supporting declarations to accompany their Motion for Attorneys' Fees and Service Awards, describing their efforts in this case, amounts of time spent serving the class, and risks incurred.

### 6. Attorneys' Fees and Costs that Class Representatives Will Request Are Reasonable

The Settlement provides that, prior to the final approval hearing, Class Counsel may petition the Court for an award of fees not to exceed one-third of the Gross Settlement Amount as their Class Counsel Fees Payment, or $3 million in addition to litigation expenses up to $250,000.[6] SA ¶ 40. This provision is fair and reasonable given the significant time—over 7,500 hours, Kaufmann Decl. ¶ 27, Nazarov Decl. ¶ 4–and expense that they have devoted to this case, the risk they have borne during this time, and the result that they have achieved for the proposed class, the aggrieved employees, and the members of the class. The amount requested is less than the "presumptively reasonable" lodestar amount over $5.1 million through September 30, 2025. Kaufmann Decl. ¶ 27; Nazarov Decl. ¶ 4. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes . . . where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation." *Id.*

Class Counsel will file their application for fees and costs within 21 days of preliminary approval, which will allow Class Members to be informed of the fee request and bases therefore, and have ample time to consider the request prior to the deadline for objecting and opting out. *See In re Mercury Interactive Securities Litigation*, 618 F.3d 988 (9th Cir. 2010).

### 7. Class Action Fairness Act Notice

Defendant is expected to issue notice of this Settlement as required by the Class Action Fairness Act (28 U.S.C. § 1715), no later than 10 days after this proposed Settlement is filed with this Court. SA ¶ 75. Defendant's CAFA notice will comply with the requirements of 28 U.S.C. § 1715(b).

---

[6] At the time of this Motion, Class Counsel estimate that they will seek approximately $180,000 in litigation expenses, with the balance of the cost allocation to be distrusted pro rata to the Class Members. Kaufmann Decl. ¶27; Nazarov Decl. ¶4.

### E.    The Proposed Notice is the Best Notice Practicable

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) provides: "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c)(3)." Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

The parties have agreed on the language of the Settlement Notice, which is attached as an exhibit to the Settlement Agreement. SA, Exh. A.

The parties have agreed, subject to Court approval, to have the Settlement Administrator mail notice via first class mail within 14 days of receiving the Class List and Data. SA ¶ 77(a). Returned mail with forwarding addresses will be re-mailed while returned mail without forwarding addresses will be skip traced to get an updated address and then re-mailed. *Id.*. This method meets the requirements of due process. *Morrison*, 2021 WL 3852726, *5.

The Settlement Administrator will also establish a website—as referenced in the proposed Class Settlement Notice—where Class Members can obtain information about the settlement. SA § 77(e).

Accordingly, the proposed notice plan complies with Rule 23 and due process.

//

//

//

//

//

//

1

## V.   CONCLUSION

In light of the foregoing, Class Representatives respectfully request that the Court grant the motion for preliminary approval of the class action settlement and PAGA settlement.

Respectfully submitted,

DATED: November 13, 2025            KAUFMANN & GROPMAN, LLP

WEINBERG, ROGER & ROSENFELD

By: ___*/s/ Aaron Kaufmann*___
         AARON KAUFMANN
         *Attorneys for Class Representatives and the Class*