UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE WOOD ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> MARATHON REFINING LOGISTICS SERVICE LLC, <br><br> Defendant. | CASE NO. **4:19-CV-04287-YGR** <br><br> ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT AND SETTING DEADLINES FOR NOTICE, OBJECTION, EXCLUSION, AND FINAL FAIRNESS HEARING <br><br> Re: Dkt. No. 261 |

On January 13, 2026, the Court held a hearing on plaintiffs and class representatives' motion for preliminary approval of the proposed class action settlement. Defendant Marathon Refining Logistics Service ("Marathon") does not oppose. Class representatives and class counsel request that the Court (1) grant preliminary approval to the proposed class action settlement; (2) conditionally certify a Class of Operators who were employed between November 1, 2020 and October 5, 2025; (3) conditionally approve the PAGA settlement; (4) appoint CPT Group ("CPT") as Settlement Administrator; (5) approve the form, content, and method of distribution of the Notice of Class Settlement; and (6) schedule a hearing regarding final approval of the proposed Settlement, Class Counsel's request for attorneys' fees and costs, and service awards to the Class Representatives. (Dkt. No. 261.) Aaron Kaufmann, David Pogrel, and Winnie Vien appeared for plaintiffs; and Tiffany Phan appeared for defendant.

Having considered the motion briefing, the arguments of counsel, the relevant law, the terms of the settlement agreement and the class notice, as well as the record in this case, and based on the reasons and terms set forth herein, the Court **GRANTS** the parties' motion for preliminary approval of class action settlement.

## I. BACKGROUND

The Court notes here that it has considerable history with this action given the pretrial proceedings. Plaintiffs filed the putative class action complaint on June 24, 2019 against defendant Marathon Refining Logistics Service, LLC challenging its "standby" policies. Plaintiffs allege that

that Marathon required Operators and Maintenance Workers at its Martinez facility to be available for designated 12- and/or 24-hour standby shifts in addition to their regular shifts. Marathon required Operators and Maintenance Workers on standby status to be ready to receive calls during specific time periods. If called in, the Operator or Maintenance Worked would be required to report to Marathon as quickly as possible or be considered absent. If the worker was not contacted by Marathon, they would not be compensated for time spent on standby. (SAC ¶¶ 5, 7.)

Plaintiffs' sixth amended complaint alleges claims for: failure to pay reporting time pay (IWC Wage Order. No. 1–2001); failure to pay all wages earned at termination (Labor Code §§ 200–203); failure to provide accurate itemized wage statements (Labor Code §§ 226–226.3); violations of the Unfair Competition Law (Bus. & Prof. Code §§ 17200 et seq.); and civil penalties under the Private Attorneys General Act (California Labor Code §§ 2698, et seq.).

After classes were certified, the parties reached a settlement with the assistance of Magistrate Judge Spero, who held multiple settlement conferences with the parties.

**B.      Terms of the Settlement Agreement**

Under the terms of the Settlement Agreement, defendant will pay $9 million into a common settlement fund, without admitting liability. This amount includes attorneys' fees and costs, the cost of class notice, settlement administration, the class representative's service award, and payments to the California Labor & Workforce Development Agency ("LWDA.'")

*1.      Attorneys' Fees and Costs*

Under the Settlement Agreement plaintiffs' counsel agreed to seek up to $3 million in attorneys' fees and no more than $250,000 in litigation costs. The common settlement fund also includes a provision for $10,000 in settlement administration costs; and up to $37,000 to be paid to plaintiffs Janice Wood, Anthony Alfaro, Aaron Dietrich, Jason Bartling, and John Dovala as an incentive award in exchange for a general release of all claims against defendant.

*2.      Class Relief*

After deductions from the common fund for fees, costs, and service incentive awards, approximately $5.64 million will remain to be distributed among the participating class members. Class members will be paid according to (1) weeks worked during the certified class period through

October 31, 2020, and (2) the number of weeks each Operator worked and was scheduled for a least one standby shift from November 1, 2020 to October 5, 2025. (SAC ¶¶ 35, 54.) Dividing this amount across the 604 participating class members yields an average recovery of approximately $9,349.91 per class member.  The Agreement provides that no amount will revert to defendant. (*Id.* ¶ 16.)

### 3.    Cy Pres/Remainder

The Settlement Agreement provides that when checks mailed to participating class members are not redeemed or deposited, within one-hundred twenty (120) days of mailing of the initial settlement check or ninety (90) days after the reissuance of the check, whichever is later, the uncashed settlement check(s) will be awarded by *cy pres* to the East Bay Community Law Center, except that, in the event more than One Hundred Thousand Dollars ($100,000.00) remains uncashed after one-hundred eighty (180) calendar days of the expiration of the initial settlement checks, uncashed settlement check(s) will be redistributed equally amongst the Participating Settlement Class Members who timely cashed their checks during the initial distribution.

## II.    PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### A.    Legal Standard

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification.  Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027.  The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement.  *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.

United States District Court
Northern District of California

2004).

### B.    Class Definition and Basis for Conditional Certification

On August 6, 2021, plaintiffs moved to certify the following classes and subclasses:

**Certified Class 1: Operators Employed through October 31, 2020:**
All Operators working at the refinery and chemical plant of Marathon Refining Logistics Services LLC ("Marathon") in Martinez, California, who were assigned standby coverage at any time from June 24, 2015 up to and continuing through October 31, 2020, when Marathon ended refinery operations at the facility, including the period June 24, 2015 until October 1, 2018, when Tesoro Refining & Marketing Company LLC owned and operated the refinery.

**Certified Subclass 1: Operator Waiting Time Penalty Subclass:**
All Operators employed and separated from employment (either by involuntary termination or resignation) at the Refinery and Chemical Plant of Marathon Refining Logistics Services LLC ("Marathon"), in Martinez, California, who were assigned standby coverage at any time from June 24, 2015 through October 31, 2020 and who did not timely receive all wages due and owing at the time of separation.

**Certified Class 2: Maintenance Worker Class:**
All Maintenance Workers working at the Refinery and Chemical Plant of Marathon Refining Logistics Services LLC ("Marathon") in Martinez, California, who were assigned standby coverage, at any time from June 24, 2015 up to and continuing through October 31, 2020, when Marathon ended refinery operations at the facility, including the period June 24, 2015 until October 1, 2018, Tesoro Refining & Marketing Company LLC owned and operated the refinery.

**Certified Subclass 2: Maintenance Worker Waiting Time Penalty Subclass:**
All Maintenance Workers employed and separated from employment (either by involuntary termination or resignation) at the Refinery and Chemical Plant of Marathon Refining Logistics Services LLC in Martinez, California, who were assigned standby coverage any time from June 24, 2015 up to and continuing through October 31, 2020, when Marathon ended operations at the facility, including the period June 24, 2015 until October 1, 2018, when Tesoro Refining & Marketing Company LLC owned and operated the refinery, who did not timely receive all wages due and owing at the time of separation.

The Court granted class certification on June 14, 2022 and August 25, 2022. (Dkt. Nos. 75, 120.)

Following certification of the class, the parties agreed to mediation before Magistrate Judge Spero, which ultimately led to the instant settlement. The Settlement Agreement, attached hereto as **Exhibit A**, defines the class as:

4

> All current and former operators of Marathon who worked at the Martinez Refinery, Martinez Chemical Plant, or Martinez Renewable Fuels Facility and were assigned mandatory standby shifts between June 24, 2015 and October 5, 2025, and all maintenance workers of Marathon (or any of its affiliates or successors) who worked at the Martinez Refinery or Martinez Renewable Fuels Facility and were assigned mandatory standby shifts, between June 24, 2015 and October 31, 2020.

("the Settlement Class"). The settlement seeks conditional certification of the below follow-on class:

> **Follow-On Operator Class:**
> All Operators working at the Marathon facility in Martinez, California, who were assigned standby coverage from November 1, 2020 to October 5, 2025.

The Court finds that, for purposes of settlement, plaintiffs satisfied the requirements of Rule 23(a) as well as the requirements for certification under one or more subsections of Rule 23(b) for the follow-on operator class.  With respect to numerosity under Rule 23(a)(1), the follow-on operator class includes 123 members, making it so numerous that joinder of all members is impracticable.

Rule 23(a)(2) commonality requires "questions of fact or law common to the class," though all questions of fact and law need not be in common.  *Hanlon*, 150 F.3d at 1026.  The focus of this action—Marathon's standby policy—is common to all class members.

Rule 23(a)(3) requires that the plaintiff show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Plaintiff and members of the Settlement Class were all subject to the same standby policy, just for a different period of time, making plaintiff's claims typical of class members.

With respect to Rule 23(a)(4), the Court finds the representative parties and class counsel have fairly and adequately represented the interests of the Class.  No conflicts of interest appear as between plaintiff and the members of the Settlement Class.  Class Counsel have demonstrated that they are adequate to represent this follow-on class as well.

The Settlement Class further satisfies Rule 23(b)(3) in that common issues predominate and "a class action is superior to other available methods for fairly and efficiently adjudicating" the claims here.

Based on the foregoing, the proposed class is conditionally certified pursuant to Rule 23(c).

**C.      Settlement Agreement Appears Fair and Reasonable**

The settlement agreement, a copy of which is attached hereto as **Exhibit A** ("Settlement Agreement"), is granted preliminary approval pursuant to Rule 23(e)(2).  Based upon the information before the Court, the Settlement Agreement falls within the range of possible approval as fair, adequate and reasonable, and there is a sufficient basis for notifying the Class and for setting a Fairness and Final Approval Hearing.  The Court adopts the definitions therein.

As to the *Hanlon* factors, the Court finds that they indicate the settlement here is fair and reasonable. Absent settlement, many factual disputes remain, including whether being "on call" was sufficient to trigger reporting time pay, and whether waiting time and wage statement penalties would be derivative of the reporting claims. Class plaintiffs believed that they could recover, if they prevailed on all potential claims, $19 million. Proceeding to trial would have been costly; recovery was not guaranteed; and there was the possibility of protracted appeals. The settlement occurred only after extensive litigation including discovery, class certification, and summary judgment motions. Counsel for both parties are highly experienced.  The record does not indicate collusion or self-dealing.  *See In re Bluetooth*, 654 F.3d at 946-47.

The Settlement Agreement appears to have been the product of arm's length and informed negotiations.  The relief provided for the Class appears to be adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreements required to be identified under Rule 23(e)(3) (there are none).

Moreover, the Settlement Agreement appears to treat Class members equitably relative to each other.

Based on the foregoing, the Court conditionally certifies the class and provisionally appoints Aaron Kaufmann and David Pogrel as Class Counsel and plaintiffs Jason Bartling, and John Dovala as class representatives.

United States District Court
Northern District of California

### III.   PLAN OF NOTICE, ALLOCATION, AND ADMINISTRATION

#### A.   Notice Plan

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The parties' proposed notice plan appears to be constitutionally sound in that plaintiffs have made a sufficient showing that it is: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law.

The Court approves form of the Notice of Proposed Class Action Settlement as revised per the Court's suggestions. (Dkt. No. 264.) It is sufficient to inform Class members of the terms of the Settlement Agreement, their rights under the Settlement Agreement, their rights to object to or comment on the Settlement Agreement, their right to receive a payment or opt out of the Settlement Agreement, the process for doing so, and the date and location of the Fairness and Final Approval hearing. The form of plan of notice is therefore **APPROVED**.

### B.    Plan of Allocation

The Court preliminarily approves the proposed plan of allocation set forth in the motion and the class notices. Class members will receive a Settlement Share unless they submit a valid and timely Opt-Out Form no later than 45 days from the mailing of the class notice.

### C.    Settlement Administrator

CPT Group is appointed to act as the Settlement Administrator, pursuant to the terms set forth in the Settlement Agreement.

The Settlement Administrator shall distribute the Class Notice according to the notice plan described in the Settlement Agreement and substantially in the form approved herein, no later than **February 26, 2026** ("Notice Date").  Proof of distribution of the Class Notice shall be filed by the parties in conjunction with the motion for final approval.

Defendant is directed to provide to the Settlement Administrator the Class members' contact data as specified by the Settlement Agreement by no later than **February 12, 2026**.

### D.    Exclusion/Opt-Out

Any Class Member shall have the right to be excluded from the Class by mailing a request for exclusion to the Settlement Administrator no later than **45** days after the date of mailing. Requests for exclusion must be mailed in writing to the Settlement Administrator. The request must be personally signed and must include (a) the case name, (b) the member's name, address, and telephone number, and (c) the terms "Request for Exclusion" or "Opt Out."

No later than **June 2, 2026**, Class Counsel shall file with the Court a list of all persons or entities who have timely requested exclusion from the Class as provided in the Settlement Agreement.

Any Class Member who does not request exclusion from the settlement class as provided above shall be bound by the terms and provisions of the Settlement Agreement upon its final approval, including but not limited to the releases, waivers, and covenants described in the Settlement Agreement, whether or not such person or entity objected to the Settlement Agreement and whether or not such person or entity makes a claim upon the settlement funds.

### E.    Objections

Any Class Member who has not submitted a timely request for exclusion from the Settlement Agreement shall have the right to object to (1) the Settlement Agreement, (2) the plan of allocation; and/or Class Counsel's motion for attorneys' fees and Class Representative Awards by mailing to the Settlement Administrator a written objection and stating whether they intend to appear at the Fairness Hearing, as set forth in the Class Notice, no later than **April 13, 2026**. Failure to submit a timely written objection will preclude consideration of the Class Member's later objection at the time of the Fairness Hearing.

**F.      Attorneys' Fees and Class Representative Awards**

Plaintiffs and their counsel shall file their motion for attorneys' fees and for Class Representative awards no later than **March 9, 2026**.  Each settlement class member shall have the right to object to the motion for attorneys' fees and Class Representative awards by filing a written objection with the Court no later than **April 13, 2026**, as stated in paragraph 8 above.

Plaintiffs may file a reply brief responding to any timely objection no later than **June 2, 2026**.

**G.      Fairness and Final Approval Hearing**

All briefs, memoranda and papers in support of final approval of the settlement shall be filed no later than **May 4, 2026**.

The Court will conduct a Fairness and Final Approval Hearing on Tuesday, **June 16, 2026**, at 2:00 p.m., to determine whether the Settlement Agreement should be granted final approval as fair, reasonable, and adequate as to the Class.  The Court will hear all evidence and argument necessary to evaluate the Settlement Agreement and will consider Class Counsel's motion for attorneys' fees and for Class Representative awards.

Class members may appear, by counsel or on their own behalf, to be heard in support of or opposition to the Settlement Agreement and Class Counsel's Motion for attorneys' fees and Class Representative awards by filing a Notice of Intention to Appear no later than **June 2, 2026**.

The Court reserves the right to continue the date of the final approval hearing without further notice to Class members.

United States District Court
Northern District of California

The Court retains jurisdiction to consider all further applications arising out of or in connection with the Settlement.

### H. Post-Distribution Accounting

If final approval is granted, the parties will be required to file a Post-Distribution Accounting in accordance with this District's Procedural Guidance for Class Action Settlements and at a date set by the Court at the time of the final approval hearing. Counsel should prepare accordingly.

| Summary of Key Dates | |
|---|---|
| **Event** | **Date** |
| Class data to be provided to Settlement Administrator | February 12, 2026 |
| Class Notice to be sent by | February 26, 2026 |
| Class Counsel to file their motion for fees and costs and Class Representative awards | March 9, 2026 |
| Postmark deadline to submit objection or request for exclusion | April 13, 2026 |
| Motion for Final Approval to be filed by | May 4, 2026 |
| Class counsel and settlement administrator to submit supplemental statements regarding status of notice program, objections, opt-outs | June 2, 2026 |
| Fairness and Final Approval Hearing | June 16, 2026, at 2:00 p.m.<br><br>NOTE: Subject to change without further notice to the Class. |

**IT IS SO ORDERED.**

This terminates Docket No. 261.

Dated: January 22, 2026

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

# EXHIBIT A

KRISTINA L. HILLMAN (CA Bar No. 208599)
(Email: khillman@unioncounsel.net)
JANNAH V. MANANSALA (CA Bar No. 249376)
(Email: jmanansala@unioncounsel.net)
CAITLIN E. GRAY (CA Bar No. 305118)
(Email: cgray@unioncounsel.net)
ALEXANDER S. NAZAROV (CA Bar No. 304922)
(Email: anazarov@unioncounsel.net)
WINNIE G. VIEN (CA Bar No. 347796)
(Email: wvien@unioncounsel.net)

**WEINBERG, ROGER & ROSENFELD**
**A Professional Corporation**
1375 55th Street
Emeryville, California 94608
Telephone: 510.337.1001
Facsimile: 510.337.1023

Attorneys for Plaintiffs Anthony Alfaro, Jason Bartling,
Aaron Dietrich and John Dovala

[*Additional counsel listed on the next page*]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ANTHONY ALFARO, JASON BARTLING, AARON DIETRICH AND JOHN DOVALA on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MARATHON REFINING LOGISTICS SERVICES LLC, <br><br> Defendant. | CASE NO. 4:19-cv-04287-YGR <br><br> **JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE** |

AARON KAUFMANN (CA Bar No. 148580)
(Email: akaufmann@kgworklaw.com)
DAVID POGREL (CA Bar No. 203787)
(Email: dpogrel@kgworklaw.com)

**KAUFMANN & GROPMAN, LLP**
1939 Harrison Street, Suite 620
Oakland, CA 94612
Telephone: 510.817.4380

Attorneys for Plaintiffs Anthony Alfaro, Jason
Bartling, Aaron Dietrich, and John Dovala

CATHERINE A. CONWAY (CA Bar No. 98366)
(Email: CConway@gibsondunn.com)
JESSE A. CRIPPS (CA Bar No. 222285)
(Email: JCripps@gibsondunn.com)
BRADLEY J. HAMBURGER (CA Bar No. 266916)
(Email: BHamburger@gibsondunn.com)
TIFFANY PHAN (CA Bar No. 292266)
(Email: TPhan@gibsondunn.com)
MADELEINE MCKENNA (CA Bar No. 316088)
(Email: MMcKenna@gibsondunn.com)

**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

KATIE GEARY (CA Bar No. 323875)
(Email: KGeary@gibsondunn.com)

**GIBSON, DUNN & CRUTCHER LLP**
3161 Michelson Drive
Irvine, California 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

Attorneys for Defendant Marathon Refining
Logistics Services LLC

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE
CASE NO. 4:19-cv-04287-YGR

**TABLE OF CONTENTS**

Page

I.    RECITALS ................................................................................................................... 1

      A.    Background and Procedural History .................................................................. 1

      B.    Parties' Statements and Recognition of the Benefits of the Settlement ...................... 3

II.   DEFINITIONS .............................................................................................................. 5

III.  EXECUTION OF THE SETTLEMENT AGREEMENT.......................................................... 12

IV.   AMENDED COMPLAINT FOR SETTLEMENT PURPOSES ONLY .............................. 12

V.    FILING OF MOTION FOR PRELIMINARY APPROVAL................................................... 12

VI.   DISTRIBUTION OF THE SETTLEMENT FUND ............................................................... 12

      A.    Payment of the Gross Settlement Amount.................................................... 12

      B.    Attorneys' Fees and Costs. .......................................................................... 12

      C.    Service Payments to Class Representatives. ................................................. 14

      D.    PAGA Payment. ......................................................................................... 15

      E.    Administration Costs. ................................................................................. 16

      F.    Plan of Allocation and Calculation of Individual Settlement Payments. ........... 16

      G.    No Effect on Benefits for Settlement Class Members....................................... 18

      H.    Taxes............................................................................................................ 18

VII.  CLAIMS RELEASED BY SETTLEMENT AGREEMENT .............................................. 20

VIII. SCHEDULE FOR FINALIZING SETTLEMENT AGREEMENT....................................... 23

      A.    Preliminary Approval. .................................................................................. 23

      B.    Class List and Data....................................................................................... 24

      C.    Class Notice. ................................................................................................. 25

      D.    Administrator's Duties. ................................................................................ 28

      E.    Requests for Exclusion/Opt Outs. ................................................................. 29

      F.    Objections. .................................................................................................... 30

      G.    Final Approval and Entry of Judgment. ........................................................ 32

      H.    Funding and Distribution.............................................................................. 32

I.     Discharge of Obligations. ................................................................................. 34

J.     Questions and Disputes. ................................................................................... 35

K.     Interim Stay of Proceedings. ............................................................................ 35

IX.    ADDITIONAL PROVISIONS ...................................................................................... 35

A.     Voiding the Settlement Agreement ................................................................... 35

B.     No Admission of Liability ................................................................................ 36

C.     No Claims ......................................................................................................... 36

D.     Parties Represented by Counsel ....................................................................... 36

E.     Voluntary Agreement ....................................................................................... 37

F.     Notices .............................................................................................................. 37

G.     Authorization .................................................................................................... 38

H.     No Prior Assignments or Undisclosed Liens ................................................... 38

I.     Confidential Information .................................................................................. 39

J.     Agreement Binding on Successors in Interest ................................................. 39

K.     Time Periods ..................................................................................................... 39

L.     Mutual Full Cooperation .................................................................................. 39

M.     Entire Agreement ............................................................................................. 40

N.     Headings ........................................................................................................... 40

O.     No Construction Against Drafter ..................................................................... 40

P.     Amendment and Modification .......................................................................... 40

Q.     Governing Law .................................................................................................. 40

R.     Jurisdiction of the Court ................................................................................... 41

S.     Restriction on Publicity .................................................................................... 41

T.     Plaintiffs' Waiver of Right to Request Exclusion or to Object ........................ 41

U.     Agreement Constitutes a Complete Defense .................................................... 41

V.     Signatures .......................................................................................................... 42

W.     Execution Date and Execution in Counterparts ............................................... 42

Plaintiffs Anthony Alfaro, Jason Bartling, Aaron Dietrich, and John Dovala, individually and on behalf of all similarly situated current and former operators and maintenance workers (collectively "Named Plaintiffs" or "Plaintiffs"), on the one hand, and Defendant Marathon Refining Logistics Services LLC ("Defendant" or "Marathon") on the other (collectively, Plaintiffs and Marathon shall be referred to as the "Parties"), subject to the terms and conditions hereof and final approval by the Court, hereby enter into this Joint Stipulation of Class Action Settlement and Release.[1]

IT IS HEREBY STIPULATED AND AGREED by and among the Plaintiffs, for themselves and the Class, and Marathon, by and through their respective attorneys, that subject to final Court approval, the claims alleged in this Class Action will be finally and fully and forever compromised, released, resolved, discharged, and settled, and will be dismissed with prejudice as to Marathon, subject to the terms and conditions set forth in this Agreement.

## I.    RECITALS

### A.    Background and Procedural History

On June 24, 2019, Plaintiffs Anthony Alfaro and Aaron Dietrich (and former Plaintiffs Janice Wood and Warren Kostenuk) filed this action in Contra Costa County Superior Court alleging (1) failure to pay reporting time pay (IWC Wage Order No. 1-2001), (2) failure to pay all wages earned at termination (California Labor Code §§ 200-203), (3) failure to provide accurate itemized wage statements (California Labor Code §§ 226-226.3), and (4) violations of the Unfair Competition Law (California Bus & Prof. Code §§ 17200, *et seq*.).  Marathon removed the case to federal court on July 25, 2019, and the case was assigned to the Honorable Yvonne Gonzalez Rogers.  On August 30, 2019, Marathon filed a Rule 12(b)(6) motion to dismiss the complaint. The Court granted Marathon's motion with leave to amend, finding the claims preempted by Section 301 of the Labor Management Relations Act ("LMRA").  Plaintiffs filed a First Amended Complaint on January 6, 2020 and a Second Amended Complaint ("SAC") on January 24, 2020.

---

[1] See "II. Definitions" below.

1

Marathon filed a Rule 12(b)(6) motion to dismiss the SAC on February 7, 2020. The Court granted Marathon's motion in part and denied it in part, holding that Plaintiffs' claims based on a voluntary standby shift system were preempted by Section 301 of the LMRA, while Plaintiffs' claims based on a mandatory standby shift system were not. Plaintiffs filed a Third Amended Complaint on January 21, 2021 and a Fourth Amended Complaint on June 8, 2021. On June 17, 2022, Plaintiffs filed the operative Fifth Amended Class Action Complaint ("Fifth Complaint"). Marathon filed a Rule 12(b)(6) motion to dismiss or, in the alternative, strike the Fifth Complaint on July 1, 2022. The Court granted in part and denied in part Marathon's motion, striking references to California Labor Code Sections 226.7, 1198, and 98.3.

On June 14, 2022, the Court granted in part, denied in part, and deferred in part Plaintiffs' motion for class certification. After additional briefing, the Court certified two classes and two subclasses. Notice was initially distributed to the classes on February 23, 2023, with supplemental notices mailed on September 8, 2023 and May 31, 2024.

On February 28, 2023, Plaintiffs filed a motion for summary judgment. Marathon filed an opposition and a cross-motion for summary judgment on May 26, 2023. On March 21, 2024, the Court granted in part and denied in part Marathon's motion, finding reporting time claims and all derivative claims brought on behalf of shipping department operators and chemical plant operators preempted under Section 301 of the LMRA, and granting judgment for Marathon on Plaintiffs' Unfair Competition Law claims and Plaintiffs' waiting time claims under California Labor Code Section 203.

On June 11, 2024, the Parties filed a joint stipulation requesting entry of judgment in favor of Marathon as to Plaintiffs' claim for failure to provide accurate wage statements in violation of California Labor Code section 226. The Court entered judgment for Marathon on those claims in accordance with the stipulation on July 1, 2024.

On June 21, 2024, Marathon moved for decertification of all classes. The Court denied Marathon's motion on October 28, 2024.

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE
CASE NO. 4:19-cv-04287-YGR

The Parties have engaged in extensive discovery, there is a well-developed factual record, and the Parties have engaged in substantive briefing. Marathon has produced extensive payroll and scheduling data. Marathon has also deposed two named plaintiffs, 24 Settlement Class Members, Union Representative Tracy Scott, and Plaintiffs' expert Mikhail B. Pevzner. Plaintiffs have deposed Marathon's Rule 30(b)(6) witness Karen Kawano, and eight of Marathon's managers and supervisors.

The Parties participated in arm's-length and informed negotiations at settlement conferences conducted by the Honorable Joseph C. Spero on November 2, 2023, May 8, 2024, and December 10, 2024. At the conclusion of the December 10, 2024 settlement conference, Judge Spero made a Mediator's Proposal of Settlement. The Proposal was accepted by all Parties on December 17, 2024, except that, as a condition precedent to any valid long-form settlement agreement addressing the class claims, the Parties agreed that Marathon and the applicable unions must first execute a full and complete written agreement that addresses to Marathon's satisfaction standby practices on a going-forward basis (including modifications of any applicable collective bargaining agreements or related agreements as necessary) (hereinafter the "Condition Precedent"). The Parties agreed that if this Condition Precedent is not met, any long-form settlement agreement addressing the class claims and any monetary payment will be void.

The Parties and their counsel are sufficiently familiar with the facts of this case and the applicable laws to make an informed judgment as to the fairness of the Settlement, the respective strengths and weaknesses of the Plaintiffs' claims, and the risks of proceeding in litigation. The Parties are represented by competent counsel and have had the opportunity to consult with counsel prior to the signing this Agreement.

**B.      Parties' Statements and Recognition of the Benefits of the Settlement**

This is a wage and hour class action brought by Plaintiffs Anthony Alfaro, Jason Bartling, Aaron Dietrich, and John Dovala on behalf of themselves and certified classes of current and former operators and maintenance workers against Marathon Refining Logistics Services LLC. The case centers on Marathon's alleged failure to pay Settlement Class Members for mandatory

3

"Standby shifts," periods when Settlement Class Members were scheduled for but did not actually report to work.

Settlement Class Members seek relief for Marathon's alleged failure to pay reporting time pay, pursuant to California Industrial Welfare Commission Wage Order No. 1-2001 on behalf of the following proposed "Settlement Class":[2]

> All current and former operators of Marathon (or any of its affiliates or successors) who worked at the Martinez Refinery or Chemical Plant and were assigned mandatory standby shifts between June 24, 2015 and October 5, 2025 and all maintenance workers of Marathon (or any of its affiliates or successors) who worked at the Martinez Refinery and were assigned mandatory standby shifts, between June 24, 2015 and October 31, 2020.

Settlement Class Members also seek civil penalties on behalf of all aggrieved employees under California's Private Attorneys General Act of 2004, California Labor Code § 2698 *et seq.* ("PAGA"). The estimated total class size is 650 Settlement Class Members. The Parties agree to stipulate to the certification of Settlement Class for settlement purposes only.

Class Counsel has investigated the facts relating to the claims alleged in the Action and also has analyzed all defenses. Class Counsel interviewed certain Settlement Class Members regarding the claims in the Action and has examined Marathon's compliance with its policies, procedures, and practices. Class Counsel is also informed of Marathon's practices and procedures from disclosures made in prior litigation and pleadings from other litigation. The Parties have engaged in extensive negotiations and the exchange of data, documents, and information in this litigation. Based on a thorough investigation and evaluation of this case, Class Counsel and Plaintiffs have concluded that the proposed Settlement with Marathon for the consideration and on the terms set forth in this Settlement Agreement, is fair, reasonable, and adequate and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Marathon, and numerous potential appellate issues.

---

[2] See "II. Definitions" below.

4

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE
CASE NO. 4:19-cv-04287-YGR

Marathon denies each and all of the claims alleged by Plaintiffs in the Action. Marathon expressly denies any and all charges of wrongdoing or liability arising out of any of the acts, omissions, facts, matters, transactions, or occurrences alleged, or that could have been alleged, in the Action. Nevertheless, Marathon has taken into account the uncertainty and risks inherent in any litigation and have also concluded that further defense of the Action would be protracted and expensive. Marathon, therefore, has determined that it is desirable and beneficial that the Action be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. Neither this Settlement Agreement, nor any document referred to or contemplated herein, nor any action taken to carry out this Settlement Agreement, may be construed as, or may be used as an admission, concession, or indication by or against Marathon of any fault, wrongdoing, or liability whatsoever.

This Agreement is contingent upon approval of class certification under Federal Rule of Civil Procedure 23 for settlement purposes only. Marathon expressly reserves its rights to challenge the propriety of class certification or representative treatment for any other purpose should the Court decide to not approve this Settlement.

## II.    DEFINITIONS

As used in this Agreement, the following terms shall have the meanings specified below:

1.    "**Agreement**," "**Settlement**," or "**Settlement Agreement**" means this Joint Stipulation of Class Action Settlement and Release and all actions taken pursuant to and in furtherance of this Agreement.

2.    "**Administrator**" means CPT Group, or such other third-party administrator as may be approved by the Court, which shall be responsible for administering the Settlement pursuant to the terms of the Agreement, the Notice Packet, the Preliminary Approval Order, and the Judgment.

3.    "**Administration Costs**" means the amount approved by the Court to be paid to the Administrator to perform the Administration Duties described in this Agreement below. The

Administration Costs are estimated to be $10,750. The Administration Costs shall be paid out of the Gross Settlement Amount.

4. "**Attorneys' Fees and Costs Payment**" shall mean the amount of Attorneys' Fees and out-of-pocket expenses incurred to prosecute the Class Action to be paid to Class Counsel, as approved by the Court.

5. "**Class Action**" or "**Action**" shall mean Case No. 4:19-cv-04287-YGR, United States District Court for the Northern District.

6. "**Class Counsel**" shall mean the attorneys representing Plaintiffs and Settlement Class Members in the Class Action: Kristina Hillman, Jannah Manansala, Caitlin Gray, Alexander Nazarov, and Winnie Vien of Weinberg, Roger & Rosenfeld, and Aaron Kaufmann and David Pogrel of Kaufmann & Gropman, LLP.

7. "**Class List and Data**" shall mean the information and data Marathon shall provide to the Administrator following Preliminary Approval for purposes of providing notice of the Settlement to the Class. The Class List and Data shall be prepared in a readable Microsoft Excel Spreadsheet, which shall include for each Settlement Class Member, from Marathon's business records: (1) full name, (2) most recently known mailing address, (3) email address (to the extent available), (4) Social Security number, (5) date of termination, if any, and (6) number of Qualifying Work Weeks worked during the Class Period as determined by Marathon's business records.

8. "**Class Period**" shall mean, for operators, the period between June 24, 2015 through October 5, 2025, and shall mean, for maintenance workers, the period between June 24, 2015 and October 31, 2020.

9. "**Class Representatives**" shall mean Anthony Alfaro, Jason Bartling, Aaron Dietrich, and John Dovala.

10. "**Complaint**" refers to any and all complaints filed in the Action.

11. "**Court**" refers to the judge presiding over this Action in the United States District Court for the Northern District of California.

6

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE
CASE NO. 4:19-cv-04287-YGR

12. "**Defense Counsel**" refers to the attorneys representing Marathon: Catherine A. Conway, Jesse A. Cripps, Bradley J. Hamburger, Tiffany Phan, Madeleine F. McKenna, and Katie Geary of Gibson, Dunn & Crutcher LLP.

13. "**Effective Date**" shall mean seven (7) calendar days after all of the following conditions have been satisfied:

a. Execution of this Settlement Agreement by all Parties, Class Counsel, and Defense Counsel;

b. Submission of this Settlement Agreement to the Court, along with appropriate motions and requests for approval of this Settlement Agreement by the Court;

c. Preliminary Approval (as defined below) of the Settlement Agreement by the Court;

d. Mailing of the Class Notice (as defined below) to the Settlement Class Members (as defined below) in accordance with the Court's Preliminary Approval Order (as defined below);

e. Expiration of the opt-out date as defined in the Class Notice (as defined below);

f. Five percent (5%) or fewer of the Settlement Class Members (as defined below) submit timely and valid requests to opt out of the Settlement Class (as defined below) (or if more than five percent (5%) opt out, and Defendants do not exercise their right to rescind and void the Settlement Agreement);

g. A formal fairness hearing, and Final Approval (as defined below); and

h. The period for filing any appeal, writ or other appellate proceeding opposing the settlement has elapsed without any appeal, writ, or other appellate proceeding having been filed; or any appeal, writ, or other appellate proceeding opposing the settlement has been dismissed finally and conclusively with no right to pursue further remedies or relief; or any appeal, writ, or other appellate proceeding has upheld the Court's final order with no right to pursue further remedies or relief. This provision will be deemed to be satisfied if (a) there are no objections made to

7

the Settlement, and (b) following Final Approval, Plaintiffs and Class Counsel confirm to Defense Counsel, in writing, that they will not file an appeal of any decision on Attorneys' Fees and Costs and Service Payments.

14. "**Final Fairness / Final Approval Hearing**" means the hearing to be conducted by the Court, or any other Court taking jurisdiction of this matter, to determine whether the terms of the Agreement are fair, reasonable, and adequate and meet all requirements for Final Approval.

15. "**Final Approval Order**" is the order the Court issues, in connection with the Final Fairness/Final Approval Hearing that approves this Agreement.

16. "**Gross Settlement Amount**" means the sum of Nine Million Dollars ($9,000,000), which is the total and maximum payment Marathon will be required to pay to Plaintiffs under this Settlement Agreement, except that Marathon will be required to separately pay the employer's share of any payroll taxes (FICA and FUTA) on Individual Settlement Payments. The Gross Settlement Amount will include: (i) the payments to all Participating Settlement Class Members, as described herein; (ii) the PAGA Payment; (iii) Service Payments to the Class Representatives; (iv) Class Counsel's Attorneys' Fees and Costs Payment; (v) Administration Costs; (vi) employees' share of state, local, and federal taxes; and (vii) union dues. Under no circumstances shall any portion of the Gross Settlement Amount revert to Marathon.

17. "**Individual Settlement Payment**" shall mean the proportionate share of the Net Settlement Amount paid to Participating Settlement Class Members based upon the number of Qualifying Work Weeks (as defined in paragraph 35, below) he or she worked during the Class Period in relation to the number of Qualifying Work Weeks by all Settlement Class Members during the Class Period.

18. "**Judgment**" refers to the final judgment entered by the Court in this Action after finally approving the Agreement.

19. "**Marathon**" shall mean Defendant Marathon Refining Logistics Services LLC and any of its parents, subsidiaries, partners, joint ventures, affiliates, or successors, including Martinez Renewable Fuels LLC.

20. "**Net Settlement Amount**" means the Gross Settlement Amount less the Court-approved Class Counsel's Attorneys' Fees and Costs Payment, Administration Costs, the Service Payments to the Class Representatives, and the PAGA Payment portion paid to the State of California Labor & Workforce Development Agency ("LWDA"). To the extent the Court does not approve the full amount of the requested Attorneys' Fees and Costs, Administration Costs, the Service Payments, or the PAGA Payment to the LWDA, the unawarded portions will remain with the Net Settlement Amount for distribution to Participating Settlement Class Members.

21. "**Notice of Class Action Settlement**" or "**Class Notice**" means the Court-approved notice of the terms of the Agreement, substantially in the form attached as Exhibit A to be disseminated to the Class.

22. "**Notice Packet**" refers to the documents mailed to Settlement Class Members pursuant to the terms of this Settlement Agreement and includes the Court-approved Notice of Class Action Settlement (Exhibit A).

23. "**Notice Response Deadline**" means 45 days after the initial date of mailing the Notice Packet to Settlement Class Members, or such other date as set by the Court in the Preliminary Approval Order, to postmark a timely objection, request for exclusion, or dispute of the information upon which an Individual Settlement Payment is calculated.

24. "**PAGA Period**" shall mean, for operators, the period between July 5, 2018 through October 5, 2025, and shall mean, for maintenance workers, the period between July 5, 2018 and October 31, 2020.

25. "**PAGA Payment**" means the amount to be paid to settle claims under California's Private Attorneys General Act of 2004 ("PAGA"), California Labor Code sections 2698 *et seq*. Of the amount allocated to the PAGA Payment, 75% shall be paid to the State of California LWDA and 25% shall remain as part of the Net Settlement Amount for distribution to Settlement Class Members, regardless of whether they opt out of the Settlement Class.

26. "**Participating Settlement Class Member(s)**" means any or all Settlement Class Members who have not returned a valid request for exclusion from the Settlement postmarked by

the Notice Response Deadline.  Participating Settlement Class Members shall be issued Individual Settlement Payments without the need to return a claim form.

27.    "**Parties**" refers collectively to (1) Plaintiffs Anthony Alfaro, Jason Bartling, Aaron Dietrich, and John Dovala and (2) Marathon Refining Logistics Services LLC.

28.    "**Preliminary Approval**" and "**Preliminary Approval Order**" means the order preliminarily approving this Agreement, which shall, among other things, preliminarily find the Settlement to be fair, reasonable and adequate; conditionally certify the Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes; approve CPT Group as the Administrator; approve the content of the Class Notice and distribution of the Notice Packet to the Class; and set the date of the Fairness Hearing / Final Approval Hearing to determine whether to grant final approval of this Agreement.

29.    "**Released Claims**" shall mean those Class and PAGA claims described in paragraphs 66-67.

30.    "**Released Parties**" shall mean Marathon and each and all of its current or former successors, subsidiaries, parents, holding companies, partners, affiliates, divisions and other related entities, joint ventures, predecessors, and other related entities, as well as the successors, predecessors, subsidiaries, investors, parent and affiliated companies, insurers, reinsurers, agents, employees, assigns, officers, officials, directors, attorneys, principals, heirs, administrators, vendors, accountants, auditors, consultants, fiduciaries, vendors, accountants, auditors, consultants, personal representatives, executors, and shareholders, including its pension, profit sharing, savings, health, and other employee benefits plans of any nature, and representatives of each of them, both individually and in their official capacities, past or present, as well as all persons acting by, through, under, or in concert with, any of these persons or entities.

31.    "**Request for Exclusion**" means a written request made by a Settlement Class Member to the Administrator seeking to be excluded from the Class, in the manner set forth in this Agreement and described in the Class Notice.

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE
CASE NO. 4:19-cv-04287-YGR

32. "**Service Payment**" means a payment, as approved by the Court, to Class Representatives in accordance with Section VI.C.

33. "**Settlement Class**" or "**Settlement Class Members**" means all current and former operators of Marathon who worked at the Martinez Refinery, Martinez Chemical Plant, or Martinez Renewable Fuels Facility and were assigned mandatory standby shifts between June 24, 2015 and October 5, 2025, and all maintenance workers of Marathon (or any of its affiliates or successors) who worked at the Martinez Refinery or Martinez Renewable Fuels Facility and were assigned mandatory standby shifts, between June 24, 2015 and October 31, 2020.

34. "**Withholdings and Taxes**" means all withholdings from the Individual Settlement Payments required by law plus all federal, state, and local employment payroll taxes due and union dues owed with regard to the Individual Settlement Payments, whether owed by a Participating Settlement Class Member or by Marathon. Separate from the Gross Settlement Amount, Marathon shall pay an additional amount sufficient to cover Marathon's share of Withholdings and Taxes arising from the Individual Settlement Payments, as computed by the Administrator.

35. "**Qualifying Work Weeks**" shall mean the following:

   a. For the period from June 24, 2015 through October 31, 2020 (applicable to both operators and maintenance workers): the total number of weeks that Marathon's business records show that the Settlement Class Member was employed. Qualifying Work Weeks shall not include the time period from June 1, 2020 through October 31, 2020, because standby ceased at the Martinez Refinery or Chemical Plant during that period.

   b. For the period from November 1, 2020, through October 5, 2025 (applicable only to operators): the total number of weeks in which the Settlement Class Member was subject to Marathon's mandatory standby policy and also scheduled for at least one (1) standby shift, according to Marathon's schedules and/or other business records.

### III.   EXECUTION OF THE SETTLEMENT AGREEMENT

36.   The Parties will execute this Agreement within three (3) calendar days following the satisfaction of the Condition Precedent.

### IV.   AMENDED COMPLAINT FOR SETTLEMENT PURPOSES ONLY

37.   For purposes of this Settlement only, within seven (7) calendar days after the execution of this Agreement, the Parties will file a joint stipulation requesting that the Court allow Plaintiffs to file a mutually agreeable Sixth Amended Complaint in the Action that adds Jason Bartling and John Dovala as Named Plaintiffs.  If the Settlement Agreement is not approved, the Parties shall revert to status quo as of December 16, 2024, and the Parties agree that the Fifth Amended Complaint will become the operative complaint.

### V.   FILING OF MOTION FOR PRELIMINARY APPROVAL

38.   Plaintiffs will file their motion for preliminary approval within seven (7) calendar days following the Court's approval of the joint stipulation described in paragraph 37.

### VI.   DISTRIBUTION OF THE SETTLEMENT FUND

**A.   Payment of the Gross Settlement Amount.**

39.   In full settlement of the Released Claims and within twenty-one (21) calendar days following the Effective Date, Marathon shall deliver the Gross Settlement Amount to a Qualified Settlement Fund established by the Administrator in accordance with the timeline described in this Agreement.  The deposit shall also include the amount sufficient to cover Marathon's share of Withholdings and Taxes arising from the Individual Settlement Payments, as computed by the Administrator.

**B.   Attorneys' Fees and Costs.**

40.   Class Counsel may request a reasonable award of Attorneys' Fees not to exceed $3,000,000 and Costs not to exceed $250,000 from the Court to compensate them for fees and costs incurred for work already performed in this Class Action, and the work remaining to be performed in documenting the Settlement, securing court approval of the Settlement Agreement, administering the Settlement, and defending against any appeals, as well as all associated

expenses.  The amount awarded to Class Counsel shall be left to the discretion of the Court.  Class Counsel shall provide the Administrator with an IRS Form W-9 prior to the receipt of the Attorneys' Fees and Costs Payment.

41.    Class Counsel will submit an application for Attorneys' Fees and Costs to the Court for approval prior to the date of the Final Fairness/Final Approval Hearing.  The Parties agree that, except for the total amount of the Court-approved Attorneys' Fees and Costs awarded, each Party, including all persons eligible to be Settlement Class Members, shall bear their own fees and costs relative to the investigation, filing, prosecution, or settlement of the Class Action, the negotiation, execution, or implementation of this Settlement Agreement, and/or the process of obtaining, administering, or challenging a Preliminary Approval Order and/or Final Approval Order.

42.    The Parties agree that Class Counsel shall be solely responsible for the division and distribution of any and all Court-approved Attorneys' Fees and Costs Payment awarded in the Class Action to Class Counsel.  Class Counsel release Marathon and the Released Parties from any responsibility for or liability arising out of or related to the division and distribution of any Court-approved Attorneys' Fees and Costs Payment to Class Counsel.

43.    Approval of the Attorneys' Fees and Costs Payment is not a material term of this Settlement Agreement.  In the event that the Court denies, modifies, or reduces Class Counsel's request for Attorneys' Fees and Costs Payment, then Plaintiffs, Class Counsel, and the Participating Settlement Class Members may not seek to modify, revoke, cancel, terminate, or void this Settlement Agreement and will not seek, request, or demand an increase in the Gross Settlement Amount.  This provision does not limit Class Counsel's right to appeal any Attorneys' Fees and Costs Payment award that is less than the amount applied for.

44.    If Class Counsel appeal the Court's ruling on their request for Attorneys' Fees and Costs, any ruling of any appellate court in such an appeal (regardless of its substance) shall not constitute a material alteration of this Settlement Agreement, and shall not give Plaintiffs, Class Counsel, or the Participating Settlement Class Members the right to modify, revoke, cancel, terminate, or void this Settlement Agreement.

45.    All claims for attorneys' fees or costs or expenses that Class Counsel, Plaintiffs, and the Participating Settlement Class Members may possess against Marathon have been compromised and resolved by this Agreement and shall not be affected by any appeal that Class Counsel may file.

46.    The Attorneys' Fees and Costs Payment shall represent payment of all claims for Class Counsel's attorneys' fees and costs, past and future, incurred in the Action.  The Attorneys' Fees and Costs Payment shall be paid from the Gross Settlement Amount, and Marathon shall not otherwise be required to pay for any portion of Plaintiffs' or the Settlement Class Members' attorneys' fees, costs, or expenses.  An award by the Court of Attorneys' Fees or Costs that is less than the amounts applied for will not be grounds for Plaintiffs or Class Counsel to challenge or withdraw from the Settlement.  Class Counsel will, however, in such circumstances retain its right to appeal any Attorneys' Fees and Costs Payment award that is less than the amount applied for.

C.    **Service Payments to Class Representatives.**

47.    In addition to the amounts determined to be due to the Class Representatives as Participating Settlement Class Members under this Settlement Agreement, Class Counsel and Plaintiffs intend to apply to the Court for Service Payments to the Class Representatives, in the total amount of up to $15,000 each for Anthony Alfaro and Aaron Dietrich and $3,500 each for Jason Bartling and John Dovala in consideration of their efforts to initiate and prosecute the Class Action, work performed, risks for payment of costs in the event of loss, other risks incurred, and general releases of all claims each may have against Marathon, and the substantial benefits conferred upon the Class by this Agreement.  Each Class Representative shall be issued an Internal Revenue Service Form 1099-MISC for such Service Payment and must provide an IRS Form W-9 as a condition of the Service Payment.  Each agrees to be solely responsible for the tax consequences of the Service Payments, if any.

48.    In exchange for this Service Payment, the Class Representatives agree not to publicize the Settlement, except that, as necessary to effectuate the Settlement, they are permitted to discuss the Settlement with the union and any class members who may have questions.  The

14

Class Representatives agree to limit any response to a media inquiry to a statement that the matter has been resolved, and agree to the General Release as described in paragraph 66.

49.     Approval of a Service Payment is not a material term of this Settlement Agreement. In the event that the Court denies, modifies, or reduces any request for a Service Payment, Plaintiffs reserve their right to appeal such an order; however, Plaintiffs, Class Counsel, and the Participating Settlement Class Members may not seek to modify, revoke, cancel, terminate, or void this Settlement Agreement and will not seek, request, or demand an increase in the Settlement Amount.  This provision does not limit any Plaintiff's right to appeal any Service Payment award that is less than the amount applied for.

50.     If Plaintiffs appeal the Court's ruling on Plaintiffs' request for a Service Payment for the Class Representatives, any ruling of any appellate court in such an appeal (regardless of its substance) shall not constitute a material alteration of this Settlement Agreement, and shall not give Plaintiffs, Class Counsel, or the Participating Settlement Class Members the right to modify, revoke, cancel, terminate, or void this Settlement Agreement.

**D.     PAGA Payment.**

51.     The total amount of the Gross Settlement Amount allocated to PAGA penalties shall be $80,000 for resolution of the PAGA claims alleged in the Action.  Of this amount, the Parties agree that $60,000 (75%) of the PAGA Payment shall be paid to the LWDA and $20,000 (25%) of the PAGA Payment shall remain with the Net Settlement Amount to be paid to the Settlement Class Members (the "PAGA Payment to Employees").  Any reduction or increase in the requested PAGA Payment is not a material term of this Settlement Agreement.  If the Court approves only a lesser amount than that requested, then the other terms of this Agreement shall remain in effect.  But some approval of a PAGA Payment is a material term.  If the Court does not approve the release of all of Plaintiffs' or Settlement Class Members' claims under PAGA, then the entire Agreement will be, at Marathon's sole discretion, void and unenforceable.

///

///

**E.     Administration Costs.**

52.     Class Counsel shall seek approval for the payment of Administration Costs, which will be deducted from the Gross Settlement Amount.  Administration Costs are estimated to be $10,750.  No fewer than ten (10) court days prior to the Final Fairness/Final Approval Hearing, the Administrator shall provide the Court and all counsel for the Parties with a declaration detailing the Administration Costs.  The Parties agree to cooperate in the settlement administration process and to make all efforts to control and minimize the costs and expenses incurred in the administration of this Settlement.  Administration Costs are not a material term; if the Court approves a lesser amount, then the other terms of this Agreement shall remain in effect.

**F.     Plan of Allocation and Calculation of Individual Settlement Payments.**

53.     The Administrator shall be responsible for calculating Participating Settlement Class Members' individual and proportionate share of the Net Settlement by using the information included within the Class List and Data.

54.     The Individual Settlement Payment to each Participating Settlement Class Member shall be the Participating Settlement Class Member's pro-rata share of the Net Settlement, based on the following formula:

    a.  The Administrator shall calculate the total number of Qualifying Work Weeks, as defined in paragraph 35, above, according to the following formula:

        i.  For operators: Qualifying Work Weeks from June 24, 2015, through May 31, 2020, and November 1, 2020, through October 5, 2025;

        ii.  For maintenance workers: Qualifying Work Weeks from June 24, 2015, through May 31, 2020.

    b.  The Administrator will then divide the Net Settlement by the total number of Qualifying Work Weeks worked by Participating Settlement Class Members during the Class Period, resulting in a credit value for each Qualifying Work Week.

    c.  The Administrator will then take the credit value and multiply it by each Participating Settlement Class Member's Qualifying Work Weeks.

16

55.     If any Settlement Class Member opts out of the Settlement Class, the Administrator shall determine whether the Settlement Class Member worked any Qualifying Work Weeks during the PAGA Period.  The Administrator will then calculate a pro-rata share of the PAGA Payment to Employees by dividing the PAGA Payment to Employees by the total number of Settlement Class Members who worked during the PAGA Period (the "Individual PAGA Allocation").  Settlement Class Members who opt out of the Settlement Class and who worked Qualifying Work Weeks during the PAGA Period will receive only the Individual PAGA Allocation and not an Individual Settlement Payment as calculated in paragraph 54 above.

56.     The Administrator shall use the information contained in the Class List and Data to calculate each Participating Settlement Class Member's Individual Settlement Payment.  In the event a dispute arises with respect to the information upon which an Individual Settlement Payment is determined, the Administrator shall review the information provided by the Settlement Class Member, consult with Counsel for the Parties, and make the final and binding determination of the amount to be awarded, which shall not be appealable.

57.     In accordance with state, local, and federal tax laws, the Administrator shall withhold such sums from each Individual Settlement Payment as is required in order to comply with employee-side state, local, and federal tax laws.  After appropriate tax withholding from Individual Settlement Payments, the Administrator shall pay over all such withheld funds to the appropriate state, local, and federal taxing authorities to comply with applicable law and shall do so as soon as practicable.  In addition, the Administrator shall make deductions from the wage portion of each Participating Settlement Class Member's Individual Settlement Payment for union dues consistent with the applicable collective bargaining agreements.  The Administrator shall also pay over all such union dues to the union.  The Administrator shall provide each Participating Settlement Class Member with appropriate documentation setting forth the amount of any tax, union dues, or other payment withheld, and employer contribution made, in accordance with state and federal tax requirements.  If requested by Marathon, the Administrator shall also provide to Marathon the same documentation for each Participating Settlement Class Member.

17

**G.    No Effect on Benefits for Settlement Class Members.**

58.    Plaintiffs agree, on behalf of all Settlement Class Members, that this Agreement and any payments under this Agreement shall not have any effect on the eligibility or calculation of employee benefits under any employee benefit plans with respect to the Settlement Class Members.  This Agreement does not represent any modification of any previously credited hours of service, compensation or other earnings, income, or other eligibility or benefit accrual criteria under any employee benefit plan, or other program or policy sponsored or maintained by the applicable union and/or any of the Released Parties.  For purposes of this Agreement, the term "employee benefit plan" means an "employee benefit plan" as defined in section 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), and also includes any 401(k) plan, bonus, pension, stock option, stock purchase, stock appreciation, welfare, profit sharing, retirement, disability, vacation, severance, hospitalization, insurance, incentive, deferred compensation, or any other similar benefit plan, practice, program, or policy, regardless of whether any such plan, practice, program, or policy constitutes an employee benefit plan subject to ERISA.

59.    Likewise, Plaintiffs agree, on behalf of all Settlement Class Members, that no payment provided under this Settlement Agreement shall be considered compensation or other earnings in any year for purposes of determining eligibility for or benefit accrual under any employee benefit plan.

**H.    Taxes.**

60.    The payment by Marathon pursuant to this Agreement is for alleged failure to pay reporting time, interest, and penalties, and all other claims as set forth in the Action.  For purposes of this Settlement, the Parties agree that Individual Settlement Payments will be allocated 60% to wages subject to withholdings for which IRS W-2 Forms shall be issued, and 40% to interest and penalties under the California Labor Code for which IRS 1099-MISC Forms shall be issued.  For any Settlement Class Members who opt out of the settlement, the Individual PAGA Allocation will be allocated as 100% to penalties, which will be reported to the IRS on Form 1099-MISC.

Approval of the tax allocations set forth above is not a material term. If the Court approves a different tax allocation, then the other terms of this Agreement shall remain in effect.

61.    Nothing in this Agreement is advice by Defense Counsel or Class Counsel regarding taxes or taxability, and no Party is relying upon Defense Counsel or Class Counsel for such advice. Each Party instead is relying exclusively on the Party's own independent tax counsel in connection with this Agreement.

62.    Participating Settlement Class Members receiving an Individual Settlement Payment shall be responsible for paying his or her share of applicable federal, state, and local income taxes on all amounts such person receives pursuant to this Agreement.

63.    <u>Administrator Responsibilities Regarding Taxes</u>. It shall be the responsibility of the Administrator or its designee to timely and properly withhold all applicable Withholdings and Taxes from Participating Settlement Class Members based on their Individual Settlement Payments and to prepare and deliver the necessary tax documentation for signature by all necessary parties and, thereafter, to pay the Withholdings and Taxes to the appropriate authorities, and to file all necessary information and other tax returns. Payments to Settlement Class Members, Plaintiffs, and Class Counsel pursuant to this Agreement shall be reported on IRS Forms W-2 or 1099-MISC as applicable, as well as any local or state required forms, with copies provided to the respective Settlement Class Members, Plaintiffs, Class Counsel, Marathon, and all applicable governmental entities as required by law. All Withholdings and Taxes deposited with the applicable governmental entities in accordance with this Agreement, other than Marathon's share of employer Withholdings and Taxes arising from the Individual Settlement Payments, shall be part of, and paid out of, the Individual Settlement Payments to each Participating Settlement Class Member.

64.    <u>Tax Expenses Resulting from Administration</u>. All reasonable and direct expenses and costs incurred by or at the direction of the Administrator in connection with the administration of the Settlement (including, without limitation, expenses of tax attorneys and/or accountants incurred in providing advice to the Administrator, and mailing and distribution costs and expenses relating to the filing (or failure to file) the informational and other tax returns described above)

shall be considered a cost of administration of the Settlement and shall be part of the Administration Costs to be paid out of the Gross Settlement Amount.

65.    <u>Employer's Share of Withholdings and Taxes</u>.  The Administrator will notify Marathon of the amount of the employer share of Withholdings and Taxes no later than ten (10) calendar days after Final Approval and sooner to the extent possible.  Marathon will pay that amount to the Administrator in addition to the Gross Settlement Amount within twenty-one (21) calendar days following the Effective Date.  The Administrator will also give Marathon an estimate of the employer's share of these Withholdings and Taxes within five (5) calendar days of sending out the Settlement Notice.

## VII.    CLAIMS RELEASED BY SETTLEMENT AGREEMENT

66.    In exchange for the payments by Marathon as described herein, and except as to such rights or claims as may be created by this Settlement Agreement, the Participating Settlement Class Members, including the Class Representatives (who shall not opt out), jointly, severally, shall, and hereby do fully release and discharge Marathon and the Released Parties for the Class Period from any and all claims, judgments, liens, losses, debts, liabilities, demands, obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages, indemnities, actions, causes of action, and obligations of every kind and nature in law, equity or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, contingent or accrued, occurring up during the Class Period and arising out of the dispute which is the subject of the Action, or which could have been asserted in the Action based on the facts alleged, whether in contract, violation of any state or federal statute, rule or regulation, arising out of, concerning, or in connection with any act or omission alleged in the Action by or on the part of Released Parties, including, without limitation, those relating to the failure to pay reporting time pay, failure to provide accurate wage statements, failure to timely pay wages due at the time of termination of employment, penalties relating to inaccurate wage statements, or other alleged wage and hour violations and related record-keeping requirements, including, without limitation, violation of Business & Professions Code section 17200, the applicable California Industrial Welfare Commission Order, or any other California or

federal laws relating to the failure to pay wages and penalties based on the facts alleged in the Complaints. ("Class Claims Released").  Class Claims Released include any unknown claims that Participating Settlement Class Members do not know or suspect to exist in their favor based on the facts alleged in the Action, which if known by them, might have affected this Settlement Agreement with Marathon and release of the Released Parties, including, but not limited to, conduct that is intentional, negligent, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Claims Released do not include any workers' compensation claims, claims for physical bodily harm, discrimination claims, unemployment insurance claims, or any other claims not directly related to the Class Claims Released or which cannot be released as a matter of law.

67.     All Settlement Class Members, regardless of whether they opt out, will release their right to pursue PAGA claims and PAGA penalties through the PAGA Period, based on the facts alleged in the Action ("PAGA Claims Released").

68.     The Parties intend that this Settlement Agreement shall be binding on all Settlement Class Members, whether or not they actually receive a payment pursuant to this Settlement Agreement.  Upon the Effective Date, the Class Representatives and Participating Settlement Class Members shall be deemed to have, and by operation of the Final Approval Order shall have fully, finally, and forever settled and released any and all of the Class Claims Released and (as to all Settlement Class Members) PAGA Claims Released, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future.  This Settlement Agreement shall constitute, and may be pleaded as, a complete and total defense to any Claims Released if raised in the future.

69.     Class Representatives, and each of their successors, assigns, heirs, personal representatives and all those who claim through each of them, or who assert claims on their behalf, shall be deemed to have, and by operation of the Judgment shall have, expressly released, waived, and relinquished the Released Claims.  Additionally, Class Representatives agree that they

21

expressly and generally release and waive any and all claims, demands, rights, liabilities, and causes of action each has had or ever had against any of the Released Parties, whether for economic damages, noneconomic damages, punitive damages, penalties, restitution, injunctive or declaratory relief, interest, attorneys' fees, costs, or any other forms of monetary or non-monetary relief in any way arising out of or relating to any facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions, or failures to act at any time on or before the date the Court enters an order approving Plaintiffs' Motion for Preliminary Approval, including, but not limited to, any claims arising from or related to their employment or separation of employment, contractual, and/or quasi-contractual relationship with Marathon and the Released Parties, or any of them; any allegations as to disputed wages, remuneration, and/or other compensation due by operation of statute, ordinance, contract, or quasi-contract; any federal, state, or local law prohibiting discrimination or retaliation on the basis of age, race, color, ancestry, religion, disability, sex, national origin, or citizenship or any other protected category, including, without limitation, claims under Title VII, the California Fair Employment and Housing Act, the California Labor Code, Fair Labor Standards Act, the California IWC Orders, the Employee Retirement Income Security Act, and the Americans With Disabilities Act or any other similar statutes whatever the city, county, state, or country of enactment; any claims or grievances under collective bargaining agreements or the National Labor Relations Act; any claims under the Family and Medical Leave Act of 1993 and/or the California Family Rights Act; and any transactions, occurrences, acts, statements, disclosures, or omissions, occurring between June 24, 2015 and October 5, 2025. Class Representatives' General Release specifically excludes claims for workers' compensation. This general release by Class Representatives shall become effective upon the Effective Date and include all statutory claims, common law claims (including, but not limited to, those sounding in contract, tort, and equity), and claims for compensation to the fullest extent permitted by law. Class Representatives further agree not to sue or otherwise make a claim against any of the Released Parties for any of the Released Claims or claims subject to the general release.

70. Class Representatives each acknowledge that the General Release also includes a waiver of rights under California Civil Code section 1542 and any similar law of any state or territory of the United States. California Civil Code section 1542 states as follows:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

## VIII. SCHEDULE FOR FINALIZING SETTLEMENT AGREEMENT

### A. Preliminary Approval.

71. Within seven (7) calendar days following satisfaction of the Condition Precedent, or on a later date if mutually agreed upon by the Parties, Marathon will send the following data, in Excel format, to Class Counsel for use in the Motion for Preliminary Approval:

    a. For the period from June 24, 2015, through October 31, 2020 (applicable to both operators and maintenance workers): each Settlement Class Member's full name, the number of Qualifying Work Weeks (as defined in paragraph 35, above) during this portion of the Class Period, and the dates of employment used to calculate the number of Qualifying Work Weeks; and

    b. For the period from November 1, 2020, through October 5, 2025 (applicable only to operators): each operator Settlement Class Member's full name, an estimate of the number of Qualifying Work Weeks (as defined in paragraph 35, above) during this portion of the Class Period, and the dates of employment used to estimate the number of Qualifying Work Weeks.

72. Within seven (7) calendar days following the Court's approval of the joint stipulation described in paragraph 37 or Marathon's provision of the data described in paragraph 71 to Class Counsel, whichever is later, Plaintiffs shall apply for Preliminary Approval of the Settlement. Plaintiffs' application shall request the Court to:

   a.  Conditionally certify the Settlement Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only;

   b.  Preliminarily approve this Agreement as fair, reasonable, and adequate;

   c.  Preliminarily approve the Notice of Class Action Settlement attached as Exhibit A;

   d.  Approve CPT Group as the Administrator;

   e.  Set deadlines for the Administrator to provide the Court-approved Class Notice to the Settlement Class, and for Settlement Class Members to request exclusion, dispute Qualifying Work Weeks, or object to the Settlement;

   f.  Set the date for the filing of Plaintiffs' Motion for Approval of Attorneys' Fees and Costs and Class Representative Service Payments; and

   g.  Set the date, time, and department for the Final Fairness / Final Approval Hearing.

73.   Class Counsel shall draft the Motion for Preliminary Approval and give Defense Counsel a reasonable opportunity to review and provide comments on the Motion for Preliminary Approval before it is filed.  Before filing the Motion, Class Counsel will consider in good faith any comments by Defense Counsel.

74.   Upon moving for Preliminary Approval, Class Counsel will also submit the proposed Settlement Agreement to the LWDA, pursuant to California Labor Code section 2699(1)(2).

75.   Within ten (10) calendar days after the filing of the Motion for Preliminary Approval, Marathon shall comply with the "Notification of Settlement" requirements of the Class Action Fairness Act (28 U.S.C. § 1715) and give notice of such to Class Counsel.

**B.**   **Class List and Data.**

76.   Within twenty-one (21) calendar days following entry of the Preliminary Approval Order, Marathon will produce the Class List and Data to the Administrator.  If data concerns would interfere with the Administrator's ability to comply with the deadlines set by the Court, the Parties agree to jointly apply to the Court for an extension of the schedule provided herein to allow the Parties to resolve the concerns.  The Administrator will keep the Class List and Data strictly

24

confidential in accordance with applicable data privacy and security laws and shall use this information only for the purposes described in this Agreement. The Class Administrator will indemnify Marathon for any damages arising out of any breach or misuse of the Class List and Data. The Class Administrator agrees to securely maintain the data and agrees not to use the information for any purpose other than the administration of the settlement of the Actions and agrees not to disclose the information to any third party.

**C.    Class Notice.**

77.    Subject to Court approval, the Parties agree that as soon as practicable after entry of the Preliminary Approval Order, the Administrator shall provide notice to the Class pursuant to the following procedures:

a.  Fourteen (14) calendar days after Marathon provides to the Administrator the Class List and Data, the Administrator shall send a Notice of Class Action Settlement to all Settlement Class Members by regular U.S. Mail, postage prepaid, and supplement with email notice, if feasible. In order to provide the best notice practicable, any Class Notice returned as undelivered shall be sent to the forwarding address affixed thereto, if any. If no forwarding address is provided for a Class Notice that is returned as undelivered, the Administrator will use a reliable computer search method to locate a current address. If no current address is located, the Class Notice for that individual will be deemed undeliverable. If the procedures herein are followed, Marathon, Class Counsel, and the Administrator shall be deemed to have satisfied their obligation to provide the Class Notice to the Settlement Class. A copy of the proposed Class Notice is attached hereto as Exhibit A.

b.  The Class Notice shall inform Settlement Class Members of their right to opt out of the Settlement Class and be excluded from receiving any benefits for the Class Claims Released under the Settlement Agreement by completing and mailing a written opt-out request to the Administrator no later than forty-five (45) calendar

days after the postmark date of the Class Notice.  Any member of the Settlement Class who submits a timely and valid request to opt out will receive no settlement payment for the Class Claims Released and will not be bound by the terms of the Settlement Agreement nor have any right to object, appeal, or comment thereon. Late-submitted opt-out requests will not be accepted by the Administrator and shall not be effective.  The Administrator will certify jointly to Class Counsel and Defense Counsel, which requests to opt out were valid and timely submitted.

c.  If a member of the Settlement Class disagrees with the number of Qualifying Work Weeks, the member must complete and send a notice of dispute to the Administrator, together with any supporting written documentation.  Such documentation may consist of official records, pay stubs, weekly schedules, or personal logs.  To be considered, the notice of dispute and supporting written documentation must be postmarked no later than forty-five (45) calendar days after the postmark date of the Class Notice.

d.  The Administrator shall immediately notify both Class Counsel and Defense Counsel of any disputes submitted by Settlement Class Members.  The Administrator shall share with both Class Counsel and Defense Counsel the notice of dispute and any documentation submitted by a Settlement Class Member in support of his or her dispute.  The Administrator shall make the final determination regarding the dispute based on the written documentation submitted by the Settlement Class Member and any materials submitted by counsel within ten (10) calendar days of receipt of the notice of dispute and supporting written documentation, or no later than sixty (60) calendar days after the postmark date of the Class Notice.  The Administrator shall inform each Settlement Class Member of the final determination by a telephone call, followed by an email or regular U.S. Mail if no email for that Settlement Class Member is available.

e. The Administrator shall create and maintain a website, which will include links to the Class Notice, Motions for Preliminary and Final Approval, and Motion for Attorney's Fees as they become available, until the Effective Date. The website shall also include links to any other documents or information the Administrator deems necessary to perform its duties but shall in no case include any information or data provided in the Class List or Data. The Motion for Attorneys' Fees and any related filings shall be available on the website for a reasonable period of time of no less than fourteen (14) calendar days prior to the deadline for class members to file an objection to the Settlement Agreement.

f. At least fourteen (14) calendar days before the Final Fairness Hearing, the Administrator shall prepare a declaration of due diligence and proof of mailing with regard to the mailing of the Class Notice and email (if email was deemed feasible), and any attempts by the Administrator to locate the Settlement Class Members ("Due Diligence Declaration"), to Class Counsel and Defense Counsel for presentation to the Court. The Administrator will attach to the Due Diligence Declaration a report showing the name of each individual who submitted a timely and valid opt-out. Class Counsel shall be responsible for filing the Due Diligence Declaration with the Court.

g. If at any point the Administrator determines that it needs additional time, the Administrator shall inform the Parties, and the Parties will seek from the Court a modification of the schedules contained in this Settlement Agreement or any Court Order, to be consistent with the recommendations and requests of the Administrator. However, the Administrator shall not make a request for a time modification if the need for additional time is a result of any Party failing to provide information as required in this Settlement Agreement on a timely basis. If a Party fails to provide required information according to this schedule, any other Party

reserves the right to seek the Court's intervention to ensure compliance with the agreed terms of this Settlement Agreement.

### D.   Administrator's Duties.

78.   The Administrator's duties shall include the following, without limitation, among others: (i) formatting, printing, and mailing the Notice Packet to the Class via regular U.S. Mail as directed by the Court, and establishing a website domain to host the relevant settlement documents; (ii) taking all steps reasonably necessary to ensure Settlement Class Members timely receive the Notice Packet, i.e., National Change of Address ("NCOA") database search prior to the initial mailing, skip-tracing on receipt of returned undelivered Notice Packets, or similar actions to facilitate notice; (iii) calculating the credit value for each Work Week based on each Participating Settlement Class Member's number of Qualifying Work Weeks, including resolving any Settlement Class Member disputes about the number of Qualifying Work Weeks during the Class Period; (iv) establishing and maintaining a Qualified Settlement Fund; (v) calculating and distributing Individual Settlement Payments, the PAGA Payment, the Service Payments, and the Attorneys' Fees and Costs Payment, provided such amounts are approved by the Court; (vi) calculating and paying Marathon's share of payroll taxes (employer's share); (vii) calculating and making deductions for union dues owed from the portion of Participating Settlement Class Members' Individual Settlement Payments allocated as wages and reportable on IRS Form W-2; (viii) issuing IRS Forms W-2 and 1099, as applicable, and reporting all Individual Settlement Payments, Service Payments, and the Attorneys' Fee and Costs Payment; (ix) forwarding sums represented by uncashed checks cy pres to the East Bay Community Law Center; and (x) keeping Class Counsel and Defense Counsel apprised of the status of the administration process and its distribution of Individual Settlement Payments, together with such other tasks as the Parties may mutually agree upon or the Court may order the Administrator to perform.

79.   The Administrator shall take all reasonable steps to ensure that it has the most current and accurate addresses for Settlement Class Members, and that the highest percentage of Settlement Class Members receive the Notice Packet.  It shall perform a National Change of

Address database search of Settlement Class Member addresses prior to the initial mailing of the Notice Packets.  In addition, the Administrator shall perform standard searches, also known as "batch," "skip trace," or "credit header" searches using Settlement Class Members' Social Security numbers on Notice Packets returned as undeliverable.

80.    The Administrator shall also: provide toll-free telephone support and a post office box to facilitate Settlement Class Member communications; maintain appropriate databases to fulfill its duties; receive, control, and account for all returned Notice Packets; calculate Settlement Class Members' Individual Settlement Payments; and prepare and deliver weekly status reports to Class Counsel and Defense Counsel which includes the number of Notice Packets mailed, returned, searches performed, the number re-mailed, as well as the number of disputes, requests for exclusion, and objections received.  In addition to the duties described in this Section, the Administrator shall prepare final declarations, reports, and invoices that accurately describe the notice process, the level of participation, and actions taken to ensure the best possible notice of the Settlement was provided to Settlement Class Members.

**E.    Requests for Exclusion/Opt Outs.**

81.    Settlement Class Members who wish to be excluded from (or opt out of) the Settlement must submit to the Administrator a written Request for Exclusion postmarked by the Notice Response Deadline.  Settlement Class Members cannot opt out of the release of their PAGA claims.

82.    Contents of Request for Exclusion.  The Request for Exclusion must contain (i) the name of this Action; (ii) the full name, address, telephone number of the person requesting to be excluded; (iii) the words "Request for Exclusion," "Opt Out," or similar notation in the document; and (iv) be personally signed by the Settlement Class Member seeking to be excluded.

83.    For purposes of determining timeliness, Requests for Exclusion shall be deemed to have been submitted on the date postmarked by the U.S. Postal Service or other delivery service.  The Administrator shall stamp the date received on the original of any Request for Exclusion received.  Not later than fifteen (15) days after the Notice Response Deadline, the Administrator

will inform Class Counsel and Defense Counsel of the total number of Settlement Class Members who timely submitted valid Requests for Exclusion, and shall serve copies of all date-stamped Requests for Exclusion on Class Counsel and Defense Counsel.

84.    Non-Opt Outs Bound.  Settlement Class Members who do not submit a valid and timely Request for Exclusion substantially in compliance with this Section and as described in the Notice of Class Action Settlement by the Notice Response Deadline, including because of inability to locate the Settlement Class Member's current address or for other reasons beyond the Settlement Class Member's control, shall be bound by the terms of this Agreement, any Court order approving the terms of the Settlement, and the Judgment entered thereon.

85.    Resolution of Disputes.  In the event of any issue over completeness, accuracy, timeliness, or validity of a Request for Exclusion, the Parties shall meet and confer in good faith for the purpose of resolving the issue and, if the issue cannot be resolved, shall submit the dispute to the Administrator for a final and binding determination that shall not be appealable.

86.    Marathon's Right to Rescind.  If more than five percent (5%) of the Class submit a valid and timely Request for Exclusion, then Marathon shall have the option, in its sole discretion, to rescind this Agreement, in which case all of Marathon's obligations under this Agreement shall cease to be of any force or effect and this Agreement shall be null and void.  If Marathon exercises this option, it shall provide Class Counsel with written notice of its election within ten (10) days of the end of the opt out period, with a copy to the Administrator, at which point the Parties shall return to their respective positions that existed before the execution of this Agreement, and no term of this Agreement or any draft thereof, or the negotiation, documentation, or other part or aspect of the Parties' settlement discussions, shall have any effect or be admissible as evidence for any purpose in the Action or in any other proceeding.

**F.    Objections.**

87.    Only Participating Settlement Class Members (i.e., those Settlement Class Members who have not excluded themselves from the Settlement) shall be entitled to object to the terms of the Agreement.

88.    Manner of Objecting.  Settlement Class Members who wish to object to the Settlement must send or deliver to the Court a personally signed written statement objecting to the Settlement, setting forth their name, address, telephone number, the last four digits of their Social Security number, and the basis for their objection along with all evidence and supporting papers (including, without limitation, all briefs, written evidence, and declarations) postmarked on or before the Notice Response Deadline.  Settlement Class Members who timely submit a valid objection to the Settlement may, but are not required to, appear at the Final Fairness/Final Approval Hearing.

89.    Content of Objection.  The objection must state with specificity the grounds for the objection.

90.    Obligations of Individuals Who Object.  Those Settlement Class Members who submit valid and timely objections must be available for deposition within 75 miles of the address of the Court if a Party chooses to take their deposition.  Any objector who fails to appear for a duly noticed deposition shall be deemed to have withdrawn the objection.  Objectors can appear at the Final Fairness/Final Approval Hearing either in person or through counsel but must state their intent to do so at the time they submit their objection.  An objection may be withdrawn at any time except that Court approval after a hearing is required if payment or consideration is provided in connection with the withdrawal.

91.    Waiver of Objections.  Settlement Class Members who do not submit an objection in the manner specified above and as described in Class Notice shall be deemed to have waived all objections and shall be foreclosed from objecting to this Agreement, whether by appeal or otherwise.

92.    Effect of Untimely Objection.  No Settlement Class Member shall be entitled to be heard at the Final Fairness/Final Approval Hearing, whether individually or through separate counsel, unless the written statement of objection and any supporting materials are timely filed and served as set forth in this Section and described in the Class Notice unless excused by the Court.  Unless excused by the Court, Settlement Class Members who fail to file and serve written

31

objections in the manner specified by the Notice Response Deadline shall be deemed to have waived all objections and shall be foreclosed from making any objection, whether by appeal or otherwise, to the Settlement.

93.    Appeal Rights.  Only a Settlement Class Member who has filed a timely objection has the right to appeal a judgment that is in accord with this Agreement, except Class Counsel and Class Representatives retain a limited right to appeal an award of Attorneys' Fees and Costs or Service Payments.

**G.    Final Approval and Entry of Judgment.**

94.    Following the Notice Response Deadline, and on or before the date set by the Court or set by statute, Plaintiffs shall move for Final Approval of the Settlement, to obtain an order to (a) approve this Agreement, (b) adjudge its terms to be fair, reasonable, and adequate, (c) recite the Released Claims, (d) direct that the terms of the Agreement be carried out, and (e) retain jurisdiction to oversee enforcement of this Agreement.  The Proposed Final Judgment and Order Approving Settlement shall (a) enter Judgment in accordance with this Agreement, without further fees or costs, (b) enter an order as to the Attorneys' Fees and Costs Payment, (c) enter an order as to any Service Payments, and (d) enter an order permanently enjoining all Participating Settlement Class Members from pursuing or seeking to reopen claims that have been released by this Agreement.  Class Counsel shall draft the Motion for Final Approval and provide Defense Counsel a reasonable opportunity to review and provide comments on the Motion for Final Approval before it is filed.  Before filing any motion, Class Counsel will consider in good faith any comments by Defense Counsel.

95.    Notice of Final Judgment.  Notice of Judgment will be posted on the website created by the Administrator in accordance with this Agreement.

**H.    Funding and Distribution.**

96.    After the Effective Date, the Individual Settlement Payments and Individual PAGA Allocations shall be distributed to Settlement Class Members in accordance with the procedures set forth below:

97.   <u>Remittance of the Gross Settlement Amount</u>.  Within twenty-one (21) calendar days following the Effective Date, Marathon will remit the Gross Settlement Amount to the Administrator for the establishment of the Qualified Settlement Fund.  At the same time, if feasible, Marathon shall also remit Marathon's share of Withholdings and Taxes.

98.   <u>Distribution of Payments.</u>  Within twenty-one (21) calendar days from the date of receipt, the Administrator shall take all reasonable efforts to distribute the following Court-approved payments: (a) Class Counsel's Attorneys' Fees and Costs Payment; (b) the LWDA's PAGA Payment; (c) the Class Representatives Service Payments; (d) pay to the appropriate government entities the Withholdings and Taxes; and (e) distribute the Settlement Class Members' Individual Settlement Payment or Individual PAGA Allocation by sending individual checks by regular U.S. Mail to the address on file with the Administrator.  Each Settlement Class Member who is entitled to a payment under this Settlement Agreement will receive a single check for the total of his or her settlement payment (less applicable payroll deductions required by federal, state, and local law for the wage portion of the payment and union dues, as described in paragraph 57).

99.   No payments shall be made or distributed unless and until the orders and Judgment described in this Agreement are final (meaning that the right to appeal or otherwise seek review of such orders or the Judgment has expired) and on the condition that no appeals from the orders and the Judgment have been filed.  Additionally, by no later than the date set by the Court in its Final Approval Order, and if none set, by no later than twenty-one (21) calendar days following distribution of the Court-approved sums, the Administrator shall prepare a report with the Court setting forth the total amount of money paid to (1) Participating Settlement Class Members, (2) the LWDA and Aggrieved Employees for the PAGA Payment, (3) the Service Payments, (4) to itself for Administration Costs, and (5) the Attorneys' Fees and Costs Payment.  The Administrator shall provide the report to Class Counsel and Defense Counsel.

100.   Checks mailed to Participating Settlement Class Members under this Agreement shall remain valid and negotiable for 120 calendar days from the date of their mailing, and thereafter may be automatically canceled if not cashed by the payee within that time.  The

Administrator will provide notice to Class Counsel of any uncashed checks, and the Administrator shall have responsibility to attempt to locate the impacted Participating Settlement Class Members and re-issue checks with an expiration date ninety (90) calendar days following the re-issuing of the checks.

101.    If a Participating Settlement Class Member has not cashed a check by the 30th day from the date of the second check's issuance, the Administrator shall send a postcard to the Settlement Class Member to remind each to cash their check before the void date.

102.    In the event any Settlement Class Member(s) cannot be located within one-hundred twenty (120) days of the date of mailing of the initial settlement checks or ninety (90) days after the re-issuance of a check, whichever is later, uncashed settlement check(s) will be awarded cy pres to the East Bay Community Law Center, except that, in the event more than One Hundred Thousand Dollars ($100,000.00) remains uncashed after one-hundred eighty (180) calendar days of the expiration of the initial settlement checks, uncashed settlement check(s) will be redistributed equally amongst the Participating Settlement Class Members who timely cashed their checks during the initial distribution.  There will only be one redistribution.  No person shall have any claim against Marathon, Released Parties, Defense Counsel, the Class Representative, any Participating Settlement Class Member, Class Counsel, or the Administrator based on the formula for distribution and payments made in accordance with this Settlement Agreement.

**I.    Discharge of Obligations.**

103.    Marathon shall fully discharge its obligations to Plaintiffs and the Class through the remittance of the Gross Settlement Amount to the Qualified Settlement Fund, regardless of whether checks representing Individual Settlement Payments are actually received and/or negotiated by Participating Settlement Class Members.  Once Marathon has complied with its obligation to fund the Gross Settlement Amount, it will be deemed to have satisfied all terms and conditions under this Agreement, shall be entitled to all protections afforded to it under this Agreement, and shall have no further obligations under the terms of the Agreement, regardless of what occurs with respect to the further administration of the Settlement.

**J.      Questions and Disputes.**

104.     In the event that questions or disputes arise regarding the entitlement of any Settlement Class Member under this Agreement, counsel for each of the Parties shall cooperate to provide to counsel for the other Party and the Administrator all available information reasonably necessary to resolve them.  Such information shall be provided in either electronic form or hard copy, as the Administrator may reasonably request.  If the Parties cannot resolve any dispute concerning the entitlement of any Settlement Class Member under this Agreement, the dispute(s) shall be submitted to the Administrator, who shall resolve the dispute(s) and whose decision shall be final and binding and non-appealable.

**K.      Interim Stay of Proceedings.**

105.     The Parties agree to the entry of a formal stay of all proceedings in the Action, except such proceedings as may be necessary to implement, complete, and secure Preliminary and Final Approval of the Settlement and entry of Judgment.

## IX.      ADDITIONAL PROVISIONS

**A.      Voiding the Settlement Agreement**

106.     In the event: (a) the Court does not preliminarily approve the Settlement as provided herein; (b) the Court does not finally approve the Settlement as provided herein; (c) the Court does not enter the Judgment as provided herein; or (d) the Settlement does not become final for any other reason, this Agreement shall be null and void *ab initio* and the Parties shall split Administration Costs incurred, and any order or Judgment entered by the Court in furtherance of this Settlement shall be treated as withdrawn or vacated by stipulation of the Parties.  In such case, the Parties shall be returned to their respective statuses as of December 16, 2024.  In the event an appeal is taken from the Judgment, or any other appellate review is sought before the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review.

107.     Except as otherwise stated herein, each substantive term of this Agreement is a material term that the Parties have relied upon in making this Agreement.  If the Court does not

35

approve any substantive term, or if the Court effects a material change to the Agreement—such as increasing any amount that Marathon must pay—then the entire Agreement will be, at Marathon's sole discretion, void and unenforceable, and the Parties shall split Administrative Costs incurred. Where this Agreement states that a term is not material, then the Court's refusal to approve that term leaves all the other terms of the Agreement in effect and does not give the Parties any basis to abrogate this Agreement.

### B.   No Admission of Liability

108.   Nothing herein shall constitute any admission by Marathon of wrongdoing or liability or of the truth of any factual allegations in the Action.  To the contrary, Marathon has denied and continues to deny each and every material factual, procedural, and/or legal allegation and alleged claim asserted in the Action.  To this end, the settlement of the Actions, the negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the Settlement are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Marathon, or of the truth of any of the factual allegations in the operative complaint, and are not, shall not be deemed to be, and may not be used as, an admission or evidence of any fault or omission on the part of Marathon, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

### C.   No Claims

109.   No person shall have any claim against any of the Released Parties, Defense Counsel, Plaintiffs, the Settlement Class Members, or Class Counsel based on mailings, distributions, and payments made in accordance with or pursuant to this Agreement.

### D.   Parties Represented by Counsel

110.   The Parties hereby acknowledge that they have been represented in negotiations for and in the preparation of this Agreement by independent counsel of their own choosing, they have read this Agreement and have had it fully explained to them by such counsel, and they are fully aware of the contents of this Agreement and of its legal effect.

**E.    Voluntary Agreement**

111.    This Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of either Party, or of any other person, firm, or entity.  Each Party has made such investigation of the facts pertaining to this Agreement and of all other matters pertaining hereto as he or it deems necessary.

**F.    Notices**

112.    The Parties, Class Counsel and Defense Counsel acknowledge and agree that for the purposes of any claims, actions, or proceedings arising out of this Agreement, notice provided to Class Counsel shall be deemed notice to Plaintiffs and to Settlement Class Members.  Except for notices to Settlement Class Members, which are required herein to be made to or by the Class Administrator, all notices, requests, demands, and other communications required to be given under this Agreement shall be in writing and shall be delivered personally, faxed, emailed, or mailed, postage prepaid, by first class United States mail, addressed as follows:

To Plaintiffs and Class Counsel:

WEINBERG, ROGER & ROSENFELD, A Professional Corporation
Kristina L. Hillman
Jannah V. Manansala
Caitlin E. Gray
Alexander S. Nazarov
Winnie G. Vien
1375 55th Street
Emeryville, California 94608
Telephone: 510.337.1001
Facsimile: 510.337.1023

KAUFMANN & GROPMAN, LLP
Aaron Kaufmann
David Pogrel
1939 Harrison Street, Suite 620
Oakland, California 94612
Telephone: 510.817.4380

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE
CASE NO. 4:19-cv-04287-YGR

To Defendant:

Catherine A. Conway
Jesse A. Cripps
Bradley J. Hamburger
Tiffany Phan
Madeleine F. McKenna
Katie Geary

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

### G.    Authorization

113.    The Parties hereto represent and warrant that each signatory hereto has the full right and authority to enter into this Agreement and bind the Party on whose behalf he, she, or it has executed this Agreement.  The Parties agree that Settlement Class Members are so numerous that it is impossible or impractical to have each Settlement Class Member execute this Agreement. This Agreement may be executed on behalf of Settlement Class Members by the Class Representatives.

### H.    No Prior Assignments or Undisclosed Liens

114.    The Class Representatives, Settlement Class Members, and Class Counsel represent that they have not, directly or indirectly, assigned, transferred, conveyed, or otherwise disposed of or encumbered any Released Claim or claim to the Attorneys' Fees and Costs Payment to be paid under this Agreement.  The Class Representatives and Class Counsel further represent and warrant that there are not any liens or claims against any amount that Marathon is paying under this Agreement.  The Class Representatives, Participating Settlement Class Members, and Class Counsel agree to defend, indemnify, and hold Marathon harmless from any liability, losses, claims, damages, costs, or expenses, including reasonable attorneys' fees, resulting from a breach of these representations, or from any lien or assignment.  Nothing herein is intended to constitute legal advice regarding the taxability of any amount paid pursuant to this Agreement, nor may it be relied upon as such.

///

**I.    Confidential Information**

115.    Class Counsel will destroy all confidential documents and information provided by Marathon within 180 calendar days of this Agreement's completion.  Class Counsel further agree that no confidential information provided by Marathon shall be used for any purpose other than prosecution of this Action.

**J.    Agreement Binding on Successors in Interest**

116.    This Agreement shall be binding on and inure to the benefit of the respective successors, assigns, heirs, and personal representatives of the Parties.

**K.    Time Periods**

117.    The time periods and dates set forth in this Agreement with respect to the giving of notices and hearings are subject to approval and modification by the Court or the written stipulation of counsel for the Parties.

**L.    Mutual Full Cooperation**

118.    The Parties agree to cooperate fully with each other to accomplish the terms of this Agreement, including, but not limited to, execution and delivery of any and all additional papers, documents and other assurances and taking such other action that may be reasonably necessary to implement the terms of this Agreement.  The Parties and their counsel shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, to effectuate this Agreement and the terms set forth herein.  As soon as practicable after execution of this Agreement, Class Counsel shall, with the cooperation of Defense Counsel as reasonably requested by Class Counsel, take all necessary steps to secure Preliminary Approval and Final Approval of the Agreement by the Court, including responding to any objectors, intervenors, or other persons or entities seeking to preclude approval of this Agreement.  The Parties represent that they have not solicited, encouraged, or assisted—and will not solicit, encourage, or assist—objections or Requests for Exclusion.  Plaintiffs and Class Counsel will make every reasonable effort to accurately explain the benefits of this Settlement Agreement in response to any questions from any member of the Settlement Class.

**M.     Entire Agreement**

119.    Exhibits to this Agreement are integral parts of this Agreement and are hereby incorporated and made a part of the Agreement.  This Agreement contains the entire agreement between the Parties and constitutes the complete, final, and exclusive embodiment of their agreement with respect to the subject matter hereof.  All prior or contemporaneous settlement agreements, understandings, and statements, whether oral or written, whether express or implied, and whether by a Party or its counsel, are merged herein.  This Agreement is executed without reliance upon any promise, representation, or warranty by either Party or any representative of a Party, other than those expressly set forth herein.  Any inconsistency between this Agreement and the attached Exhibits will be resolved in favor of this Agreement.

**N.     Headings**

120.    The various headings used in this Agreement are solely for the convenience of the Parties and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any of its provisions.

**O.     No Construction Against Drafter**

121.    This Agreement shall be deemed to have been drafted jointly by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

**P.     Amendment and Modification**

122.    Except as expressly provided in this Agreement with respect to time periods and dates set forth herein, this Agreement may be amended or modified only by a written instrument signed by Class Counsel and the Named Plaintiffs, as well as Defense Counsel and Marathon.  No rights under this Settlement Agreement may be waived except in writing.

**Q.     Governing Law**

123.    This Agreement is entered into in accordance with the laws of the State of California and shall be governed by and interpreted in accordance with those laws, without respect to choice of law provisions of any state.

///

40

### R. Jurisdiction of the Court

124.    Any dispute regarding the interpretation, implementation, or validity or otherwise arising out of this Agreement, or relating to the Action or the Released Claims, or to the calculation or payment of the Settlement Amount, shall be subject to the exclusive jurisdiction of the Court, and the Plaintiffs, Settlement Class Members and Marathon agree to submit to the personal and exclusive jurisdiction of the Court for the purpose of resolving any such dispute.  Following the Effective Date, the Court shall retain jurisdiction solely with respect to the interpretation, implementation, and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel submit to the jurisdiction of the Court for purposes of interpreting, implementing, and enforcing the Settlement embodied in this Agreement and all orders and judgments entered in connection therewith.

### S. Restriction on Publicity

125.    Plaintiffs agree that they and Class Counsel will not issue any press release or press statement or initiate media coverage, regarding Marathon, the Released Parties, or this Settlement Agreement.  Should the media inquire or ask for information about the Settlement or this Settlement Agreement, Class Counsel and Plaintiffs shall refer the media to the public record and otherwise comment only that the matter has been resolved.  Plaintiffs agree not to publicize the settlement except that, as necessary to effectuate the Settlement, they are permitted to discuss the Settlement with the union and any class members who may have questions.

### T. Plaintiffs' Waiver of Right to Request Exclusion or to Object

126.    By signing this Agreement, Plaintiffs agree to be bound by the terms herein and further agree not to request exclusion from or object to any of the terms of this Agreement.  Any such Request for Exclusion or objection shall therefore be void and of no force or effect.

### U. Agreement Constitutes a Complete Defense

127.    The Parties agree that this Agreement and all exhibits thereto shall be inadmissible in any proceeding, except a proceeding to approve or enforce this Agreement.  To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to any action,

41

suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.  The Class Representatives, Settlement Class, and Class Counsel agree that none of the documents provided to them by Marathon shall be used for any purpose other than the prosecution and settlement of the Action.  Specifically, none of the documents provided shall be used to pursue any subsequent claims or litigation against Marathon or the Released Parties.

**V.      Signatures**

128.    Signature by facsimile, e-signature, or in Portable Document Format (PDF) via electronic mail shall have the same force and effect as original signatures.

**W.      Execution Date and Execution in Counterparts**

129.    This Agreement shall be deemed executed upon the last date of signature of all of the undersigned.  The Parties may execute this Agreement in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument having the same force and effect as if all Parties had signed the same instrument.

IN WITNESS THEREOF, the Parties hereto have so agreed.

Date: ____10 / 08 / 2025____, 2025

Anthony Alfaro, Plaintiff

Date: ____10 / 07 / 2025____, 2025

Jason Bartling, Plaintiff

Date: ____10 / 07 / 2025____, 2025

Aaron Dietrich, Plaintiff

Date: ____10 / 07 / 2025____, 2025

John Dovala, Plaintiff

42

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE
CASE NO. 4:19-cv-04287-YGR

Date: _____, 2025

By: _____
Molly R. Benson
Chief Legal Officer and Corporate Secretary
Marathon Refining Logistics Services LLC,
Defendant

APPROVED AS TO FORM:

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

Date: 10 / 07 / 2025_____, 2025

By: _____
Alexander Nazarov
Attorneys for Plaintiffs

KAUFMANN & GROPMAN, LLP

Date: 10 / 07 / 2025_____, 2025

By: _____
Aaron Kaufmann
Attorneys for Plaintiffs

GIBSON, DUNN & CRUTCHER LLP

Date: _____, 2025

By: _____
Bradley J. Hamburger
Attorneys for Defendant Marathon Refining
Logistics
Services LLC

43

Doc ID: bf871c9cd8595e67ac7ac864acfb61275605fa09

Date: _____, 2025

By: _____
Molly Benson (Oct 9, 2025 08:11:30 EDT)
Molly R. Benson
Chief Legal Officer and Corporate Secretary
Marathon Refining Logistics Services LLC,
Defendant

APPROVED AS TO FORM:

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

Date: _____, 2025

By: _____
Alexander Nazarov
Attorneys for Plaintiffs

KAUFMANN & GROPMAN, LLP

Date: _____, 2025

By: _____
Aaron Kaufmann
Attorneys for Plaintiffs

GIBSON, DUNN & CRUTCHER LLP

Date: _October 9_, 2025

By: _____
Bradley J. Hamburger
Attorneys for Defendant Marathon Refining
Logistics
Services LLC

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE
CASE NO. 4:19-cv-04287-YGR