**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JANICE WOOD ET AL.,

    Plaintiffs,

    v.

MARATHON REFINING LOGISTICS
SERVICE LLC,

    Defendant.

CASE NO. **4:19-CV-04287-YGR**

**ORDER GRANTING MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT;**

**GRANTING MOTION FOR ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS; AND**

**JUDGMENT**

Dkt. Nos. 267, 268

On January 22, 2026, the Court granted a motion for preliminary approval of the Class Action Settlement between plaintiffs Anthony Alfaro, Aaron Dietrich, Jason Bartling, and John Dovala and defendant Marathon Refining Logistics Service ("Marathon"). (Dkt. No. 266.) As directed therein, on March 9, 2026, plaintiffs filed their unopposed motion for attorneys' fees, costs, and service awards. (Dkt. No. 267.) On May 4, 2026, plaintiffs filed their unopposed motion for final settlement approval. (Dkt. No. 268.) The Court heard argument from the parties on June 16, 2026.

Having considered the motion briefing, the terms of the Settlement Agreement, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the motion for final approval. The Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the class representatives and class counsel are confirmed.

The Motion for Attorneys' Fees, Costs, and Incentive Awards is **GRANTED**. The Court **ORDERS** that class counsel shall be paid $3,000,000 in attorneys' fees, $190,000 in litigation costs, $11,000 in settlement administration costs, and $37,000 in service awards for named plaintiffs. Class Representatives Alfaro and Dietrich will each receive a $15,000 service award and Class

Representatives Bartling and Dovala will each receive a $3,500 service award.

I.    **BACKGROUND**

    A.    **Procedural History**

The Court notes here that it has considerable history with this action given the pretrial proceedings. Plaintiffs filed the putative class action complaint on June 24, 2019 against defendant Marathon challenging its "standby" policies. Plaintiffs allege that Marathon required Operators and Maintenance Workers at its Martinez facility to be available for designated 12- and/or 24-hour standby shifts in addition to their regular shifts and to be ready to receive calls during specific time periods. If called in, the Operator or Maintenance Worker would be required to report to Marathon as quickly as possible or be considered absent. If the worker was not contacted by Marathon, they would not be compensated for time spent on standby. (SAC ¶¶ 5, 7.)

Plaintiffs' sixth amended complaint alleges claims for: failure to pay reporting time pay (IWC Wage Order. No. 1–2001); failure to pay all wages earned at termination (Labor Code §§ 200–203); failure to provide accurate itemized wage statements (Labor Code §§ 226–226.3); violations of the Unfair Competition Law (Bus. & Prof. Code §§ 17200 et seq.); and civil penalties under the Private Attorneys General Act (California Labor Code §§ 2698, et seq.).

After classes were certified, the parties reached a settlement with the assistance of Magistrate Judge Spero, who held multiple settlement conferences with the parties.

The Settlement Agreement defines the class as:

> All current and former operators of Marathon (or any of its affiliates or successors) who worked at the Martinez Refinery or Chemical Plant and were assigned mandatory standby shifts between June 24, 2015 and October 5, 2025 and all maintenance workers of Marathon (or any of its affiliates or successors) who worked at the Martinez Refinery and were assigned mandatory standby shifts, between June 24, 2015 and October 31, 2020.

("the Settlement Class").  In its preliminary approval order, the Court conditionally certified the Settlement Class and provisionally appointed Aaron Kaufmann and David Pogrel as Class Counsel, plaintiffs Anthony Alfaro, Aaron Dietrich, Jason Bartling, and John Dovala as class representatives, and CPT Group as the class administrator.  (Dkt. No. 266.)

United States District Court
Northern District of California

**B.      Terms of the Settlement Agreement**

Under the terms of the Settlement Agreement, defendant, without admitting liability, will pay $9,000,000 plus amounts for payroll taxes into a common settlement fund.  This amount includes attorneys' fees and costs, the cost of class notice and settlement administration, the class representative's service award, and payroll taxes on the portion of the settlement payments deemed wages.

### 1.      *Attorneys' Fees and Costs*

Under the Settlement Agreement plaintiffs' counsel agreed to seek up to $3 million in attorneys' fees and no more than $250,000 in litigation costs.  The common settlement fund also includes a provision for $11,000 in settlement administration costs; and up to $37,000 to be paid to class representatives Anthony Alfaro, Aaron Dietrich, Jason Bartling, and John Dovala as an incentive award in exchange for a general release of all claims against defendant.

### 2.      *Class Relief*

After deductions from the common fund for fees, costs, and service incentive awards, approximately $5.64 million will remain to be distributed among the participating class members. Class members will be paid according to (1) weeks worked during the certified class period through October 31, 2020, and (2) the number of weeks each Operator worked and was scheduled for at least one standby shift from November 1, 2020 to October 5, 2025. (SAC ¶¶ 35, 54.) Dividing this amount across the 604 participating class members yields an average recovery of approximately $9,349.91 per class member.  The Agreement provides that no amount will revert to defendant.

### 3.      *Cy Pres/Remainder*

The Settlement Agreement provides that when checks mailed to participating class members are not redeemed or deposited, within one-hundred twenty (120) days of mailing of the initial settlement check or ninety (90) days after the reissuance of the check, whichever is later, the uncashed settlement check(s) will be awarded to a *cy pres* recipient, except that, in the event more than One Hundred Thousand Dollars ($100,000.00) remains uncashed after one-hundred eighty (180) calendar days of the expiration of the initial settlement checks, uncashed settlement check(s) will be redistributed equally amongst the Participating Settlement Class Members who timely cashed

their checks during the initial distribution.

"To protect against "nascent dangers to the fairness of the distribution process," *id.*, courts in the Ninth Circuit "require that there be 'a driving nexus between the plaintiff class and the *cy pres* beneficiaries.'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (quoting *Nachshin*, 663 F.3d at 1038). Thus, "[a] *cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." *Id.* at 865 (internal quotation marks and citations omitted).

The Court cautioned plaintiffs that the *cy pres* beneficiary must have a nexus to the plaintiffs in this litigation. As an alternative to the *cy pres* beneficiary identified in the Settlement Agreement, the parties selected ReWork the Bay, which "envisions a Bay Area economy that centers the voices, power and needs of working people."  It aims to advance the number of quality, powered jobs in the Bay Area with pay and individual agency, equitable access to those jobs, and affordable, accessible support systems.

The Court orders that ReWork the Bay is designated the *cy pres* beneficiary under the settlement.

### C.    Class Notice and Claims Administration

The Settlement Agreement is being administered by CPT Group.  Following the Court's preliminary approval and conditional certification of the settlement, CPT Group mailed the Notice packet to each Class Member, with instructions on how to opt-out, object, or challenge their settlement allocation. Dkt. No. 264, Ex. A at ¶ 8. The notice also informed Class Members about the website and a toll-free telephone number established for Class Member inquiries. Dkt. No. 264, Ex. A at ¶ 13.

The Class Administrator also established a settlement website (the "Settlement Website") at www.cptgroupcaseinfo.com/WoodSettlement, which posted the settlement notices, the procedures for class members to submit claims or exclude themselves, a contact information page that includes address and telephone numbers for the claim administrator and the parties, the Settlement Agreement, the signed order of preliminary approval.  In addition, the motion for final approval and the application for attorneys' fees, costs, and incentive awards were uploaded to the website after

they were filed.  The Class Administrator also operated a toll-free number for class member inquiries.

Class members were given until April 13, 2026, to object to or exclude themselves from the Settlement Agreement.  Out of over 600 total class members, no one filed a timely request to opt out of the Settlement Class.

## II.    FINAL APPROVAL OF SETTLEMENT

### A.    Legal Standard

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification.  Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027.  The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement.  *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

United States District Court
Northern District of California

United States District Court
Northern District of California

**B.    Analysis**

*1.        The Settlement Class Meets the Prerequisites for Certification*

As the Court found in its order granting preliminary approval and conditional certification of the settlement class herein, the prerequisites of Rule 23 have been satisfied purposes of certification of the Settlement Class.  (*See* Dkt. No. 266.)

*2.        Adequacy of Notice*

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).  Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court found the parties' proposed notice procedures provided the best notice practicable and reasonably calculated to apprise class members of the settlement and their rights to object or exclude themselves.  (Dkt. No. 266.)  Pursuant to those procedures, the Class Administrator CPT Group carried out that program.  (Dkt. No. 269.)  The Class Administrator reports that 606 people received notice, and only two mailings were returned as undeliverable.

Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice.

*3.  The Settlement Is Fair And Reasonable*

As the Court previously found in its order granting preliminary approval, the *Hanlon*

factors indicate the settlement here is fair and reasonable and treats class members equitably relative to one another. (Dkt. No. 266.)

The reaction of the class was overwhelmingly positive. The Court received no objections and no opt-outs as of the April 13, 2026 deadline.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

In its preliminary approval order, the Court approved the proposed plan of allocation. (Dkt. No. 266.)  The Court finds the plan of allocation to be fair and reasonable and to treat class members equitably and therefore approves that plan of allocation.

### 4.      *Objections*

The Court need not consider objections because no class member objected.

### 5.      *Other Findings*

The Court must take into account considerations of the Private Attorneys General Act ("PAGA") to determine whether approval of the settlement is appropriate with respect to those claims.

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of himself and other current or  former employees. Cal. Lab. Code § 2699(a).  A plaintiff suing under PAGA  "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Ct.*, 46 Cal.4th 969, 986 (2009). A PAGA plaintiff has "the  same legal right and interest as state labor law enforcement agencies" and the action "functions as a substitute for an action brought by the government itself." *Id.*  "[A] judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action  brought by the government." *Id.*  A plaintiff bringing a PAGA action owes a duty to their "fellow aggrieved workers" and "to the public at large." *O'Connor v. Uber Techs., Inc.*, 201 F.Supp.3d 1110, 1134 (N.D. Cal. 2016).

United States District Court
Northern District of California

Civil penalties collected pursuant to PAGA are distributed between the aggrieved employees (25%) and the Labor & Workforce Development Agency ("LWDA") (75%). Cal. Lab. Code § 2699(i). Any settlement of PAGA claims must be approved by the Court. Cal. Lab. Code § 2699(l)(2). The proposed settlement must also be sent to the agency at the same time that it is submitted to the court. *Id.*

The California legislature, California Supreme Court, California Courts of Appeal, and LWDA have not set a standard for approving PAGA settlements. *Id.* The LWDA has only stated that it is important that "the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being 'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA." *O'Connor*, 201 F.Supp.3d at 1133 (quoting LWDA Response at 2-3). Based on the LWDA's Response, district courts have applied "a Rule 23-like standard" asking whether the settlement of the PAGA claims is fundamentally fair, reasonable, and adequate. *Haralson*, 383 F.Supp.3d at 972.

Plaintiffs' motion confirms that a copy of the Settlement Agreement was sent to the LWDA at the time plaintiffs filed their motion for preliminary approval. With this procedural requirement satisfied, the Court next discusses whether the Settlement Agreement's $80,000 allocation to PAGA penalties is fair, reasonable, and adequate.

Plaintiffs calculated the maximum PAGA penalties for the PAGA Period to be approximately $5 million, calculated based on the initial violation rates because defendant may not be subject to PAGA's heightened rates for the subsequent violations. *See* Dkt No. 262, ¶ 12. Further, penalties under PAGA would depend on whether the trier of fact would reduce PAGA damages at trial.

"[I]n actions involving wage and hour class claims and PAGA claims that settle, parties often minimize the total amount of the settlement that is paid to PAGA penalties in order to maximize payments to class members." *Mejia v. Walgreen Co.*, No. 2:19-cv-00218 WBS AC, 2020 U.S. Dist. LEXIS 220685, at *26 (E.D. Cal. Nov. 24, 2020). The public policies underlying PAGA are also likely met here because the settlement more broadly provides a "robust" remedy for

United States District Court
Northern District of California

United States District Court
Northern District of California

possible violations of the California Labor Code. *See O'Connor*, 201 F.Supp.3d at 1134 ("[I]f the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled.").

Although the Settlement Agreement's $80,000 allocation to PAGA penalties amounts to 1.6% of the maximum PAGA penalties, there has been no objection from the state. The Court finds that the settlement for the class is more than sufficient to fulfill PAGA's purposes.

### 6. *Certification Is Granted and the Settlement Is Approved*

After reviewing all of the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper.

The new *cy pres* recipient, ReWork the Bay, is **APPROVED**.

## III. MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963. "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

Class counsel requests an attorneys' fee award of $3,000,000. Based on the detailed time records submitted by counsel, the attorneys' fees sought amount to approximately 60% of the reported $4,960,852 lodestar. Defendants do not oppose the fee request.

Fee requests are based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino,* 290 F.3d at 1050–51.)

United States District Court
Northern District of California

Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'"). Under the percentage-of-the-fund method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311. When using the percentage-of-recovery method, courts consider a number of factors, including whether class counsel " 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at 1047-50. "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

No objector has challenged any of counsel's hour or rates.

This was a hard-fought case. The Court reviewed the attorneys' fee request in that context. Using the lodestar method, the Court finds the attorneys' fees sought to be reasonable. The Court has also considered a cross-check using the percentage-of-recovery method.

The lodestar reflects more than 7,100 hours, at rates from $350 to $1,150 per hour, totaling $4,960,852. Plaintiffs claim hourly rates that are commensurate with their experience and with the legal market in this district. On the basis of these reasonable hourly rates and amounts, class counsel calculates the lodestar to be 60% of $4,960,852. The Court finds that the hours claimed

were reasonably incurred and that the rates charged are reasonable and commensurate with those charged by attorneys with similar experience in the market.  The Court also finds that Class Counsel represented their clients with skill and diligence and obtained an excellent result for the class, considering the possible outcomes and risks of proceeding to trial.

Here, the parties estimated the total settlement value to be $9,000,000.  The attorneys' fees requested would come to 33%  of this total.  This amount is above the 25% benchmark. An increase is warranted because of the complexity of the legal issues raised by this case, and it involves a relatively small settlement. *Greko v. Diesel, U.S.A., Inc.*, 2013 WL 1789602, at *11 (N.D. Cal. Apr. 26, 2013) ("it is common practice to award attorney's fees at a higher percentage than the twenty-five percent (25%) benchmark in cases that involve a relatively small—i.e., under $10 million dollar—settlement fund."). Moreover, given the 60% lodestar, plaintiff would be left undercompensated for their work. The fee request strikes the appropriate balance.

Based on the foregoing, the Court finds an award of attorneys' fees in the amount of $3,000,000 and $11,000 in settlement administration costs to be fair, reasonable, and adequate.

**B.      Costs Award**

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses.  Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters).  Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Here, class counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses, in the amount of $190,000.  Having reviewed the entries, the Court finds this amount reasonable, fair, and adequate.

**C.      Incentive Award**

The district court must evaluate named plaintiff's requested award using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977.  "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of

United States District Court
Northern District of California

11

the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, the plaintiffs came forward to represent the interests of 606 others. Plaintiffs were deposed, compiled documents, and answered interrogatories in response to discovery requests, regularly corresponded with counsel telephonically and by email, and took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs. Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others, especially in an employment context which could have longer term effects. Thus, the Court approves the requested incentive award payment for plaintiffs of $15,000 for Anthony Alfaro and Aaron Dietrich and $3,500 for Jason Bartling and John Dovala, totaling $37,000.

## IV. CONCLUSION

Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**. The motion for attorneys' fees, costs, and service awards is **GRANTED** as follows: Class Counsel is awarded $3,000,000 in attorneys' fees and $11,000 in litigation costs. Plaintiffs are granted an incentive awards totaling $37,000.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class Action Settlement filed on January 22, 2026, and this order. This document will constitute a final

United States District Court
Northern District of California

judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than **March 5, 2027**.  The Court **SETS** a compliance deadline on **February 26, 2027** on the Court's 9:01 a.m. calendar to verify timely filing of the post-distribution accounting.

**IT IS SO ORDERED.**

This terminates Docket Nos. 267 and 268.

Dated: June 17, 2026

_____
**YVONNE GONZALEZ-ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

13